# EXHIBIT A

1  Rafey S. Balabanian (SBN 315962)
   rbalabanian@edelson.com
2  EDELSON PC
   150 California Street, 18th Floor
3  San Francisco, California 94111
   Tel: 415.212.9300
4  Fax: 415.373.9435

5  *Counsel for Plaintiffs David Melvin, J.L., and the Putative Classes*

6

7

8              **UNITED STATES DISTRICT COURT**
              **NORTHERN DISTRICT OF CALIFORNIA**
9                **SAN FRANCISCO DIVISION**

10 **DAVID MELVIN and J.L.,** individually      Case No.: 3:24-cv-00487-SK
   and on behalf of all others similarly
11 situated,                                    **ADMINISTRATIVE MOTION TO**
                                                **CONSIDER WHETHER CASES SHOULD**
12              *Plaintiffs,*                   **BE RELATED PURSUANT TO CIVIL**
                                                **LOCAL RULES 3-12 AND 7-11**
13        *v.*

14 **23ANDME, INC.,** a Delaware corporation,

15              *Defendant.*

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiffs David Melvin and J.L. submit this administrative motion pursuant to Civil Local Rules 3-12 and 7-11 to consider whether the above-entitled action, *Melvin, et al. v. 23andMe, Inc*., No. 3:24-cv-00487-SK (N.D. Cal) (the "*Melvin* Action"), should be related to *Santana, et al. v. 23andMe, Inc.*, No. 3:23-cv-05147-EMC (N.D. Cal) (the "*Santana* Action"). A proposed order and a declaration pursuant to Civil Local Rule 7-11(a) are attached hereto. This action was filed on January 26, 2024. The *Santana* Action was filed on October 9, 2023, and is currently assigned to the Honorable Edward M. Chen. There are over 30 other cases filed in this District which have been related to the *Santana* Action. (*See Santana* dkt. 54.) Plaintiffs' Counsel have concurrently moved to be appointed interim lead counsel of the class actions against 23andMe, and request that this Court hear that motion after ruling on relation of the *Melvin* Action. A copy of the Motion to Appoint Interim Leadership of Class Action, filed in the *Melvin* Action (*see Melvin* dkt. 4), is attached here. (*See* Exhibit A.)

Plaintiffs submit that the *Melvin* Action is related to the *Santana* Action within the meaning of Civil Local Rule 3-12(a). Actions are related when (1) they "concern substantially the same parties, property, transaction, or event;" and (2) "[i]t appears likely that there will be an unduly burdensome duplication of labor and expense or conflicting results if the cases are conducted before different Judges." Civil L.R. 3-12(a). The *Melvin* and *Santana* Actions involve the same Defendant and arise from the same event. Specifically, Plaintiffs—and the putative classes they seek to represent—in both cases are consumers whose personal genetic information and other identifying information were accessed through Defendant's website, 23andMe, by unauthorized persons (the "Data Breach"). The Plaintiffs in each case allege that the Data Breach occurred as a direct result of Defendant's failure to adequately secure and safeguard the sensitive information entrusted to it, and seek monetary damages, injunctive relief, and other equitable relief. As such, both actions will require adjudication of substantially the same questions of fact and many of the same issues of liability. Given these similarities, separate adjudication of these cases would likely create undue burden on the Court and the Parties, duplication of labor and expenses, and potentially conflicting results. *See* Civil L.R. 3-12(a)(2).

Accordingly, Plaintiffs respectfully request that the *Melvin* Action be deemed related to the

*Santana* Action pursuant to Civil Local Rule 3-12.

Respectfully Submitted,

**DAVID MELVIN** and **J.L.**, individually and on behalf of all others similarly situated,

Dated: January 26, 2024

By: /s/ Rafey S. Balabanian
One of Plaintiffs' Attorneys

Rafey S. Balabanian (SBN 315962)
rbalabanian@edelson.com
EDELSON PC
150 California Street, 18th Floor
San Francisco, California 94111
Tel: 415.212.9300
Fax: 415.373.9435

Jay Edelson (*pro hac vice* forthcoming)
jedelson@edelson.com
J. Eli Wade-Scott (*pro hac vice* forthcoming)
ewadescott@edelson.com
Michael Ovca (*pro hac vice* forthcoming)
movca@edelson.com
Emily Penkowski Perez (*pro hac vice* forthcoming)
epenkowski@edelson.com
Hannah P. Hilligoss (*pro hac vice* forthcoming)
hhilligoss@edelson.com
Edelson PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Counsel for Plaintiffs and the Putative Classes*

# EXHIBIT A

Rafey S. Balabanian (SBN 315962)
rbalabanian@edelson.com
EDELSON PC
150 California Street, 18th Floor
San Francisco, California 94111
Tel: 415.212.9300
Fax: 415.373.9435

*Counsel for Plaintiffs David Melvin, J.L., and Putative Class*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| **DAVID MELVIN and J.L.**, individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>*v.*<br><br>**23ANDME, INC.**, a Delaware corporation,<br><br>*Defendant.* | Case No. 24-cv-00487-SK<br><br>**MOTION TO APPOINT INTERIM LEADERSHIP OF CLASS ACTION**<br><br>Hearing Date: March 4, 2024<br>Time: 9:30 a.m.<br>Place: Courtroom C, 15th Floor<br>Judge: Hon. Sallie Kim |

# NOTICE OF MOTION

PLEASE TAKE NOTICE THAT, on March 4, 2024 at 9:30 am in Courtroom C, 15th Floor of the U.S. District Court for the Northern District of California, San Francisco Division, at 450 Golden Gate Avenue, San Francisco, California 94102, this Motion for Appointment of Interim Lead Counsel filed by Plaintiffs in the above-captioned action will be heard. Pursuant to Fed. R. Civ. P. 23(g), Plaintiffs move to appoint Rafey S. Balabanian as Interim Lead Counsel for the putative class set forth in the above-captioned action, as well as the broader set of related actions pending in the Northern District of California against 23andMe, Inc. Plaintiffs' Motion is based on this Notice of Motion and the supporting Memorandum of Points and Authorities.

# STATEMENT OF REQUESTED RELIEF

Plaintiffs request that the Court appoint Rafey S. Balabanian of Edelson PC as Interim Lead Counsel for the putative class in the above-captioned action, as well as the broader set of related actions pending in the Northern District of California against 23andMe, Inc., pursuant to Fed. R. Civ. P. 23(g).

Respectfully Submitted,

**DAVID MELVIN and J.L.**, individually and on behalf of all others similarly situated,

Dated: January 26, 2024

By: /s/ Rafey S. Balabanian
One of Plaintiffs' Attorneys

Rafey S. Balabanian (SBN 315962)
rbalabanian@edelson.com
EDELSON PC
150 California Street, 18th Floor
San Francisco, California 94111
Tel: 415.212.9300
Fax: 415.373.9435

Jay Edelson (*pro hac vice* forthcoming)
jedelson@edelson.com
J. Eli Wade-Scott (*pro hac vice* forthcoming)
ewadescott@edelson.com
Michael Ovca (*pro hac vice* forthcoming)

1

movca@edelson.com
Emily Penkowski Perez (*pro hac vice*
forthcoming)
epenkowski@edelson.com
Hannah P. Hilligoss (*pro hac vice* forthcoming)
hhilligoss@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Counsel for Plaintiffs and the Putative Class*

# <u>TABLE OF CONTENTS</u>

I.      **INTRODUCTION**................................................................................................1

II.     **BACKGROUND** ..............................................................................................4

       A.     **The breach and vulnerable class.** ........................................................4

       B.     **Procedural history and the planned mediation.**..................................6

III.    **LEGAL STANDARD** ......................................................................................9

IV.    **ARGUMENT** ..................................................................................................9

       A.     **This case involves extraordinarily sensitive data of a uniquely vulnerable class.**.........................................................................................................9

       B.     **The mediation is not set up to secure a positive result for the class.**.............12

       C.     **Rafey S. Balabanian of Edelson PC should be appointed lead counsel.** .......13

V.      **CONCLUSION** ...............................................................................................23

# TABLE OF AUTHORITIES

**Cases**

*Bacus v. 23andMe, Inc.*,
    No. 1:23-cv-16828-MSS (N.D. Ill.) ...................................................................6

*Barnes v. Aryzta, LLC*,
    No. 17-cv-7358, 2019 WL 277716 (N.D. Ill. Jan. 22, 2019).............................16

*Benson v. DoubleDown Interactive LLC*,
    No. 18-cv-00525 (W.D. Wash.) .........................................................................15

*Birchmeier v. Caribbean Cruise Line, Inc.*,
    No. 12-cv-04069 (N.D. Ill.) ...............................................................................14

*Cole v. Gene by Gene Ltd.*,
    No. 14-cv-00004-SLG (D. Alaska)......................................................................14

*Crumpton v. Octapharma Plasma, Inc.*,
    No. 19-cv-08402 (N.D. Ill.) ...............................................................................22

*Dickey v. Advanced Micro Devices, Inc.*,
    No. 15-cv-04922 (N.D. Cal.) ..............................................................................22

*Figueroa v. Kronos Inc.*,
    No. 19-cv-01306 (N.D. Ill.) ...............................................................................22

*Fischer v. Instant Checkmate LLC*,
    No. 19-cv-04892 (N.D. Ill.) ...............................................................................23

*Gill v. 23andMe, Inc.*,
    No. 2:23-cv-10527-FWS-DFM (C.D. Cal.)........................................................6

*Hu v. 23andMe, Inc.*,
    No. 1:23-cv-17079-RRP (N.D. Ill.) .....................................................................6

*In re 23andMe, Inc. Consumer Data Sec. Breach Litig.*,
    MDL No. 3098 (J.P.M.L.) .............................................................................1, 6

*In re Apple Inc. App Store Simulated Casino-Style Games Litig.*,
    No. 21-md-02985-EJD (N.D. Cal.).....................................................................18

*In re Facebook Biometric Info. Priv. Litig.*,
    522 F. Supp. 3d 617 (N.D. Cal. 2021) ...................................................... *passim*

*In re Facebook Priv. Litig.*,
   No. 10-cv-02389 (N.D. Cal.) ..................................................................................16

*In re Facebook Simulated Casino-Style Games Litig.*,
   No. 21-cv-02777-EJD (N.D. Cal.) ...........................................................................18

*In re Google Play Store Simulated Casino-Style Games Litig.*,
   No. 21-md-03001-EJD (N.D. Cal.)...........................................................................18

*In re Meta Pixel Healthcare Litig.*,
   No. 22-CV-03580-WHO, 2022 WL 18399978 (N.D. Cal. Dec. 21, 2022) ....................9

*In re Tiktok, Inc. Consumer Privacy Litig.*,
   No. 20-cv-4699 (N.D. Ill.) .......................................................................................12

*James v. PacifiCorp*,
   No. 20CV33885 (Multnomah Cnty. Ct., Or.) ...........................................................17

*Kater v. Churchill Downs Inc.*,
   886 F.3d 784 (9th Cir. 2018) ...................................................................................17

*Krause v. RocketReach, LLC*,
   No. 21-cv-1938 (N.D. Ill.) .......................................................................................23

*Kusinski v. ADP LLC*,
   No. 17-CH-12364 (Cir. Ct. Cook Cnty. Feb. 10, 2021) .............................................23

*LaBarre v. Ceridian HCM, Inc.*,
   No. 19-CH-06489 (Cir. Ct. Cook Cnty. Nov. 30, 2022)............................................22

*Lukis v. Whitepages, Inc.*,
   No. 19-cv-04871 (N.D. Ill. Sept. 28, 2022) ..............................................................22

*McCormick v. Adtalem Glob. Educ., Inc. et al.*,
   2022 IL App (1st) 201197-U  ...................................................................................15

*Melvin v. Sequencing LLC*,
   344 F.R.D. 231 (N.D. Ill. 2023)......................................................................3, 14, 20

*Morgenstern v. 23andMe Holding Co.*,
   No. CGC-23-610816 (Sup. Ct. San Francisco)............................................................6

*Neals v. ParTech, Inc.*,
   No. 19-cv-05660 (N.D. Ill. July 20, 2022).................................................................23

*Pollard v. Remington Arms Co., LLC,*
    320 F.R.D. 198 (W.D. Mo. 2017) ...................................................................22

*Santana v. 23andMe, Inc.,*
    No. 23-cv-05147 (N.D. Cal.) ............................................................... *passim*

*Sosa v. Onfido, Inc.,*
    No. 20-cv-04247 (N.D. Ill. Dec. 4, 2023) ........................................................23

*Spokeo v. Robins,*
    136 S. Ct. 1540 (2016) ....................................................................................14

*Vasquez v. 23andMe, Inc.,*
    No. 23-cv-424996 (Sup. Ct. Santa Clara) ........................................................6

*Villagomez v. iSolved HCM, Inc.,*
    No. 19-CH-12932 (Cir. Ct. Cook Cnty. May 11, 2023) ..................................22

*Wakefield v. ViSalus, Inc.,*
    51 F.4th 1109 (9th Cir. 2022) .........................................................................14

*Wakefield v. ViSalus, Inc.,*
    No. 3:15-cv-1857-SI (D. Or. June 24, 2019) ...........................................14, 16

**Rules**

Fed. R. Civ. P. 23 ......................................................................................................9, 13

**Miscellaneous Authority**

4 NEWBERG AND RUBENSTEIN ON CLASS ACTIONS
    § 12:17 (6th ed.) ..............................................................................................22

Allison Grande, *Class Counsel Gets Time to Grow Participation in Privacy* Deal, LAW360
(Nov. 22, 2023),
    https://www.law360.com/articles/1769616/class-counsel-gets-time-to-grow-
    participation-in-privacy-deal.................................................................23

Andrea Vittorio, *They've Got Next: Privacy and Cybersecurity Fresh Face Eli Wade-Scott,*
BLOOMBERG LAW (Oct. 29, 2021),
    https://news.bloomberglaw.com/business-and-practice/theyve-got-next-privacy-and-
    cybersecurity-fresh-face-eli-wade-scott.................................................20

Christine Schiffner, *Jay Edelson in a 'Battle for the Soul of the Plaintiffs Bar'*, Law.Com (Sept.
19, 2022),
    https://www.law.com/nationallawjournal/2022/09/19/jay-edelson-in-a-battle-for-the-
    soul-of-the-plaintiffs-bar/.........................................................................19

Conor Dougherty, *Jay Edelson, the Class-Action Lawyer Who May Be Tech's Least Friended Man*, N.Y.TIMES (Apr. 4, 2015),
  https://www.nytimes.com/2015/04/05/technology/unpopular-in-silicon-valley.html ................................................................................................15, 19

David Lidsky, *Meet the lawyer who stood between Big Tech and your facial recognition data*, FAST COMPANY (Aug. 9, 2022),
  https://www.fastcompany.com/90764561/jay-edelson-most-creative-people-2022. ......19

Edelson Creative, *We Don't Talk About Claims Rates* (Apr. 7, 2022)
  https://www.youtube.com/watch?v=L7ULPjEB85 ........................................................22

Eric Troutman, *Deserve to Win Podcast* (July 18, 2022),
  https://www.natlawreview.com/article/deserve-to-win-ep-3-jay-edelson-now-available-we-talk-dobbs-javier-and-privacy ..................................................................................19

John K. Higgins, *Supreme Court to Hear 'Non-Injury' Privacy Class Action*, E-COMMERCE TIMES (May 6, 2015),
  https://www.nytimes.com/2024/01/24/us/oregon-wildfires-award.html. .......................15

Johnny Diaz, *Utility Must Pay $85 Million to People Affected by Oregon Wildfires, Jury Rules*, N.Y. TIMES (Jan. 24, 2024),
  https://www.nytimes.com/2024/01/24/us/oregon-wildfires-award.html. .......................17

Jonathan Stempel, *Jury says Berkshire's PacifiCorp owes punitive damages for 2020 Oregon wildfires*, REUTERS (June 14, 2013),
  https://www.reuters.com/sustainability/jury-says-berkshires-pacificorp-owes-punitive-damages-2020-oregon-wildfires-2023-06-14 .................................................................17

*S.T.O.P. Welcomes Clearview AI, ACLU Settlement, Calls For National Ban*, SURVEILLANCE TECHNOLOGY OVERSIGHT PROJECT (May 9, 2022),
  https://www.stopspying.org/latest-news/2022/5/9/stop-welcomes-clearview-ai-aclu-settlement-calls-for-national-ban ....................................................................................15

*Submitted Data Breach Notification Sample*, California Dep't. of Justice,
  https://oag.ca.gov/ecrime/databreach/reports/sb24-579679. ..........................................11

*The One with the Czar*, NON-COMPLIANT PODCAST (Oct. 13, 2022),
  https://podcasts.apple.com/us/podcast/non-compliant-podcast-episode-50-the-one-with-the-czar/id1491233296?i=1000582530291. ...................................................................7

## I.    INTRODUCTION

Plaintiffs David Melvin and J.L. ("Plaintiffs") hereby respectfully move the Court to appoint interim leadership of the more than thirty class actions against 23andMe, Inc. pending before it. Notwithstanding the pending petition before the JPML to consolidate these matters into an MDL (before this Court),[1] appointment of interim lead counsel now is necessary to ensure that the interests of this extremely vulnerable class are protected by a Court-supervised process. Indeed, while the cases are still procedurally up in the air, at least twenty of the 30-plus plaintiffs' firms that have filed these cases are set to attend a mediation with 23andMe on January 31, 2024. (*See* Dkt. 58 at 9.)[2] It would be one thing if plaintiffs' counsel in these cases had effectively self-ordered prior to engaging in settlement discussions. Here, though, the various firms are heading toward mediation without any leadership or organization in place, and no discussion—let alone consensus—on the value of these cases or the negotiation strategy. At best, in the absence of leadership, the scheduled mediation is bound to be inefficient and highly unlikely to produce a meaningful result. At worst, it could result in a sell-out settlement that doesn't account for the unprecedented harms inflicted on this Class.

The problems caused by the lack of leadership are already making themselves evident, resulting in a mediation process that's been kneecapped at every turn against the Class's interests. On the one hand, the mediation is hamstrung in ways that make no sense: there is a physical cap of 20 attorneys attending (though every firm is invited) because that is the size of the conference room in the hotel that was chosen. There are mediation statements from plaintiffs and 23andMe due today, with a "suggested" limit of eight pages, and which aren't being mutually exchanged. And with no leadership in place, counsel are clambering over one another to demonstrate some "value-add"—resulting, as it always does, in needless and duplicative make-work. 23andMe, for its part, has used the disorder to evade a meaningful

---

[1]    The JPML is currently considering that motion. *See In re 23andMe, Inc. Consumer Data Sec. Breach Litig.*, MDL No. 3098 (J.P.M.L.). 23andMe has also moved to stay pending the JPML's decision. *Santana v. 23andMe, Inc.*, No. 23-cv-05147-EMC, dkt. 37 (N.D. Cal. Dec. 29, 2023).

[2]    Docket references are to the *Santana v. 23andMe, Inc.* action, to which the cases have been related. No. 23-cv-05147-EMC (N.D. Cal.).

1   information exchange (having vaguely promised some information by January 23, subject to a

2   confidentiality agreement), keeping plaintiffs in the dark about the real value of a case that is

3   being mediated just days later. Meanwhile, 23andMe quietly admitted what Plaintiffs in *this*

4   case had determined from their months of investigation: 23andMe should have known that it

5   was attacked far earlier and—even with the benefit of the doubt—entirely failed to figure it out.

6   In short, the inherent *ad hoc* nature of the decision making that goes on when there is no

7   leadership structure has shown that it can't presently get the basics right, much less settle a

8   difficult case with so much at stake in a few short days.

9       It's vital for the Court to step in now given how far from a mine-run data breach case

10  this is, and the unique and ongoing risks posed to the Class. The information that was

11  exfiltrated from 23andMe by hackers is incredibly sensitive, containing not only customers'

12  full names and home addresses, but information that could only have come from a genetic

13  testing company: users' genetic heritage, ancestral origin, and DNA relatives. The hackers

14  capitalized on the fact that the information revealed people's genetic heritage to expressly

15  target vulnerable groups—so far, Chinese people and Ashkenazi Jews—in their efforts to sell

16  this information to the highest bidder on the Dark Web. Indeed, one hacker offered the data of

17  Ashkenazi Jews after a widely-reported incident in the Israel-Hamas war so that the list could

18  be used to terrorize Jews. As United States Congressman Josh Gottheimer, Ranking Member of

19  the National Security Agency and Cyber Subcommittee, put it in a letter to the FBI Director

20  Christopher Wray, this leak created an urgent need "to protect the information, locations, and

21  lives of the American Jewish population" from the threat of "domestic extremism." (Compl. ¶

22  53.) And the first hacker offering this data for sale gave explicit instructions about how they

23  would deliver the data in China, pricing the list at $50 million—a price point appealing only to

24  a significant actor. (*Id.* ¶ 46.) Later, a Dark Web buyer with the name "Wuhan" inquired

25  specifically about Chinese profiles, to which they were offered a list of 350,000 people. (*Id.*

26  ¶ 38.)

27      The Complaint filed by Melvin and J.L. provides the most fulsome analysis of these

28  posts and sets forth our investigation—aided by Edelson's in-house forensic investigations

1    team—about the extraordinary harms suffered by the individuals in the Class and provides a

2    unique perspective on the ways 23andMe could have prevented the breach or detected it

3    sooner. Remarkably, 23andMe has now been forced to admit, in a letter publicized just

4    yesterday, that our investigation was right. This demonstrates exactly why a sprint to filing and

5    mediation can't be made at the expense of a complete investigation into both the facts and legal

6    theories at issue. And here, the full extent of the harms inflicted on this Class is far from known

7    absent more information. Yet a rudderless crowd of firms is moving forward in the dark on this

8    important case.

9         In the end, this Motion is asking the Court to make *someone* interim lead for this

10   Class—to introduce structure, get information efficiently, fully investigate and flesh out the

11   claims of the extraordinarily vulnerable people in this case, and litigate or settle the case as

12   most benefits the clients. As set out below, the Court should look for the counsel that this Class

13   would want: a firm with (1) an unparalleled track record in complex privacy litigation, (2) a

14   demonstrated ability to handle a class action case from the investigation phase all the way

15   through trial, and (3) a history of exceptional settlements for the classes they represent. Edelson

16   PC ("Edelson") and its Managing Partner and Director of Nationwide Litigation, Rafey S.

17   Balabanian, have exactly that resume. Mr. Balabanian and the firm's experience shows through

18   in some ways that are obviously beneficial to this class: particularly, we have decades of

19   record-setting privacy settlements and verdicts, including the first-ever adversarially-certified

20   class under a genetic information privacy statute. *Melvin v. Sequencing LLC*, 344 F.R.D. 231

21   (N.D. Ill. 2023). But it also shows through in some less obvious ways: our commitment to the

22   things in class action settlements that most lawyers sweep under the rug, like claims rates.

23   Thinking of this Class as a "client" made up of millions of people, that client would be far less

24   likely to hire a lawyer that gave them a 2-in-100 chance of being paid, and instead would go

25   with the firm that has made it their business to get 30 to 40 out of 100 paid.

26        Plaintiffs recognize that appointing interim lead counsel is more art than science, and

27   never an easy task. Sometimes, it makes sense for the Court to stand on the sidelines and let the

28   competing firms self-order. But here, there is simply too much at stake and no indication that

1   order has arisen organically—quite the opposite. Plaintiffs and the Class are in need of the

2   Court's intervention to appoint interim lead counsel before this mediation proceeds.

3   **II.     BACKGROUND**

4         **A.     The breach and vulnerable class.**

5         On October 6, 2023, Defendant 23andMe—the world's leading direct-to-consumer

6   genetic testing company—posted on its blog that it had become aware of "suspicious activity"

7   related to its customer accounts and determined that "threat actors" were able to access certain

8   customer accounts. (Compl. ¶ 60.) Initially, 23andMe did not report how many accounts were

9   affected, and only months later on December 5, 2023, did it have to admit that it was nearly

10  *half* the company's userbase—nearly 7 million users. (*Id.* ¶¶ 64–66.) The data that was stolen

11  was highly sensitive, including users' genetic heritage, ancestral origin, full names, home

12  addresses, profile pictures, and birth dates. (*Id.* ¶ 3.)

13        But 23andMe's announcement was tardy. In reality, 23andMe customer data had been

14  offered up for sale on a Dark Web forum called Hydra some two months earlier in August

15  2023. (*Id.* ¶ 46.) The hacker claimed to have contacted 23andMe at that time—a relatively

16  common extortion practice—but "instead of taking the matter seriously, [the company] asked

17  irrelevant questions." (*Id.* ¶ 47.) Particularly chilling was that the hacker seemed to be directing

18  their offer of sale to Chinese government or quasi-government actors, providing details about

19  how they would deliver the information in China, and offering the entire data package for sale

20  at $50 million. (*Id.* ¶ 49.) People that might be considered "dissidents" to the Chinese

21  government abroad were rightly terrified, given the government's practice of keeping minute

22  tabs on individuals even in other countries. (*Id.*)

23        Ashkenazi Jews were similarly targeted by hackers. A few days before 23andMe's

24  announcement, on October 1, 2023, a hacker claimed to have close to 20 million pieces of

25  genomic ancestry data owned by 1 million Ashkenazi Jews available for sale on another Dark

26  Web site, Breach Forums. (*Id.* ¶ 36.) Two days later, the same hacker claimed to have an even

27  larger database of information including the personal genetic information ("PGI") and

28  personally identifiable information of seven million users. In order to substantiate his claims,

1   the hacker shared a link to the stolen data, writing, "[t]he CSV file in the link contains the

2   profile list of half of the members of 23andMe . . . [t]hese members have technical details such

3   as their origin estimation, phenotype and health information, photos and identification data,

4   raw data, and their last login date to the site." (*Id.* ¶ 39.)

5   After the Hamas attack on October 7, 2023 and damage to a Gaza hospital complex that

6   at the time was attributed to Israel, the hacker came forward and made their goal of retribution

7   against Jews explicit:



22   (*Id.* ¶ 42.) This post is explicitly marketing to actors seeking to target Jews. (*Id.*) As United

23   States Congressman Josh Gottheimer, Ranking Member of the National Security Agency and

24   Cyber Subcommittee, put it in a letter to FBI Director Christopher Wray, this leak created an

25   urgent need "to protect the information, locations, and lives of the American Jewish

26   population":

27

28

I am concerned that the leaked data could empower Hamas, their supporters, and various international extremist groups to target the American Jewish population and their families. The threat of violent domestic extremism poses a significant danger to America's Jewish community.

(*Id.* ¶ 53.)

### B.    Procedural history and the planned mediation.

The first putative class action lawsuit was filed three days after 23andMe's announcement hit the news, on October 9, 2023. *Santana v. 23andMe, Inc.*, No. 23-cv-05147-EMC (N.D. Cal.). Over the ensuing days and weeks, 36 more actions were filed by 37 firms—to be clear, some on the same complaint—following a common pattern after a highly-publicized data breach. The vast majority of cases were filed in the Northern District of California and related to *Santana* to be presided over by Judge Chen. A handful were filed in the Northern District of Illinois,[3] one in the Central District of California,[4] and two in California state court.[5]

23andMe filed a petition before the JPML on December 21, 2023, to consolidate all federal proceedings before this Court. That motion was opposed by a subset of plaintiffs and their counsel who have filed their cases in Illinois; however, even the oppositions acknowledged that interim counsel should be appointed to represent this Class. *E.g.*, MDL No. 3098, Dkt. 48 at 4 ("Appointment of interim class counsel in the cases related before Judge Chen will even further streamline their resolution by naming one group of counsel to act on behalf of the plaintiffs in all 30 of the cases before him."). At the least, 90% of the cases have already been centralized before this Court. Even if the oppositions are successful and the JPML declines to create an MDL, it will be because the bulk of the matters can be handled directly in this Court and the small fraction of others can be coordinated (formally or informally) by the leadership appointed here.

---

[3]    *Bacus v. 23andMe, Inc.*, No. 1:23-cv-16828-MSS (N.D. Ill.); *Hu v. 23andMe, Inc.*, No. 1:23-cv-17079-RRP (N.D. Ill.).
[4]    *Gill v. 23andMe, Inc.*, No. 2:23-cv-10527-FWS-DFM (C.D. Cal.).
[5]    *Morgenstern v. 23andMe Holding Co.*, No. CGC-23-610816 (Sup. Ct. San Francisco); *Vasquez v. 23andMe, Inc.*, No. 23-cv-424996 (Sup. Ct. Santa Clara).

23andMe moved to stay the cases consolidated before this Court pending the ruling of the JPML (Dkt. 37), which is now fully briefed. But in the meantime, there is a mediation set for January 31 between 23andMe and some portion of the plaintiffs in these thirty-plus cases—before the filing of the contemplated leadership motions, and before any case management conference in this case. (*See* Dkt. 58 at 9.) This early mediation, unfortunately, is going down a path bristling with warning signs for, at best, a wasted opportunity, and at worst, a slap-dash settlement that will be unacceptable to the Court.

These cases are in need of Court-appointed interim lead counsel. Where a leadership structure is in place prior to mediation, a few key things happen. First, the leadership appoints just one or a few lawyers to lead negotiations. That allows the plaintiffs to speak effectively with "one voice," while making sure that all legitimate views on the plaintiffs' side are accounted for. It also allows the right people to be at the mediation, whether from one firm or several, to provide their expertise to different parts of the case in an organized way. Second, organized counsel are able to make sure that sufficient investigation has been performed and enough information has been gathered from the defendant to appropriately value the claims in the case. Third, an effective mediation begins long before the mediation actually starts, with the Parties exchanging views about the merits of the case and concrete values (both amongst themselves and with the mediator) so that the day of mediation amounts to productive decision-making within a principled framework. This involves, typically, many conversations and a mutual exchange of substantial pre-mediation briefing. The alternative, which is unfortunately true for how so many firms approach mediation, is simply going to the mediation to aimlessly try to figure out how much the Defendant is willing to put on the table and taking it.[6] Finally, but relatedly, leadership prevents a "race to the bottom," making sure that a defendant doesn't get to seek out its desired adversaries for negotiation or litigation.

---

[6] Or, as a defense attorney candidly put it, the mediation is driven not by a particular view on the plaintiffs' side but dictated instead by "what a court is going to approve in a settlement. . . . Typically, the lowest number that the court will approve is the number that most plaintiffs' lawyers I'm dealing with . . . will accept." *The One with the Czar*, NON-COMPLIANT PODCAST (Oct. 13, 2022), https://podcasts.apple.com/us/podcast/non-compliant-podcast-episode-50-the-one-with-the-czar/id1491233296?i=1000582530291.

1   Here, by contrast, there is no meaningful order heading into the mediation, and it's
2   structured in a way that simply doesn't make sense. This is the result of certain initial decisions
3   which were somewhat arbitrary and wrongheaded, but given the press of time and the difficulty
4   in even discussing these issues with such a large group, they've gradually become immutable.
5   For instance, the attendance of the mediation is limited to 20 people in person, because that's
6   the physical capacity of the hotel room that's been rented. (Declaration of J. Eli Wade-Scott
7   ("Wade-Scott Decl."), ¶ 3.) According to 23andMe, all of the firms on file have been invited to
8   the mediation (dkt. 58 at 9), but a single lawyer from each firm is allowed to attend because of
9   space constraints. (Wade-Scott Decl. ¶ 3.) That creates artificial but material limits on who can
10  actually add value to the case. As just one example, our firm would want an experienced
11  partner from the firm present to lead the negotiation (such as Mr. Balabanian), but also the
12  firm's associates with substantial subject-matter expertise—such as Emily Penkowski Perez, an
13  associate on this matter who will (and already has) leveraged her experience as an intelligence
14  analyst with the National Security Agency to detail the need for prospective relief in this
15  unique case and how it should be structured.

16  Moreover, the abundance of attorneys but lack of clearly defined roles means that
17  everyone's efforts are focused on posturing for lead. That has resulted primarily in make-work,
18  such as numerous firms issuing various, duplicative informal discovery requests to 23andMe.
19  (*Id.* ¶ 4.) What it hasn't produced is any tangible advances of the ball, as 23andMe has made
20  only a vague commitment to produce *some* information—subject to each lawyer's signature on
21  a confidentiality agreement—on January 23, a week before the mediation. (*Id.* ¶ 5.) And all of
22  the plaintiffs and attorneys in the case were "suggested" to submit a single, eight-page
23  mediation statement that is due today. (*Id.* ¶ 6.) 23andMe, for its part, will not be sharing its
24  own mediation statement, foreclosing the last chance Plaintiffs have to learn its views on
25  mediation prior to the day of. (*Id.*) And while 23andMe has kept the plaintiffs' group shadow-
26  boxing, it has acknowledged in a filing with the California Attorney General that the breach
27  occurred months before 23andMe's announcement, without (according to 23andMe) the
28  company's detection—an admission that corroborates the more thorough investigation in

1  Plaintiffs' complaint and which materially changes 23andMe's liability. This admission

2  demonstrates exactly why a rush to mediation without all the facts is so detrimental to the

3  Class. Plaintiffs are in fact in favor of mediating the case. But that process has to be informed

4  by an actual investigation, not artificially limited in ways that harm the class, and with an

5  experienced firm in the driver's seat. Edelson sets forth the reasons that Rafey Balabanian, the

6  firm's Managing Partner and Nationwide Director of Litigation, should be appointed below.

7  But regardless, the complex facts of this case and the extraordinary harms that the Class has

8  suffered demands more than the path we are on.

9  **III.  LEGAL STANDARD**

10  The Federal Rules permit the Court to appoint "interim counsel to act on behalf of a

11  putative class before determining whether to certify the action as a class action." Fed. R. Civ. P.

12  23(g)(3). While the Rules do not set forth the circumstances in which it is appropriate to

13  appoint interim leadership, courts typically do so in this exact posture: multiple actions filed

14  with overlapping putative class definitions. *E.g.*, *In re Meta Pixel Healthcare Litig.*, No. 22-cv-

15  03580-WHO, 2022 WL 18399978, at *2 (N.D. Cal. Dec. 21, 2022). Courts consider the same

16  factors in appointing interim counsel that they do in appointing class counsel: "(i) the work

17  counsel has done in identifying or investigating potential claims in the action; (ii) counsel's

18  experience in handling class actions, other complex litigation, and the types of claims asserted

19  in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that

20  counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). The Court may also

21  consider "any other matter pertinent to counsel's ability to fairly and adequately represent the

22  interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

23  **IV.  ARGUMENT**

24   **A.  This case involves extraordinarily sensitive data of a uniquely vulnerable
25     class.**

26  In an ordinary data breach case, consumers are rightly concerned about the loss of their

27  personal information: names, addresses, social security numbers—that expose them to a range

28  of now-familiar risks, such as identity theft. But this is not an ordinary data breach case, and

these are not normal harms. The data collected by 23andMe include data points that can uniquely be derived from someone's DNA, such as their genetic heritage and ancestral origin. (Compl. ¶ 3.) As set forth fully in Plaintiffs' complaint, Plaintiffs' investigation into the posts on the Dark Web has demonstrated that one of the worst imaginable uses of that data has already come to pass: hackers have segmented out groups of people against whom there is particular animus—so far, Ashkenazi Jews and Chinese people—and marketed that data to buyers on the Dark Web most likely to act on that animus.

On October 1, 2023, a hacker using the alias "Golem" leaked the 23andMe DNA and profile data of 1 million Ashkenazi Jews,[7] including their full names, home addresses, and birth dates on Breach Forums, calling it "The most valuable data you'll ever see":



(*Id.* ¶ 36.) A user with the alias "Wuhan" replied to "Golem," asking if the hacker had any "Chinese accounts" and asking to "speak privately." (*Id.* ¶ 38.) Golem responded with a link to the DNA and profile data of 100,000 23andMe customers with Chinese ancestry, including their full names, home addresses, and birth dates. (*Id.*) Golem also stated that he has a total of 350,000 DNA and profile records and that he would release them if there was interest. (*Id.*) And the very first poster offering up the entire database for sale for $50 million—going by the

---

[7]     Ashkenazis are a subset of the Jewish diaspora who trace their ancestry back to Central or Eastern Europe.

name "Dazhbog"—also pointedly described how they would deliver the information in China. (*Id.* ¶ 46.)

Taking a step back, there are two approaches plaintiff's firms typically take in response to a high-profile data breach. One is to throw together a complaint and immediately file[8]— allowing the firm to create a narrative based on the appearance of meaningful action (sending out hollow requests for information, organizing phone calls, or frankly doing a quick mediation), but that does not deliver actual benefits to the class. The other strategy is to take the time to do a full investigation of the factual underpinning of the case, the legal theories, and the harms suffered by the Class. For instance, despite the fact that some three dozen complaints have been filed—with many of them repeating without insight 23andMe's admission that the attack was performed using "credential stuffing"—the complaints don't seem to understand the significance of that fact. Plaintiffs' complaint in this action, informed by Edelson's in-house forensic investigations team, explains why that mode of attack is exactly what should have put 23andMe on notice for swift detection of the breach, prompting earlier remedial measures. (Compl. ¶¶ 69–83.) And 23andMe has now been forced to corroborate—in a letter publicized just the day before this filing—Plaintiffs' unique allegations: 23andMe has admitted that the breach occurred starting in *April* 2023, which they were able to detect.[9] What that means is that the liability argument against 23andMe is incredibly strong here. And the most glaring difference is that the complaints on file don't fully grapple with the unique harm here, which is the extensive posts on the Dark Web that are expressly marketing people's identities to be targeted for terror. (*Id.* ¶¶ 34–59). In response to that unique harm, Plaintiffs have to explore remedies that aren't at issue in an everyday data breach case—fully laid out in Plaintiffs' claim for threat assessment and monitoring. (*Id.* ¶¶ 119–30.) Finally, many of the complaints don't address the reality that there are state statutes that specifically address genetic privacy,

---

[8]    Frequently, along with a number of friendly firms filing at the same time with whom one can appear to "coordinate."

[9]    *Submitted Data Breach Notification Sample*, California Dep't. of Justice, https://oag.ca.gov/ecrime/databreach/reports/sb24-579679.

protecting individuals in the position of the Class. (*Id.* ¶¶ 151–61.) Plaintiffs' complaint represents the result of a meaningful investigation and the full picture known to date.

Settlement talks, similarly, must be informed by that entire picture. And, when the time comes to explore settlement, it means ordering a mediation in a way that will produce the best result for the class. Here, that hasn't happened.

### B. The mediation is not set up to secure a positive result for the class.

Right now, there's a mediation set for January 31, 2024, and it appears that at least twenty of the firms representing plaintiffs in these consolidated actions are set to take part. Edelson was invited to the mediation on January 15. Without divulging any confidences, we can safely say that there's been no productive discussion about structure, strategy, mutually accepted facts, or any of the other critical pieces of information that the parties need prior to a high-stakes mediation where unprecedented class-wide injury has been inflicted. (Wade-Scott Decl. ¶¶ 7-8.)

Plaintiffs are not casting aspersions at any particular set of plaintiffs' counsel attending the mediation. The point is that, without leadership, the process is defined at every turn by the absence of considered decision-making. As noted above, while most firms appear to want to attend to avoid missing out in the event of a settlement, the attendance is arbitrarily capped at twenty lawyers—and one per firm—due to physical capacity limits. And numerous sets of counsel have issued overlapping, informal discovery requests in an effort to demonstrate that they've contributed in some meaningful way,[10] while 23andMe has at the same time avoided making firm commitments to produce meaningful information. 23andMe does not intend to share its eight-page mediation statement with the plaintiffs' group, leaving plaintiffs in the dark not just about material facts in the case—like the admissions that became public just yesterday

---

[10]     This kind of duplicative work does not "buy" sophisticated analysis or real strategy, because the point is not to efficiently gather and disseminate information into a well-structured team—it's just to do the work. Edelson has thrown the red flag on exactly this kind of behavior before. *In re Tiktok, Inc. Consumer Privacy Litig.*, No. 20-cv-4699, dkt. 212 at 13 (N.D. Ill. Apr. 14, 2022).

1   corroborating Plaintiffs' complaint here—but what its views on the mediation even are. In the

2   end, virtually every process point has shaken out against the interests of the Class.

3          There's no need, in a case as important as this one, for the sprint to mediation. To be

4   sure, there is a time and place for settlement discussions—even early in a case. But the sprint

5   itself is a product of the absence of leadership, where firms don't want to be left out in the cold

6   if another jumps at an offer the defendant is willing to make right now. That leads to pitfall

7   after pitfall, from process design to the settlement itself.

8          This Class will benefit from the Court's involvement at this stage by appointing an

9   interim lead. That will allow lead counsel to take the steps discussed above, including:

10  appointing a well-informed negotiation team that is able to capitalize on their specialized

11  experience to best serve the interests of the Class, creating a considered and efficient process

12  for the exchange of information with 23andMe to fully explore the claims at issue in this case,

13  and avoiding giving 23andMe the benefit in a negotiation of its choice of a disorganized

14  adversary. To be absolutely clear, Plaintiffs are not asking the Court to "sit in" on the eventual

15  mediation or process leading up to it—once empowered to do so, lead counsel can create a

16  process that allows the case to move forward expeditiously with the sole focus on the Class's

17  interests. But the Court's involvement now will be a boon to the Class and the litigation

18  generally.

19         **C.      Rafey S. Balabanian of Edelson PC should be appointed lead counsel.**

20         In determining interim leadership, the Court's role is akin to hiring counsel to a "client"

21  made up of millions. The clients in this case would rightly want a few key things: counsel (1)

22  who are experienced with cases arising from new technologies, particularly privacy cases; (2)

23  who have an established track record of prevailing at every stage of a case, from the motion to

24  dismiss through trial; and (3) who have demonstrated their commitment to competently

25  representing people in class actions particularly, like actually getting people paid in

26  settlements. *See* Fed. R. Civ. P. 23(g). The undersigned, Rafey S. Balabanian of Edelson PC,

27  fits that bill.

28

Edelson PC is a nationally-recognized leader in high-stakes plaintiffs' work, ranging from class and mass actions to public client investigations and prosecutions. The firm has repeatedly been recognized by Law360 as Cybersecurity & Privacy Group of the Year (2017, 2018, 2019, 2020, 2022, 2023), Consumer Protection Group of the Year (2016, 2017, 2019, 2020), and a "Privacy Litigation Heavyweight" and "Cybersecurity Trailblazer" by the National Law Journal (2016). The National Law Journal also recognized us as "Elite Trial Lawyers" in Consumer Protection (2020, 2021), Class Action (2021), Privacy/Data Breach (2020), Mass Torts (2020), and Sports, Entertainment and Media Law (2020). Just considering cases where Edelson PC has served as lead counsel, the firm's verdicts and settlements exceed $5 billion. (Declaration of Rafey S. Balabanian ("Balabanian Decl."), ¶ 3.)

Edelson's track record in privacy cases, particularly, is unparalleled. The firm filed the first-ever case under the Illinois Biometric Information Privacy Act ("BIPA"), which resulted in the largest single-state privacy settlement ever at $650 million. *See In re Facebook Biometric Information Privacy Litig.*, 522 F. Supp. 3d 617 (N.D. Cal. 2021).[11] (Balabanian Decl. ¶ 4.) The firm holds the record for the largest-ever privacy jury verdict at $925 million. *Wakefield v. ViSalus, Inc.*, No. 3:15-cv-1857-SI (D. Or. June 24, 2019).[12] (Balabanian Decl. ¶ 8.) We are also pioneers in litigation under the state genetic information privacy statutes specifically at issue in this case and obtained the first-ever adversarially-certified class under any such statute. *Melvin*, 344 F.R.D. at 233 (Illinois Genetic Information Privacy Act); *see also Cole v. Gene by Gene Ltd.*, No. 14-cv-00004-SLG (D. Alaska) (Alaska Genetic Information Privacy Act). (Balabanian Decl. ¶ 5.) The firm also holds the record for the largest TCPA settlement. *Birchmeier v. Caribbean Cruise Line, Inc.*, No. 12-cv-04069 (N.D. Ill.); (Balabanian Decl. ¶ 3). The firm was lead counsel in *Spokeo v. Robins*, in which the Supreme Court held that "intangible harm" could satisfy Article III standing requirements. *See* 136 S. Ct. 1540 (2016).

---

[11]    The Robbins Geller firm was Edelson's co-counsel in that case and has also filed a case here.
[12]    The verdict was later vacated, with the Ninth Circuit holding that the lower court had to consider whether the damages awarded by the jury potentially violated due process. *Wakefield v. ViSalus, Inc.*, 51 F.4th 1109, 1125 (9th Cir. 2022).

Commentators called the case "the most important privacy class action and consumer case of the decade."[13] Litigating on behalf of the American Civil Liberties Union, we obtained a consent decree in 2022 that permanently enjoins Clearview from selling access to its massive database of facial vectors to any private person or company, as well as additional restrictions—a settlement that has been called a "milestone for civil rights."[14] In short, Edelson is the nation's leading class action firm on privacy issues, with the firm's cases "read[ing] like a time capsule of the last decade, charting how computers have been steadfastly logging data about our searches, our friends, our bodies."[15] (Balabanian Decl. ¶ 3.)

Just last year, Judge Lasnik of the Western District of Washington, in assessing the final fairness of the firm's $415 million settlement with an operator of an alleged illegal online casino, described how the Edelson firm worked "in the Executive branch, in the Legislative branch, and the Judicial branch" to secure an extraordinary result for its clients in a "unique" case—describing the firm as "all in with high quality and very admirable lawyering[.]" *Benson v. DoubleDown Interactive LLC*, No. 18-cv-00525, Dkt. 550 (W.D. Wash. June 22, 2023). (Balabanian Decl. ¶ 6.) The Illinois Appellate court recently cited a lower court's findings that Edelson PC is "highly experienced and more than competent," that they had performed "an extraordinary job to secure the amount of money for the class," and that the settlement Edelson achieved was "truly an extraordinary resolution to the great benefit of the class." *McCormick v. Adtalem Glob. Educ., Inc. et al.*, 2022 IL App (1st) 201197-U, ¶ 30. (Balabanian Decl. ¶ 7.) In approving the settlement in *In re Facebook Biometric Privacy Litigation*, Judge Donato of the Northern District of California noted the "landmark result" achieved for the Class, observing that Edelson and its co-counsel had produced a "major win for consumers in the hotly

---

[13]    *See* John K. Higgins, *Supreme Court to Hear 'Non-Injury' Privacy Class Action*, E-COMMERCE TIMES (May 6, 2015), https://www.ecommercetimes.com/story/supreme-court-to-hear-non-injury-privacy-class-action-82015.html.
[14]    *See S.T.O.P. Welcomes Clearview AI, ACLU Settlement, Calls For National Ban*, SURVEILLANCE TECHNOLOGY OVERSIGHT PROJECT (May 9, 2022), https://www.stopspying.org/latest-news/2022/5/9/stop-welcomes-clearview-ai-aclu-settlement-calls-for-national-ban.
[15]    Conor Dougherty, *Jay Edelson, the Class-Action Lawyer Who May Be Tech's Least Friended Man*, N.Y. TIMES (Apr. 4, 2015), https://www.nytimes.com/2015/04/05/technology/unpopular-in-silicon-valley.html.

contested area of digital privacy." 522 F. Supp. 3d at 621. (Balabanian Decl. ¶ 4.) In *Barnes v. Aryzta*, the court endorsed an expert opinion finding that we "should 'be counted among the elite of the profession generally and [in privacy litigation] specifically' because of [our] expertise in the area." No. 17-cv-7358, 2019 WL 277716, at *3 (N.D. Ill. Jan. 22, 2019); *see also In re Facebook Priv. Litig.*, No. 10-cv-02389, dkt. 69 (N.D. Cal. Dec. 10, 2010) (former Chief Judge Ware of the Northern District of California, calling the firm "pioneers" and noting that Edelson has been at the forefront of "some of the largest consumer class actions in the country" on those issues). (Balabanian Decl. ¶ 7.)

In a case like this one, a defendant needs to understand that it is up against top-flight counsel equipped for every stage of a case—from investigation through trial. Edelson boasts a unique-in-the-industry forensic investigations team headed by Shawn Davis. (Balabanian Decl. ¶ 11.) Mr. Davis holds numerous certifications relevant to this data breach case, including ISC2 CISSP, GIAC Forensic Examiner, and GIAC Incident Handle (among many others). (*Id.* ¶ 7.) Mr. Davis serves as an in-house technical expert for the firm, including testifying at trial in federal court, and is routinely asked to testify before legislative bodies on critical areas of emerging artificial intelligence, cybersecurity, and privacy. (*Id.*) In 2020, Mr. Davis was appointed by the Executive Office of the President to the Federal Government Advisory Committee on Data for Evidence Building with the U.S. Department of Commerce for a two-year term. (*Id.*) This resource, along with the firm's substantial subject-matter expertise, allows the firm to routinely undertake in-house, complex reviews of novel and proprietary technology, security assessments, and the investigation and analysis of highly confidential and complex source code—all technical issues that have already and will continue to present themselves in this case. (*Id.*)

Turning to the latter phases of the case: While it used to be a virtual certainty that class cases would settle prior to trial, that has become less and less true as firms like Edelson demonstrate that juries will award significant victories to class members, including in privacy cases. As discussed above, Edelson took the *Wakefield* case to a $925 million verdict. And just last year, we helped deliver a historic verdict to a certified class of victims of the Labor Day

wildfires in Portland, which established liability and punitive damages for thousands of class members.[16] Just this week, Edelson co-led a trial resulting in a second verdict in the damages phase of that litigation awarding $85 million to nine victims of the wildfires, paving the way to tens of billions in damages class-wide.[17] (Balabanian Decl. ¶ 8.) The point, of course, is not that every case must or should go to trial—just that the best results can be reached only where there is a credible possibility that the lawyers can do that. As just one example, the $650 million *Facebook Biometric* settlement was reached on the eve of trial after years of litigation and successful appeals in the Ninth Circuit.

The firm has significant experience leading aggregated litigation in challenging cases presenting complex, novel issues of law. The firm (and Mr. Balabanian specifically) were among those who served as counsel for the Tort Claimants' Committee in one of the largest and most complex bankruptcies in the history of the country involving the giant West Coast utility PG&E, which resulted in a $13.5 billion settlement for fire victims, the firm's clients among them. (Balabanian Decl. ¶ 9.) As discussed above, we successfully certified a class for victims of the Labor Day 2020 wildfires in Portland to litigate the issue of liability and punitive damages class-wide—prevailing on each of those issues at trial after years of litigation. *See James v. PacifiCorp*, No. 20CV33885 (Multnomah Cnty. Ct., Or.). (Balabanian Decl. ¶ 9.) And we frequently represent states in multistate investigations and litigation, including the District of Columbia against JUUL for deceptive trade practices, and New Hampshire, Utah, and the District of Columbia against social media companies for harming a generation of their citizens with social media addiction. (Balabanian Decl. ¶ 10.) And after securing a watershed Ninth Circuit victory for consumers in *Kater v. Churchill Downs Inc.*, 886 F.3d 784 (9th Cir. 2018), we've successfully litigated consumer claims against numerous gambling companies for allegedly profiting from illegal internet casinos—where we've already secured $651 million in

---

[16] Jonathan Stempel, *Jury says Berkshire's PacifiCorp owes punitive damages for 2020 Oregon wildfires*, REUTERS (June 14, 2013), https://www.reuters.com/sustainability/jury-says-berkshires-pacificorp-owes-punitive-damages-2020-oregon-wildfires-2023-06-14.
[17] Johnny Diaz, *Utility Must Pay $85 Million to People Affected by Oregon Wildfires, Jury Rules*, N.Y. TIMES (Jan. 24, 2024), https://www.nytimes.com/2024/01/24/us/oregon-wildfires-award.html.

1   cash relief. (Balabanian Decl. ¶ 6.) The firm (and Mr. Balabanian specifically) have been

2   appointed interim lead counsel in subsequent multidistrict litigation against the platforms that

3   hosted those alleged illegal casinos. *See In re Apple Inc. App Store Simulated Casino-Style*

4   *Games Litig.*, No. 21-md-02985-EJD (N.D. Cal.); *In re Google Play Store Simulated Casino-*

5   *Style Games Litig.*, No. 21-md-03001-EJD (N.D. Cal.); *In re Facebook Simulated Casino-Style*

6   *Games Litig.*, No. 21-cv-02777-EJD (N.D. Cal.). Each of these cases involved myriad issues of

7   first impression, in which the firm successfully worked within coalitions (and are still doing so)

8   to deliver extraordinary results to our clients. (Balabanian Decl. ¶ 10.)

9       Rafey S. Balabanian, Edelson PC's Managing Partner and Director of Nationwide

10  Litigation, has the subject-matter and complex, aggregate litigation experience to provide

11  effective leadership here. Mr. Balabanian has been appointed lead class counsel in dozens of

12  class actions in state and federal courts across the country and has resolved numerous cases to

13  the benefit of the clients and classes he has represented. While much of Mr. Balabanian's prior

14  work will inform and support his efforts here—as detailed in Edelson PC's firm resume (*see*

15  Balabanian Decl. ¶ 16, Ex. 1)—some are worth highlighting here. First, Mr. Balabanian was

16  one of the principal attorneys representing Plaintiffs in the *In re Facebook Biometric*

17  *Information Privacy Litigation* matter, in which he was central in securing adversarial class

18  certification and reaching a record-breaking settlement on the eve of trial—demonstrating his

19  expertise in privacy actions and ability to secure excellent results for the class. (Balabanian

20  Decl. ¶ 12.) Second, Mr. Balabanian has significant experience leading complex cases: Mr.

21  Balabanian was one of the attorneys who served the Tort Claimants' Committee in the PG&E

22  bankruptcy, and played a significant role in reaching the $13.5 billion settlement on behalf of

23  fire victims, and was appointed interim lead counsel in the consolidated litigation seeking to

24  hold technology platforms liable for their hosting of illegal online casinos. *See supra.* Mr.

25  Balabanian's familiarity with pressing difficult issues of law alongside other counsel will serve

26  this Class well. (Balabanian Decl. ¶ 12.)

27      Mr. Balabanian, while leading the case, naturally will not work alone. The team

28  working on this matter at Edelson PC includes Jay Edelson, J. Eli Wade-Scott, Michael Ovca,

Emily Penkowski Perez, and Hannah Hilligoss. Each of these individuals' experience is set forth in full in the firm's resume, but a few particulars are again worth highlighting here:

- **Jay Edelson.** Jay Edelson—the firm's Founder and CEO—has been one of the central figures in the development of modern consumer privacy law. An adjunct privacy professor at UC Berkeley School of Law, he's been described by the New York Times as "Tech's Least-Friended Man,"[18] and called "probably the best known, and most innovative, consumer privacy lawyer on the planet."[19] (Balabanian Decl. ¶ 13.) Mr. Edelson has been named three times as a "Titan of the Plaintiff's Bar" by Law360 (2014, 2021, and 2023), and has been consistently recognized both inside and outside the legal profession for his privacy groundbreaking work, profiled as one of Fast Company's "Most Creative People in Business"—the first plaintiffs' attorney to ever receive the award. [20] (Balabanian Decl. ¶ 13.) Equally important, Mr. Edelson has been the leading voice of the reform wing of the plaintiffs' bar.[21] Mr. Edelson has, and will, leverage his unique skillset in this litigation to focus on development of applicable claims to these unprecedented facts, as well as litigation and negotiation strategy.

- **J. Eli Wade-Scott (*Harvard Law School '14, magna cum laude*).** Mr. Wade-Scott is the firm's director of class action litigation, and has been appointed class counsel in dozens of privacy actions. He has delivered hundreds of millions of dollars to consumers in privacy cases—always with strong settlement structures that drive unprecedented class engagement in claiming their money at the time of settlement (as further discussed below). (Balabanian Decl. ¶ 13.) Indeed, Mr. Wade-Scott is a pioneer when it comes to using direct checks in privacy cases, setting a standard followed by

---

[18] Dougherty, *supra* n.15.
[19] Eric Troutman, *Deserve to Win Podcast* (July 18, 2022), https://www.natlawreview.com/article/deserve-to-win-ep-3-jay-edelson-now-available-we-talk-dobbs-javier-and-privacy.
[20] David Lidsky, *Meet the lawyer who stood between Big Tech and your facial recognition data*, FAST COMPANY (Aug. 9, 2022), https://www.fastcompany.com/90764561/jay-edelson-most-creative-people-2022.
[21] Christine Schiffner, *Jay Edelson in a 'Battle for the Soul of the Plaintiffs Bar'*, Law.Com (Sept. 19, 2022), https://www.law.com/nationallawjournal/2022/09/19/jay-edelson-in-a-battle-for-the-soul-of-the-plaintiffs-bar/.

numerous subsequent settlements. (*Id.*) Mr. Wade-Scott also represents governments in cases pressing first-impression privacy issues, including on behalf of the District of Columbia against Facebook in its litigation arising from Cambridge Analytica and on behalf of New Mexico against Google for violations of the Children's Online Privacy Protection Act. (*Id.*) Mr. Wade-Scott has been recognized as a Rising Star of the Plaintiffs' Bar for three consecutive years by the National Law Journal, and was profiled by Bloomberg Law as one of "Five Fresh Faces to Know in Privacy and Cybersecurity."[22] Mr. Wade-Scott will assist Mr. Balabanian in leading the litigation and managing the nuts-and-bolts work of day to day class action practice, from crafting discovery strategies to settlement structure.

- ***Michael Ovca (Northwestern Law School '17, cum laude).*** Mr. Ovca has been one of the firm's lead associates on technology and privacy matters since he began at Edelson in 2017 and has worked on or led more than two dozen privacy and technology actions at the firm. (Balabanian Decl. ¶ 13.) Most notably, Mr. Ovca was recently the lead associate in securing the first-ever adversarially certified class under *any* state's genetic privacy law in *Melvin v. Sequencing, Inc.*, and was appointed class counsel there.

- ***Emily Penkowski Perez (Northwestern Law School '20, cum laude).*** Ms. Penkowski-Perez not only brings substantial experience from her work on more than ten technology/privacy actions at the firm, including her work representing the District of Columbia in its groundbreaking action against Facebook, but also the singular perspective of someone who has worked as an intelligence analyst for the National Security Agency, in the Office of Counterintelligence & Cyber (previously the NSA/CSS Threat Operations Center) and the Office of Counterterrorism. (Balabanian Decl. ¶ 13.) Ms. Penkowski is routinely pulled into matters in which the firm can

---

[22]    Andrea Vittorio, *They've Got Next: Privacy and Cybersecurity Fresh Face Eli Wade-Scott*, BLOOMBERG LAW (Oct. 29, 2021), https://news.bloomberglaw.com/business-and-practice/theyve-got-next-privacy-and-cybersecurity-fresh-face-eli-wade-scott.

leverage her unique expertise. (*Id.*)

- **Hannah Hilligoss (*Harvard Law School '22, cum laude*).** Ms. Hilligoss's practice focuses on privacy and technology actions at the firm, where she has worked on numerous technology and privacy actions since beginning at the firm. (*Id.*) Prior to joining Edelson, Ms. Hilligoss worked at Harvard's Berkman Klein Center for Internet and Society, where she authored several papers on ethics and governance in new technologies, particularly artificial intelligence, and led a working group of Harvard faculty focused on ethical technology development. (*Id.*) Ms. Hilligoss's proven ability to parse technological and privacy issues without precedent and determine how law and policy should address them will yield significant dividends for the Class.

To be clear, Edelson is not asking for this entire team of attorneys to be appointed lead counsel—that is appropriately settled on the shoulders of one final decision-maker or organized with a co-lead—but to highlight the depth and variety of experience that the firm brings to the case. And the firm has resources to address every phase of the case: in addition to the dedicated investigations and in-house forensic investigations team, as well as the deep bench of litigators assigned to the case, the firm also has a dedicated appellate team, a dedicated trial team, and a dedicated government affairs team (which is often pulled in if the case involves legislative skirmishes or if the firm needs to coordinate with governmental actors). (*Id.* ¶ 14.) Nor, simply put, does the firm lack the material resources to contend with a well-financed adversary. We've recovered billions of dollars for the firm's clients, but equally important, have demonstrated that the firm has been run soundly from a financial point of view: A good marker is to look at how firms weathered the COVID-19 pandemic; while many of plaintiffs' firms (either properly or not) competed against their clients to take large Paycheck Protection Program loans, our firm did not—and in fact, continued with its commitment to grow and increased salaries and benefits for our employees. (*Id.* ¶ 15.)

Finally, Edelson has long been vocal about raising the bar for class action practice—particularly on issues that others shy away from. One relevant example is our firm's focus, and accompanying track record, on driving exceptional claims rates in class action settlements.

Historically, plaintiffs' lawyers have been satisfied with claims rates in the single digits or lower, and courts accustomed to those numbers approved them. *E.g.*, *Pollard v. Remington Arms Co., LLC*, 320 F.R.D. 198, 214 (W.D. Mo. 2017), *aff'd*, 896 F.3d 900 (8th Cir. 2018) (collecting cases from around the country granting final approval to settlements with less than 1% claims rate), *see also* Claiming rates, 4 NEWBERG AND RUBENSTEIN ON CLASS ACTIONS § 12:17 (6th ed.) (noting paucity of empirical evidence on claims rates, referencing study that found three settlements with claim rates "below 5% (two of which were below 1%)"). In many cases, these low claims rates were baked in from the beginning because the settlements were claims-made and reversionary—the plaintiffs' counsel got paid based on a sticker price that included all possible money the defendant might ever pay, but the reality was that the defendant paid just the few class members that claimed. Even in an era where far more settlements are non-reversionary (claimants split the pot *pro rata*), a low claims rate is something a plaintiffs' attorney has little self-interest in calling out: it means per-claimant relief is higher, and the deal looks better at final approval.

But the reality is that a claims rate of one percent means that 1 in every 100 people in the class are actually getting monetary relief. That's not acceptable if a lawyer is putting their clients—the class—first. It has been our view that we have to talk about claims rates and insist on settlements and notice programs that drive historic engagement from the class, precisely *because* it is an issue that gets swept under the rug.[23] And our results speak for themselves:

| CASE | CLAIMS RATE |
|---|---|
| *Villagomez v. iSolved HCM, Inc.*, No. 19-CH-12932 (Cir. Ct. Cook Cnty. May 11, 2023) | 45.2% |
| *LaBarre v. Ceridian HCM, Inc.*, No. 19-CH-0648 (Cir. Ct. Cook Cnty. Nov. 30, 2022) | 34.47% |
| *Dickey v. Advanced Micro Devices, Inc.*, No. 15-cv-04922 (N.D. Cal.) | 27.3% |
| *Figueroa v. Kronos Incorporated*, No. 19-cv-01306 (N.D. Ill. Dec. 20, 2022) | 26.78% |
| *Lukis v. Whitepages, Inc.*, No. 19-cv-04871 (N.D. Ill. Sept. 28, 2022) | Two classes: 25%, 17%, respectively |

---

[23]    In addition to talking about claims rates, we occasionally sing and rap about them, too. Edelson Creative, *We Don't Talk About Claims Rates*, YOUTUBE (Apr. 7, 2022), https://www.youtube.com/watch?v=L7ULPjEB85.

| | |
|---|---|
| *Neals v. ParTech, Inc.*,<br>No. 19-cv-05660 (N.D. Ill. July 20, 2022) | 23.86% |
| *In re Facebook Biometric Info. Priv. Litig.*,<br>No. 15-cv-3747 (N.D. Cal. Feb. 26, 2021) | 22% |
| *Crumpton v. Octapharma Plasma, Inc.*,<br>No. 19-cv-08402 (N.D. Ill. Feb. 16, 2022) | 22% |
| *Sosa v. Onfido, Inc.*,<br>No. 20-cv-04247 (N.D. Ill. Dec. 4, 2023) | Two classes: 18.3%,<br>20.1%, respectively |
| *Kusinski v. ADP LLC*,<br>No. 17-CH-12364 (Cir. Ct. Cook Cnty. Feb. 10, 2021) | 12.7% |
| *Krause v. RocketReach, LLC*,<br>No. 21-cv-1938 (N.D. Ill. Sept. 12, 2023) | 12.11% |

Return for a moment to the concept of the class as a client who, through the Court, is deciding who to hire as counsel. It would be quite relevant to that class-as-client if one firm is likely to get 20 to 40 out of every 100 class members paid, versus another firm with a track record in the single digits. And we take this seriously even when no one is looking over our shoulders: in a recent settlement, the claims rate prior to final approval was stalling at 2.59%. Despite the likelihood that such a rate would be approved, and with no objectors in the wings, the firm decided to ask for more time—delaying our fees, naturally—to try to drive a better claims rate. *See Fischer v. Instant Checkmate LLC*, No. 19-cv-04892, dkt. 274 (N.D. Ill. Nov. 17, 2023); *see also* Allison Grande, *Class Counsel Gets Time to Grow Participation in Privacy Deal*, LAW360 (Nov. 22, 2023), https://www.law360.com/articles/1769616/class-counsel-gets-time-to-grow-participation-in-privacy-deal. Edelson ultimately reported an aggregate claims rate of more than 15% across seven settlement classes, with the second-largest class reaching a 20% claims rate. *Fischer*, No. 19-cv-04892, dkt. 283-3, ¶ 16 (N.D. Ill. Jan. 24, 2024).

## V.     CONCLUSION

The Court should act soon to appoint interim lead counsel. As it stands, 23andMe enjoys a distinct advantage of a disorganized adversary in a mediation that isn't structured to produce a meaningful result. That hurts the class, even if no settlement is ultimately reached, because it undermines actual progress and gins up needless billing. There is a better path, and leadership should be appointed to steer this case down it. Plaintiffs respectfully request that the Court appoint Rafey S. Balabanian of Edelson PC as interim lead counsel.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully Submitted,

**DAVID MELVIN and J.L.**, individually and on
behalf of all others similarly situated,

Dated: January 26, 2024

By: /s/ Rafey S. Balabanian
One of Plaintiffs' Attorneys

Rafey S. Balabanian (SBN 315962)
rbalabanian@edelson.com
EDELSON PC
150 California Street, 18th Floor
San Francisco, California 94111
Tel: 415.212.9300
Fax: 415.373.9435

Jay Edelson (*pro hac vice* forthcoming)
jedelson@edelson.com
J. Eli Wade-Scott (*pro hac vice* forthcoming)
ewadescott@edelson.com
Michael Ovca (*pro hac vice* forthcoming)
movca@edelson.com
Emily Penkowski Perez (*pro hac vice*
forthcoming)
epenkowski@edelson.com
Hannah P. Hilligoss (*pro hac vice* forthcoming)
hhilligoss@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Counsel for Plaintiffs and the Putative Class*

1  Rafey S. Balabanian (SBN 315962)
   rbalabanian@edelson.com
2  EDELSON PC
   150 California Street, 18th Floor
3  San Francisco, California 94111
   Tel: 415.212.9300
4  Fax: 415.373.9435

5  *Counsel for Plaintiffs David Melvin,  J.L., and Putative Class*

6

7

8

9              **UNITED STATES DISTRICT COURT**
              **NORTHERN DISTRICT OF CALIFORNIA**
10                **SAN FRANCISCO DIVISION**

11

12 **DAVID MELVIN and J.L.**, individually      Case No.: 24-cv-00487-SK
   and on behalf of all others similarly
13 situated,                                    **[PROPOSED] ORDER GRANTING
                  *Plaintiffs,*                 PLAINTIFFS' MOTION TO APPOINT
14                                              INTERIM LEADERSHIP OF CLASS
                                                ACTION**
15       *v.*

16 **23ANDME, INC.**, a Delaware corporation,

17             *Defendant.*

18

19

20

21

22

23

24

25

26

27

28

**[PROPOSED] ORDER**

Before the Court is Plaintiffs' Motion to Appoint Interim Leadership of Class Action. Having considered the parties' submissions and arguments, and having assessed the factors enumerated in Fed. R. Civ. P. 23(g)(1), the Court hereby appoints Rafey S. Balabanian Interim Lead Counsel. The Court finds that the Proposed Interim Lead Counsel and his firm: i) have done exceptional work in identifying and investigating potential claims in the action; ii) have extensive knowledge of and experience in prosecuting complex litigation and class actions; iii) have knowledge of the applicable law; and iv) are both willing and able to commit to a time-consuming process of litigating this case, and have access to sufficient resources to prosecute this litigation in a timely manner.

Based on these factors, Plaintiffs' Motion to Appoint Interim Leadership of Class Action is hereby **GRANTED**. Plaintiffs' Interim Lead Counsel shall file a proposed Case Management Order within fourteen (14) days of this Order.

**IS IT SO ORDERED**.

Dated: _____          _____
                                        Hon. Judge Sallie Kim

1  Rafey Balabanian (SBN 315962)
   rbalabanian@edelson.com
2  EDELSON PC
   150 California Street, 18th Floor
3  San Francisco, California 94111
   Tel: 415.212.9300
4  Fax: 415.373.9435
5
6  (with other counsel list on Complaint)
7  *Attorneys for Plaintiff and the Proposed Class*
8
9            **UNITED STATES DISTRICT COURT**
             **NORTHERN DISTRICT OF CALIFORNIA**
10           **SAN FRANCISCO DIVISION**
11  **DAVID MELVIN and J.L.**, individually and    Case No. 24-cv-00487-SK
    on behalf of all others similarly situated,
12                                                  **DECLARATION OF J. ELI WADE-SCOTT**
                    *Plaintiffs,*                   **IN SUPPORT OF MOTION TO APPOINT**
13                                                  **INTERIM LEADERSHIP OF CLASS**
                                                    **ACTION**
14           *v.*
15  **23ANDME, INC.**, a Delaware corporation,
16                  *Defendant.*
17
18
19
20
21
22
23
24
25
26
27
28

Pursuant to 18 U.S.C. § 1746, I, J. Eli Wade-Scott, declare as follows:

1.      I am a partner at Edelson PC and I represent Plaintiffs David Melvin and J.L. in the above-captioned action. I am over the age of eighteen and am fully competent to make this Declaration. This Declaration is based upon my personal knowledge.

2.      Plaintiffs' counsel at Edelson PC were invited by 23andMe's counsel to attend a planned mediation scheduled for January 31, 2024. We received that invitation on January 14.

3.      The mediation is set with Randall Wulff, and will be held at the Westin Napa Valley. 23andMe has represented that every firm with a case on file is invited to the mediation. *Santana v. 23andMe, Inc.*, No. 23-cv-05147-EMC, dkt. 58 at 9 (N.D. Cal. Jan. 19, 2024). We were informed that the mediation itself is limited to twenty lawyers in person due to the physical capacity of the conference room that has been rented, and that one lawyer from each firm is permitted.

4.      A number of firms (at least three, and perhaps more) have issued informal discovery requests to 23andMe prior to the mediation.

5.      23andMe agreed to provide some responsive information on January 23 subject to a confidentiality agreement. The information that has been provided so far, from our understanding, has been incredibly limited in scope and sidesteps the merits issues in the case.

6.      We were informed that the mediator has asked the sides to limit the mediation statements to eight pages, and that there is no current expectation that the mediation statements will be shared with the other side.

7.      Based on our many conversations with counsel on the cases, there has been no self-ordering among counsel and no consensus on what a proper approach would be. This ranges from smaller issues, like how to frame the mediation statement, to larger ones—like how to value the cases, what the negotiation strategy should be, what information we should be requiring from 23andMe, and any sort of fulsome discussion about what information is required to assess the case and proceed to mediation, and what the broader litigation strategy would be in

the event the case does not settle. (There is no way to consider resolution of a case without fully understanding the litigation strategy if the case doesn't settle.)

8.      Although we expect that most firms will end up attending the mediation, our understanding is that—especially amongst the firms that have at least some privacy experience—they do not think this is the proper way to proceed.[1]

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 26th day of January, 2024, in Chicago, Illinois.

By: /s/ J. Eli Wade-Scott

---

[1]      We don't intend to speak for any particular firm; we expect, instead, that they will present their own views in response to this Motion, and we defer to how each firm ultimately characterizes its own views of the mediation, the litigation, or any other issue.

1    Rafey S. Balabanian (SBN 315962)
     rbalabanian@edelson.com
2    EDELSON PC
     150 California Street, 18th Floor
3    San Francisco, California 94111
     Tel: 415.212.9300
4    Fax: 415.373.9435

5    *Counsel for Plaintiffs David Melvin, J.L., and Putative Class*

6

7

8                    **UNITED STATES DISTRICT COURT**

9                   **NORTHERN DISTRICT OF CALIFORNIA**

10                     **SAN FRANCISCO DIVISION**

11

12   **DAVID MELVIN and J.L.**, individually        Case No.: 3:24-cv-00487-SK
     and on behalf of all others similarly
13   situated,                                      **DECLARATION OF RAFEY S.**
                         *Plaintiffs,*              **BALABANIAN IN SUPPORT OF**
14                                                  **PLAINTIFFS' MOTION TO APPOINT**
           *v.*                                     **INTERIM LEADERSHIP OF CLASS**
15                                                  **ACTION**

16   **23ANDME, INC.**, a Delaware corporation,

17                     *Defendant.*

18

19

20

21

22

23

24

25

26

27

28

Pursuant to 18 U.S.C. § 1746, I, Rafey S. Balabanian, hereby declare and state as follows:

1. I am an attorney admitted to practice law before this Court. I am over the age of 18 and fully competent to make this Declaration. I have personal knowledge of the facts set forth herein and if called upon to testify as a witness, I could and would competently testify hereto.

2. I am the Managing Partner and Director of Nationwide Litigation of Edelson PC. My firm represents Plaintiffs David Melvin and J.L. in the above-captioned case (the "*Melvin* Action"). I submit this Declaration in Support of Plaintiffs' Motion to Appoint Interim Leadership of Class Action.

### Edelson's Unparalleled Experience Litigating and Settling Complex Privacy Cases

3. Edelson PC is a nationally recognized leader in high-stakes plaintiffs' work, ranging from class and mass actions to public client investigations and prosecutions. The firm has repeatedly been recognized by Law360 as Cybersecurity & Privacy Group of the Year (2017, 2018, 2019, 2020, 2022, 2023), Consumer Protection Group of the Year (2016, 2017, 2019, 2020), and a "Privacy Litigation Heavyweight" and "Cybersecurity Trailblazer" by the National Law Journal (2016). The National Law Journal also recognized us as "Elite Trial Lawyers" in Consumer Protection (2020, 2021), Class Action (2021), Privacy/Data Breach (2020), Mass Torts (2020), and Sports, Entertainment and Media Law (2020). Just considering cases where Edelson PC has served as lead counsel, Edelson's verdicts and settlements exceed $5 billion.

4. The firm's track record in privacy cases, particularly, is unparalleled. The firm filed the first-ever case under the Illinois Biometric Information Privacy Act ("BIPA"), which resulted in the largest single-state privacy settlement ever at $650 million, which was reached on the eve of trial. *See In re Facebook Biometric Information Privacy Litig.*, 522 F. Supp. 3d 617 (N.D. Cal. 2021).[1] In approving the settlement, Judge Donato of the Northern District of California noted the "landmark result" achieved for the Class, observing that Edelson and its co-counsel had produced a "major win for consumers in the hotly contested area of digital privacy." 522 F. Supp. 3d at 621. The firm has also negotiated the country's largest TCPA settlement. *Birchmeier v. Caribbean*

---

[1]     The Robbins Geller firm was Edelson's co-counsel in that case and have also filed a case here.

*Cruise Line, Inc.*, No. 12-cv-04069 (N.D. Ill.).

5.       We are also pioneers in litigation under the state genetic information privacy statutes specifically at issue in this case and obtained the first ever adversarially certified class under any such statute. *Melvin v. Sequencing LLC*, 344 F.R.D. 231 (N.D. Ill. 2023) (Illinois Genetic Information Privacy Act); *see also Cole v. Gene by Gene Ltd.*, No. 14-cv-00004-SLG (D. Alaska) (Alaska Genetic Information Privacy Act). The firm was lead counsel in *Spokeo v. Robins*, in which the Supreme Court held that "intangible harm" could satisfy Article III standing requirements. *See* 136 S. Ct. 1540 (2016). Commentators called the case "the most important privacy class action and consumer case of the decade."[2] Litigating on behalf of the American Civil Liberties Union, we obtained a consent decree in 2022 that permanently enjoins Clearview from selling access to its massive database of facial vectors to any private person or company, as well as additional restrictions—a settlement that has been called a "milestone for civil rights."[3] In short, EPC is the nation's leading class action firm on privacy issues, with the firm's cases "read[ing] like a time capsule of the last decade, charting how computers have been steadfastly logging data about our searches, our friends, our bodies."[4]

6.       In 2023, Judge Lasnik of the Western District of Washington, in assessing the final fairness of the firm's $415 million settlement with an operator of an alleged illegal online casino, described how the Edelson firm worked "in the Executive branch, the legislative branch, and the Judicial branch" to secure an extraordinary result for its clients in a "unique" case—describing the firm as "all in with high quality and very admirable lawyering[.]" *Benson v. DoubleDown Interactive LLC*, No. 18-cv-00525, Dkt. 550 (W.D. Wash. June 22, 2023). This settlement was

---

[2]       *See* John K. Higgins, *Supreme Court to Hear 'Non-Injury' Privacy Class* Action, E-Commerce Times (May 6, 2015), https://www.ecommercetimes.com/story/supreme-court-to-hear-non-injury-privacy-class-action-82015.html.

[3]       *See S.T.O.P. Welcomes Clearview AI, ACLU Settlement, Calls For National Ban*, SURVEILLANCE TECHNOLOGY OVERSIGHT PROJECT (May 9, 2022), https://www.stopspying.org/latest-news/2022/5/9/stop-welcomes-clearview-ai-aclu-settlement-calls-for-national-ban.

[4]       Conor Dougherty, *Jay Edelson, the Class-Action Lawyer Who May Be Tech's Least Friended Man*, NEW YORK TIMES (Apr. 4, 2015), https://www.nytimes.com/2015/04/05/technology/unpopular-in-silicon-valley.html.

reached after the watershed Ninth Circuit victory for consumers against such companies in *Kater v. Churchill Downs Inc.*, 886 F.3d 784 (9th Cir. 2018). Since then, we have successfully litigated consumer claims against numerous gambling companies for allegedly profiting from illegal internet casinos—where we've already secured $651 million in cash relief.

7.     The Illinois Appellate court recently cited a lower court's findings that Edelson PC is "highly experienced and more than competent," that they had performed "an extraordinary job to secure the amount of money for the class," and that the settlement Edelson achieved was "truly an extraordinary resolution to the great benefit of the class." *McCormick v. Adtalem Global Educ., Inc. et al.*, 2022 IL App (1st) 201197-U, ¶ 30. In *Barnes v. Aryzta*, the court endorsed an expert opinion finding that we "should 'be counted among the elite of the profession generally and [in privacy litigation] specifically' because of [our] expertise in the area." No. 17-cv-7358, 2019 WL 277716, at *3 (N.D. Ill. Jan. 22, 2019); *see also In re Facebook Priv. Litig.*, 10-cv-02389, Dkt. 69 (N.D. Cal. Dec. 10, 2010) (former Chief Judge Ware of the Northern District of California, calling the firm "pioneers" and noting that Edelson has been at the forefront of "some of the largest consumer class actions in the country" on those issues).

8.     The firm also has significant experience taking cases to trial. The firm holds the record for the largest-ever privacy jury verdict at $925 million. *Wakefield v. ViSalus, Inc.*, No. 3:15-cv-1857-SI (D. Or. June 24, 2019).[5] Late last year, we helped deliver a historic verdict to a certified class of victims of the Labor Day wildfires in Portland, which established liability and punitive damages for thousands of class members.[6] Just this week, Edelson co-led a trial resulting in a second verdict in the damages phase of that litigation awarding $85 million to nine victims of the wildfires, paving the way to tens of billions in damages class-wide.[7]

---

[5]     The verdict was later vacated, with the Ninth Circuit holding that the lower court had to consider whether the damages awarded by the jury potentially violated due process. *Wakefield v. ViSalus, Inc.*, 51 F.4th 1109, 1125 (9th Cir. 2022).

[6]     Jonathan Stempel, *Jury says Berkshire's PacifiCorp owes punitive damages for 2020 Oregon wildfires*, Reuters (June 14, 2013), https://www.reuters.com/sustainability/jury-says-berkshires-pacificorp-owes-punitive-damages-2020-oregon-wildfires-2023-06-14.

[7]     Johnny Diaz, *Utility Must Pay $85 Million to People Affected by Oregon Wildfires, Jury Rules*, New York Times (Jan. 24, 2024), https://www.nytimes.com/2024/01/24/us/oregon-wildfires-award.html.

***Edelson's Long Track Record Leading Consolidated Litigation***

9.      The firm has significant experience leading aggregated litigation in challenging cases presenting complex, novel issues of law. The firm (and I specifically) were among those who served the Tort Claimants' Committee in one of the largest and most complex bankruptcies in the history of the country involving the giant West Coast utility PG&E, which resulted in a $13.5 billion settlement for the firm's clients—fire victims. As discussed above, we successfully certified a class for victims of the Labor Day 2020 wildfires in Portland to litigate the issue of liability and punitive damages class-wide—prevailing on each of those issues at trial after years of litigation. *See James v. PacifiCorp*, No. 20CV33885 (Multnomah Cnty. Ct., Or.).

10.     We frequently represent states in multistate investigations and litigation, including the District of Columbia against JUUL for deceptive trade practices, and New Hampshire, Utah, and the District of Columbia against social media companies for harming a generation of their citizens with social media addiction. The firm (and I specifically) have been appointed interim lead counsel in subsequent multidistrict litigation against the platforms that hosted those alleged illegal casinos. *See In re Apple Inc. App Store Simulated Casino-Style Games Litig.*, No. 21-md-02985-EJD (N.D. Cal.); *In re Google Play Store Simulated Casino-Style Games Litig.*, No. 21-md-03001-EJD (N.D. Cal.); *In re Facebook Simulated Casino-Style Games Litig.*, No. 21-cv-02777-EJD (N.D. Cal.). Each of these cases involved myriad issues of first impression, in which the firm successfully worked within coalitions (and are still doing so) to deliver extraordinary results to our clients.

***Edelson's In-House Technical Capabilities Uniquely Situate It to Lead This Litigation***

11.     EPC boasts a unique-in-the-industry forensic investigations team headed by Shawn Davis. Mr. Davis holds numerous certifications relevant to this data breach case, including ISC2 CISSP, GIAC Forensic Examiner, and GIAC Incident Handle (among many others). Mr. Davis serves as an in-house technical expert for the firm, including testifying at trial in federal court, and is routinely asked to testify before legislative bodies on critical areas of emerging artificial intelligence, cybersecurity, and privacy. In 2020, Mr. Davis was appointed by the Executive Office of the President to the Federal Government Advisory Committee on Data for Evidence Building with the U.S. Department of Commerce for a two-year term. This resource, along with the firm's

substantial subject-matter expertise, allows the firm to routinely undertake in-house, complex reviews of novel and proprietary technology, security assessments, and the investigation and analysis of highly confidential and complex source code—all technical issues that have already and will continue to present themselves in this case.

***Edelson's Attorneys Are Well-Qualified to Hold Leadership Positions in This Case***

12.     As noted above, I am Edelson PC's Managing Partner and Director of Nationwide Litigation. I have the subject matter and complex, aggregate litigation experience to provide effective leadership here. I have been appointed as lead class counsel in dozens of class actions in state and federal courts across the country and have resolved numerous cases to the benefit of the clients and classes I have represented. While much of my prior work will inform and support my efforts here—detailed in Edelson PC's firm resume, a true and correct copy of which is attached hereto—some are worth highlighting. First, I was one of the principal attorneys representing Plaintiffs in the *In re Facebook Biometric Information Privacy Litigation* matter, in which I was central to securing adversarial class certification and reaching a record-breaking settlement on the eve of trial—demonstrating my expertise in privacy actions and ability to secure excellent results for the class. Second, I have significant experience leading complex cases: I was one of the attorneys who served on the Tort Claimant Committee in the PG&E bankruptcy and had a significant role in helping to reach a $13.5 billion settlement on behalf of fire victims, and was appointed interim lead counsel in the consolidated litigation seeking to hold technology platforms liable for their hosting of illegal online casinos. My familiarity with pressing difficult issues of law alongside other counsel will serve this class well.

13.     The team working on this matter at Edelson PC includes Jay Edelson, J. Eli Wade-Scott, Michael Ovca, Emily Penkowski Perez, and Hannah Hilligoss. Each of these individuals' experience is set forth in full in the firm's resume, but a few particulars are again worth highlighting here:

- ***Jay Edelson.*** Jay Edelson—the firm's Founder and CEO—has been one of the central figures in the development of modern consumer privacy law. An adjunct privacy professor at UC Berkeley School of Law, he's been described by the New York Times as

"Tech's Least-Friended Man,"[8] and called "probably the best known, and most innovative, consumer privacy lawyer on the planet."[9] Mr. Edelson has been named three times as a "Titan of the Plaintiff's Bar" by Law360 (2014, 2021, and 2023), and has been consistently recognized both inside and outside the legal profession for his privacy groundbreaking work, profiled as one of Fast Company's "Most Creative People in Business"—the first plaintiffs' attorney to ever receive the award.[10] Equally important, Mr. Edelson has been the leading voice of the reform wing of the plaintiffs' bar.[11] Mr. Edelson has, and will, leverage his unique skillset in this litigation to focus on development of applicable claims to these unprecedented facts, as well as litigation and negotiation strategy.

- ***J. Eli Wade-Scott (Harvard Law School '14, magna cum laude).*** Mr. Wade-Scott is the firm's director of class action litigation and has been appointed class counsel in dozens of privacy actions. He has delivered hundreds of millions of dollars to consumers in privacy cases—always with strong settlement structures that drive unprecedented class engagement in claiming their money at the time of settlement. Indeed, Mr. Wade-Scott is a pioneer when it comes to the use of direct checks in privacy cases, setting a standard followed by numerous subsequent settlements. Mr. Wade-Scott also represents governments in cases pressing first-impression privacy issues, including on behalf of the District of Columbia against Facebook in its litigation arising from Cambridge Analytica and on behalf of New Mexico against Google for violations of the Children's Online Privacy Protection Act. Mr. Wade-Scott has been recognized as a Rising Star of the Plaintiffs' Bar for three consecutive years by the National Law Journal, and was profiled by Bloomberg Law as one of "Five

---

[8]     Dougherty, *supra* n.4.

[9]     Eric Troutman, *Deserve to Win Podcast* (July 18, 2022), https://www.natlawreview.com/article/deserve-to-win-ep-3-jay-edelson-now-available-we-talk-dobbs-javier-and-privacy.

[10]     *Meet the lawyer who stood between Big Tech and your facial recognition data*, FAST COMPANY (Aug. 9, 2022), https://www.fastcompany.com/90764561/jay-edelson-most-creative-people-2022.

[11]     Christine Schiffner, *Jay Edelson in a 'Battle for the Soul of the Plaintiffs Bar'*, Law.Com (Sept. 19, 2022), https://www.law.com/nationallawjournal/2022/09/19/jay-edelson-in-a-battle-for-the-soul-of-the-plaintiffs-bar/.

Fresh Faces to Know in Privacy and Cybersecurity."[12] Mr. Wade-Scott will assist Mr. Balabanian in leading the litigation and managing the nuts-and-bolts work of day to day class action practice, from crafting discovery strategies to settlement structure.

- ***Michael Ovca (Northwestern Law School '17, cum laude).*** Mr. Ovca has been one of the firm's lead associates on technology and privacy matters since he began at Edelson in 2017 and has worked on or led more than two dozen privacy and technology actions at the firm. Most notably, Mr. Ovca was recently the lead associate in securing the first-ever adversarially certified class under *any* state's genetic privacy law in *Melvin v. Sequencing, Inc.*, and was appointed class counsel there.

- ***Emily Penkowski Perez (Northwestern Law School '20, cum laude).*** Ms. Penkowski-Perez not only brings substantial experience from her work on more than ten technology/privacy actions at the firm, including her work representing the District of Columbia in its groundbreaking action against Facebook, but also the singular perspective of someone who has worked as an intelligence analyst for the National Security Agency, in the Office of Counterintelligence & Cyber (previously the NSA/CSS Threat Operations Center) and the Office of Counterterrorism. Ms. Penkowski is routinely pulled into matters in which the firm can leverage her unique expertise.

- ***Hannah Hilligoss (Harvard Law School '22, cum laude).*** Ms. Hilligoss's practice focuses on privacy and technology actions at the firm, where she has worked on numerous technology and privacy actions since beginning at the firm. Prior to joining Edelson, Ms. Hilligoss worked at Harvard's Berkman Klein Center for Internet and Society, where she authored several papers on ethics and governance in new technologies, particularly artificial intelligence, and led a working group of Harvard faculty focused on ethical technology development. Ms. Hilligoss's proven ability to parse technological and privacy issues without precedent and determine how law and policy should address them will yield

---

[12] Andrea Vittorio, *They've Got Next: Privacy and Cybersecurity Fresh Face Eli Wade-Scott*, BLOOMBERG LAW (Oct. 29, 2021), https://news.bloomberglaw.com/business-and-practice/theyve-got-next-privacy-and-cybersecurity-fresh-face-eli-wade-scott.

1    significant dividends for the Class.

2        14.     To be clear, Edelson is not asking for this entire team of attorneys to be appointed

3    lead counsel—that is appropriately settled on the shoulders of one final decision-maker or organized

4    with a co-lead—but to highlight the depth and variety of experience that the firm brings to the case.

5    And the firm has resources to address every phase of the case: in addition to the dedicated

6    investigations and in-house forensic investigations team, as well as the deep bench of litigators

7    assigned to the case, the firm also has a dedicated appellate team, a dedicated trial team, and a

8    dedicated government affairs team (which is often pulled in if the case involves legislative

9    skirmishes or if the firm needs to coordinate with governmental actors).

10       15.     Nor, simply put, does the firm lack the material resources to contend with a well-

11   financed adversary. We've recovered billions of dollars for the firm's clients, but equally important,

12   have demonstrated that the firm has been run soundly from a financial point of view: A good

13   marker is to look at how firms weathered the COVID-19 pandemic; while many of plaintiffs' firms

14   (either properly or not) competed against their clients to take large Paycheck Protection Program

15   loans, our firm did not—and in fact, continued with its commitment to grow and increased salaries

16   and benefits for our employees.

17       16.     A true and correct copy of the Firm's Resume is attached hereto as Exhibit 1.

18       I declare under penalty of perjury under the laws of the United States of America that the

19   foregoing is true and correct.

20       Executed this 26th day of January 2024, at San Rafael, California.

21

22                                  By: /s/Rafey S. Balabanian

23

24

25

26

27

28

Exhibit 1

# Edelson

January 2024



# Inside the Firm

We are a nationally recognized leader in high-stakes plaintiffs' work, ranging from class and mass actions, to public client investigations and prosecutions.

edelson.com

☆  ☆  ☆  ☆  ☆  ☆  ☆

"National reputation as a maverick in [its] commitment to pursuing big-ticket . . . cases."

—Law360

# Table of Contents

Who We Are                                                          5

In the News                                                         7

Plaintiff's Class and Mass Action Practice

    General Mass/Class Tort Litigation                         8

    Environmental Litigation                                   9

    Banking, Lending, and Finance Litigation                  10

    Privacy and Data Security Litigation                      11

    General Consumer Litigation                               14

    Insurance Matters                                         17

    Public Client Litigation and Investigations               19

General Commercial Matters                                         21

Executive Committee

    Founder & CEO                                             23

    Global Managing Partner                                   25

    Managing Partner, Boulder                                 27

    Managing Partner, Chicago                                 29

    Cheif Information Officer                                 31

    Chief of Staff                                            32

    Director of Human Resources                               33

Partners

    Ryan D. Andrews                                           34

    Natasha Fernández-Silber                                  35

    Amy B. Hausmann                                           36

    J. Aaron Lawson                                           37

    Todd Logan                                                38

    David I. Mindell                                          39

    Roger Perlstadt                                           40

# Table of Contents

Jimmy Rock                                          41

Nicholas Rosinia                                    42

Yaman Salahi                                        43

Ari Scharg                                          44

Alexander G. Tievsky                                45

J. Eli Wade-Scott                                   46

Brandt Silver-Korn                                  47

Schuyler Ufkes                                      48

Aaron Colangelo                                     49

**Of Counsel**                                      50

**Senior Litigation Counsel**                       51

**Associates**                                      52

Theo Benjamin                                       52

Lauren Blazing                                      53

Megan Delurey                                       54

Hannah Hilligoss                                    55

Michael Ovca                                        56

Emily Penkowski                                     57

Albert J. Plawinski                                 58

Zoë Seaman-Grant                                    59

Julian Li-Ying Zhu                                  60

Jean Larsen                                         61

# Who We Are

EDELSON PC is a law firm concentrating on high stakes plaintiff's work ranging from class and mass actions to public client investigations and prosecutions. The cases we have litigated—as either lead counsel or as part of a broader leadership structure—have resulted in settlements and verdicts totaling over $45 billion.

▸ We hold records for the largest jury verdict in a privacy case ($925m), the largest consumer privacy settlement ($650m), and the largest TCPA settlement ($76m). We also secured one of the most important consumer privacy decisions in the U.S. Supreme Court (*Robins v. Spokeo*). Our class actions, brought against the national banks in the wake of the housing collapse, restored over $5 billion in home equity credit lines. We served as counsel to a member of the 11-person Tort Claimant's Committee in the PG&E Bankruptcy, resulting in a historic $13.5 billion settlement. We are the only firm to have established that online apps can constitute illegal gambling under state law, resulting in settlements that are collectively worth $651 million. We are co-lead counsel in the NCAA personal injury concussion cases, leading an MDL involving over 300 class action lawsuits. And we are representing, or have represented, regulators in cases involving the deceptive marketing of opioids, environmental cases, privacy cases against Facebook, Uber, Google and others, cases related to the marketing of e-cigarettes to children, and cases asserting claims that energy companies and for-profit hospitals abused the public trust.

▸ We have testified before the United States Senate and state legislative and regulatory bodies on class action and consumer protection issues, cybersecurity and privacy (including election security, children's privacy and surreptitious geotracking), sex abuse in children's sports, and gambling, and have repeatedly been asked to work on federal, state, and municipal legislation involving a broad range of issues. We speak regularly at seminars on consumer protection and class action issues, and routinely lecture at law schools and other graduate programs.

▸ We have a "one-of-a-kind" investigation team that sets us apart from others in the plaintiff's bar. Our dedicated "internal lab of computer forensic engineers and tech-savvy lawyers" investigate issues related to "fraudulent software and hardware, undisclosed tracking of online consumer activity and illegal data retention," among numerous other technology related issues facing consumers. Cybersecurity & Privacy Practice Group of the Year, Law360 (January 2019).

▸ Instead of chasing the headlines, our case development team is leading the country in both identifying emerging privacy and technology issues, as well as crafting novel legal theories to match. Some examples of their groundbreaking accomplishments include: demonstrating that Microsoft and Apple were continuing to collect certain geolocation data even after consumers turned "location services" to "off"; filing multiple suits revealing mobile apps that "listen" through phone microphones without consent; filing a lawsuit stemming from personal data collection practices of an intimate IoT device; and filing suit against a data analytics company alleging that it had surreptitiously installed tracking software on consumer computers.

As the Hollywood Reporter explained, we are "accustomed to big cases that have lasting legacy."

# In the News

The firm and our attorneys regularly get recognized for our groundbreaking work. We have been named by Law360 as a Consumer Protection Group of the Year (2016, 2017, 2019, 2020), a Class Action Group of the Year (2019), a Plaintiff's Class Action Powerhouse (2017, 2018, 2019), a Cybersecurity and Privacy Group of the Year (2017, 2018, 2019, 2020), a "Privacy Litigation Heavyweight," a "Cybersecurity Trailblazer" by The National Law Journal (2016) and won sole recognition in 2019 as "Elite Trial Lawyers" in Gaming Law. The National Law Journal also recognized us as "Elite Trial Lawyers" in Consumer Protection (2020, 2021), Class Action (2021), Privacy/Data Breach (2020), Mass Torts (2020), and Sports, Entertainment and Media Law (2020). In 2019, we were recognized for the third consecutive year as an "Illinois Powerhouse," alongside Barack Ferrazzano, Winston & Strawn, Schiff Hardin and Mayer Brown; in each year, we were the only plaintiff's firm, and the only firm with fewer than one hundred lawyers, recognized. Edelson was a two time finalist (2021 and 2022) and one-time winner of the Diversity Initiative Award (2021) by The National Law Journal, given to the plaintiffs firm demonstrating a concerted and successful effort to promote diversity within its organization and the profession at large.

> ▸ Our founder has been recognized as a "Titan of the Plaintiff's Bar" by Law360, one of "America's top trial lawyers" in the mass action arena, a LawDragon 2020 and 2023 Leading Plaintiff Financial Lawyer,  a the top "Class Action and Mass Tort Plaintiff's" Lawyer in Illinois by Leading Lawyers, and one of "Chicago's Top Ten Startup Founders Over Age 45" by Tech.co—the only law firm founder to win such an award. Our Global Managing Partner was recognized as a top 100 lawyer in California by California Daily Journal (2020, 2021).

> ▸ We have also been recognized by courts for our approach to litigation, which led the then-Chief Judge of the United States Court for the Northern District of Illinois to praise our work as "consistent with the highest standards of the profession" and "a model of what the profession should be. . . ." *In re Kentucky Grilled Chicken Coupon Mktg. & Sales Practs. Litig.*, No. 09-cv-07670, MDL 2103 (N.D. Ill. Apr. 04, 2012). Likewise, in appointing our firm interim co-lead in one of the most high-profile banking cases in the country, a federal court pointed to our ability to be "vigorous advocates, constructive problem-solvers, and civil with their adversaries." *In Re JPMorgan Chase Home Equity Line of Credit Litig.*, No. 10-cv-3647 (N.D. Ill. July 16, 2010).

# Our Practice

## General Mass/Class Tort Litigation

We currently represent, among others, labor unions seeking to recover losses resulting from the opioid crisis, classes of student athletes dealing with the long-term effects of concussive and sub-concussive injuries, hundreds of families experiencing adverse effects of air and water contamination in their communities, individuals affected by the "Camp Fire" in Northern California, and victims of the 2020 Labor Day fires in Oregon.

**Representative cases and settlements include:**

▸ Representing hundreds of victims and serving as lead trial counsel, our firm secured a jury's verdict for the 2020 Labor Day fires, resulting in a total of at least $87 million in damages on behalf of the named plaintiffs. This is the first known jury verdict holding a utility provider, PacifiCorp, accountable for a wildfire. (James v. PacifiCorp, No. 20-CV-33885)

▸ Representing over 1,000 victims of the Northern California "Camp Fire," allegedly caused by utility company Pacific Gas & Electric. Served as counsel to a member of the 11-person Tort Claimants' Committee in the PG&E Bankruptcy, resulting in a historic $13.5 billion settlement.

▸ Representing hundreds of victims of Oregon's 2020 "Beachie Creek" and "Holiday Farm" fires, allegedly caused by local utility companies. The Beachie Creek and Holiday Farm fires together burned approximately 400,000 acres, destroyed more than 2,000 structures, and took the lives of at least six individuals.

▸ *In re Nat'l Collegiate Athletic Ass'n Single School/Single Sport Concussion Litig.*, No. 16-cv-8727, MDL No. 2492 (N.D. Ill.): Appointed co-lead counsel in MDL against the NCAA, its conferences, and member institutions alleging personal injury claims on behalf of college football players resulting from repeated concussive and sub-concussive hits.

▸ Representing numerous labor unions and health and welfare funds seeking to recover losses arising out of the opioid crisis. *See, e.g., Illinois Public Risk Fund v. Purdue Pharma L.P., et al.*, No. 2019-CH-05847 (Cir. Ct. Cook Cty., Ill.); *Int'l Union of Operating Eng'rs, Local 150, et al. v. Purdue Pharma L.P., et al.*, No. 2019-CH-01548 (Cir. Ct. Cook Cty., Ill.); *Village of Addison et al. v. Actavis LLC et al.*, No. 2020-CH-05181 (Cir. Ct. Cook Cty., Ill.).

# Environmental Litigation

We represent hundreds of families harmed by the damaging effects of ethylene oxide exposure in their communities, consumers and businesses whose local water supply was contaminated by a known toxic chemical, and property owners impacted by the flightpath of Navy fighter planes.

**Representative cases and settlements include:**

▸ Representing three state Attorneys General in their investigations into contamination and exposure issues resulting from a "forever chemical" commonly referred to as PFAS.

▸ Representing a state Attorney General in investigating and potentially litigating matters related to the problematic use of a pesticide used in homes, on agricultural crops, lawns, and gardens, and as a fumigating agent—that is now known to have contaminated soil and groundwater.

▸ Representing hundreds of individuals around the country that are suffering the ill-effects of ethylene oxide exposure—a gas commonly used in medical sterilization processes. We have brought over 100 personal injury and wrongful death cases against EtO emitters across the country, as well as numerous medical monitoring class actions. *Brincks et al. v. Medline Indus., Inc., et al.*, No. 2020-L-008754 (Cir. Ct. Cook Cty., Ill.); *Leslie v. Steris Isomedix Operations, Inc., et al.*, No. 20-cv-01654 (N.D. Ill.); *Jackson v. 3M Company, et al.*, No. 19-cv-00522 (D.S.C.).

▸ Representing hundreds of individuals who have been exposed through their own drinking water and otherwise to PFAS and related "forever chemicals" used in various applications. This exposure has allegedly led to serious health issues, including cancer, as well as the devaluation of private property due to, among other things, the destruction of the water supply. In conjunction with our work in this space, we have been appointed to the Plaintiff's Executive Committee in *In re: Aqueous Film-Forming Foams (AFFF) Prods. Liability Litig.*, 18-mn-2873-RMG, MDL No. 2873 (D.S.C.).

▸ Representing property owners on Whidbey Island, Washington, whose homes sit directly in the flightpath of dozens of Navy fighter planes. The Navy is alleged to have significantly increased the number of these planes at the bases at issue, as well as the frequency of their flights, to the detriment of our clients' privacy and properties. *Pickard v. USA,* No. 19-1928L (Ct. Fed. Claims); *Newkirk v. USA,* No. 20-628L (Ct. Fed. Claims).

▸ Our team has been designated as Panel Members on a State Attorney General's Environmental Counsel Panel.

# Banking, Lending, and Finance Litigation

We were at the forefront of litigation arising from the aftermath of the federal bailouts of the banks. Our suits included claims that certain banks unlawfully suspended home credit lines based on pretextual reasons, and that certain banks failed to honor loan modification programs. We achieved the first federal appellate decision in the country recognizing the right of borrowers to enforce HAMP plans under state law. The court noted that "[p]rompt resolution of this matter is necessary not only for the good of the litigants but for the good of the Country." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 586 (7th Cir. 2012) (Ripple, J., concurring). Our settlements restored billions of dollars in home credit lines to people throughout the country.

**Representative cases and settlements include:**

‣ *In re JP Morgan Chase Bank Home Equity Line of Credit Litig.*, No. 10-cv-3647 (N.D. Ill.): Co-lead counsel in nationwide putative class action alleging illegal suspensions of home credit lines. Settlement restored between $3.2 billion and $4.7 billion in credit to the class.

‣ *Hamilton v. Wells Fargo Bank, N.A.*, No. 09-cv-04152-CW (N.D. Cal.): Lead counsel in class actions challenging Wells Fargo's suspensions of home equity lines of credit. Nationwide settlement restored access to over $1 billion in credit and provides industry leading service enhancements and injunctive relief.

‣ *In re Citibank HELOC Reduction Litig.*, No. 09-cv-0350-MMC (N.D. Cal.): Lead counsel in class actions challenging Citibank's suspensions of home equity lines of credit. The settlement restored up to $653 million worth of credit to affected borrowers.

‣ *Wigod v. Wells Fargo*, No. 10-cv-2348 (N.D. Ill.): Obtained first appellate decision in the country recognizing the right of private litigants to sue to enforce HAMP plans. Settlement provided class members with permanent loan modifications and substantial cash payments.

## Privacy and Data Security

The New York Times has explained that our "cases read like a time capsule of the last decade, charting how computers have been steadfastly logging data about our searches, our friends, our bodies." Courts have described our attorneys as "pioneers in the electronic privacy class action field, having litigated some of the largest consumer class actions in the country on this issue." *See In re Facebook Privacy Litig.,* No. 10-cv-02389 (N.D. Cal. Dec. 10, 2010) (order appointing us interim co-lead of privacy class action); *see also In re Netflix Privacy Litig.,* No. 11-cv-00379 (N.D. Cal. Aug. 12, 2011) (appointing us sole lead counsel due, in part, to our "significant and particularly specialized expertise in electronic privacy litigation and class actions"). In *Barnes v. Aryzta,* No. 17-cv-7358 (N.D. Ill. Jan. 22, 2019), the court endorsed an expert opinion finding that we "should 'be counted among the elite of the profession generally and [in privacy litigation] specifically' because of [our] expertise in the area."

Representative cases and settlements include:

▸ *In re Facebook Biometric Privacy Litig.*, No. 15-cv-03747 (N.D. Cal.): Filed the first of its kind class action against Facebook under the Illinois Biometric Information Privacy Act, alleging Facebook collected facial recognition data from its users without authorization. Appointed Class Counsel in securing adversarial certification of class of Illinois Facebook users. Case settled on the eve of trial for a record breaking $650 million.

▸ *Wakefield v. Visalus*, No. 15-cv-01857 (D. Ore. Apr. 12, 2019): Lead counsel in class action alleging that defendant violated federal law by making unsolicited telemarketing calls. Obtained jury verdict and judgment equating to more than $925 million in damages to the class.

## Privacy and Data Security

▸ *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016): Lead counsel in the landmark case affirming the ability of plaintiffs to bring statutory claims for relief in federal court. The United States Supreme Court rejected the argument that individuals must allege "real world" harm to have standing to sue in federal court; instead the court recognized that "intangible" harms and even the "risk of future harm" can establish "standing." Commentators have called *Spokeo* the most significant consumer privacy case in recent years.

▸ *Birchmeier v. Caribbean Cruise Line, Inc., et al.*, No. 12-cv-4069 (N.D. Ill.): Co-lead counsel in class action alleging that defendant violated federal law by making unsolicited telemarketing calls. On the eve of trial, the case resulted in the largest Telephone Consumer Protection settlement to date, totaling $76 million.

▸ *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009): Won first ever federal decision finding that text messages constituted "calls" under the TCPA. In total, we have secured text message settlements worth over $100 million.

▸ *Kusinski v. ADP LLC*, No. 2017-CH-12364 (Cir. Ct. Cook Cty. Ill.): Secured key victories establishing the liability of time clock vendors under the Illinois Biometric Information Privacy Act and the largest-ever BIPA settlement in the employment context with a time clock vendor for $25 million.

▸ *Dunstan v. comScore, Inc.*, No. 11-cv-5807 (N.D. Ill.): Lead counsel in certified class action accusing Internet analytics company of improper data collection practices. The case settled for $14 million.

▸ *Doe v. Ann & Robert H. Lurie Children's Hosp. of Chi.*, No. 2020-CH-04123 (Cir. Ct. Cook Cty., Ill.): Lead counsel in a class action alleging breach of contract, breach of confidentiality, negligent supervision, and other claims against Lurie Children's Hospital after employees allegedly accessed medical records without permission.

# Privacy and Data Security

▸ *American Civil Liberties Union et al. v. Clearview AI, Inc.*, No. 2020-CH-04353 (Cir. Ct. Cook Cty., Ill.): Representing the American Civil Liberties Union in lawsuit against Clearview AI for violating the Illinois Biometric Information Privacy Act through its collection and storage of Illinois residents' faceprints.

▸ *Consumer Watchdog v. Zoom Video Commc'ns, Inc.*, No. 20-cv-02526 (D.D.C): Representing advocacy group Consumer Watchdog in its lawsuit against Zoom Video Communications Inc, alleging the company falsely promised to protect communications through end-to-end encryption.

▸ *Mocek v. AllSaints USA Ltd.*, No. 2016-CH-10056 (Cir. Ct. Cook Cty, Ill.): Lead counsel in a class action alleging the clothing company AllSaints violated federal law by revealing consumer credit card numbers and expiration dates. Case settled for $8 million with class members receiving about $300 each.

▸ *Resnick v. Avmed*, No. 10-cv-24513 (S.D. Fla.): Lead counsel in data breach case filed against a health insurance company. Obtained landmark appellate decision endorsing common law unjust enrichment theory, irrespective of whether identity theft occurred. Case also resulted in the first class action settlement in the country to provide data breach victims with monetary payments irrespective of whether they suffered identity theft.

▸ *N.P. v. Standard Innovation (US), Corp.*, No. 1:16-cv-08655 (N.D. Ill.):  Brought and resolved first ever IoT privacy class action against adult-toy manufacturer accused of collecting and recording highly intimate and sensitive personal use data. Case resolved for $3.75 million.

▸ *Halaburda v. Bauer Publ'g Co.*, No. 12-cv-12831 (E.D. Mich.); *Grenke v. Hearst Commc'ns*, Inc., No. 12-cv-14221 (E.D. Mich.); *Fox v. Time, Inc.*, No. 12-cv-14390 (E.D. Mich.): Lead counsel in consolidated actions brought under Michigan's Preservation of Personal Privacy Act, alleging unlawful disclosure of subscribers' personal information to data miners. In a ground-breaking decision, the court denied three motions to dismiss finding that the magazine publishers were covered by the act and that the illegal sale of personal information triggers an automatic $5,000 award to each aggrieved consumer. Secured a $30 million in cash settlement and industry-changing injunctive relief.

# General Consumer Matters

We have represented plaintiffs in consumer fraud cases in courts nationwide against companies alleged to have been peddling fraudulent software, engaging in online gambling businesses in violation of state law, selling defective products, or engaging in otherwise unlawful conduct.

**Representative cases and settlements include:**

▸ Having secured a watershed Ninth Circuit victory for consumers in *Kater v. Churchill Downs Inc.*, 886 F.3d 784 (9th Cir. 2018), we are now pursuing consumer claims against more than a dozen gambling companies for allegedly profiting off of illegal internet casinos. Settlements in several of these cases total $651 million.

▸ Prosecuted over 100 cases alleging that unauthorized charges for mobile content were placed on consumer cell phone bills. Cases collectively settled for over $100 million. *See, e.g., McFerren v. AT&T Mobility LLC*, No. 08-cv-151322 (Sup. Ct. Fulton Cty., Ga.); *Paluzzi et al. v. mBlox, Inc., et al.*, No. 2007-CH-37213, (Cir. Ct. Cook Cty., Ill.); *Williams et al. v. Motricity, Inc. et al.*, No. 2009-CH-19089 (Cir. Ct. Cook Cty., Ill.).

▸ *Edelson PC v. Christopher Bandas, et al.*, No. 1:16-cv-11057 (N.D. Ill.): Filed groundbreaking lawsuit seeking to hold professional objectors and their law firms responsible for, among other things, alleged practice of objecting to class action settlements in order to extort payments for themselves, and the unauthorized practice of law. After several years of litigation and discovery, secured first of its kind permanent injunction against the objector and his law firm, which, inter alia, barred them from practicing in Illinois or asserting objections to class action settlements in any jurisdiction absent meeting certain criteria.

▸ Brought numerous cases alleging that defendants deceptively designed and marketed computer repair software. Cases collectively settled for over $45 million. *Beaton v. SpeedyPC Software*, 907 F.3d 1018 (7th Cir. 2018).

## General Consumer Matters

▸ *McCormick, et al. v. Adtalem Glob. Educ., Inc., et al.*, No. 2018-CH-04872 (Cir. Ct. Cook Cty., Ill): After students at one of the country's largest for-profit colleges, DeVry University, successfully advanced their claims that the school allegedly induced them to enroll and charged a premium based on inflated job placement statistics, the parties agreed to a $45 million settlement—the largest private settlement DeVry has entered into regarding the claims.

▸ *1050 W. Columbia Condo. Ass'n v. CSC ServiceWorks, Inc.*, No. 2019-CH-07319 (Cir. Ct. Cook Cty., Ill): Representing a class of landlords in securing a multifaceted settlement—including a cash component of up to $30 million—with a laundry service provider over claims that the provider charged fees that were allegedly not permitted in the parties' contracts. The settlement's unique structure allows class members to choose repayment in the near term, or to lock in more favorable rates for the next decade.

▸ *Dickey v. Advanced Micro Devices, Inc.*, No. 15-cv-4922 (N.D. Cal.): Lead counsel in a complex consumer class action alleging AMD falsely advertised computer chips to consumers as "eight-core" processors that were, in reality, disguised four-core processors. The case settled for $12.1 million.

▸ *Barrett v. RC2 Corp.*, No. 2007 CH 20924 (Cir. Ct. Cook Cty., Ill.): Co-lead counsel in lead paint recall case involving Thomas the Tank toy trains. Settlement was valued at over $30 million and provided class with full cash refunds and reimbursement of certain costs related to blood testing.

▸ *In re Pet Food Prods. Liability Litig.*, No. 07-cv-2867 (D.N.J.): Part of mediation team in class action involving largest pet food recall in United States history. Settlement provided $24 million common fund and $8 million in charge backs.

☆ ☆ ☆ ☆ ☆ ☆ ☆

Prior to entering academia, I was a lawyer at the national office of the American Civil Liberties Union (ACLU) for nearly a decade, during which time I pursued civil rights campaigns on behalf of minority groups. Based on that experience, it strikes me that what Class Counsel have pursued here is closer in form to a civil rights litigation campaign than it is to a series of discrete class action settlements. Class Counsel saw an injustice – a thinly disguised form of gambling preying on those most vulnerable to addictive gambling – and they sought to fix it. Their goal was not to win a case but to reform an entire industry, much like a civil rights campaign might aim to reform a particular type of discriminatory practice across an entire employment sector. To accomplish this end, Class Counsel went far beyond what lawyers pursuing a simple class action case would normally do. Class Counsel pursued multiple cases. Class Counsel pursued multiple defendants. Class Counsel filed actions in multiple forums. Class Counsel tested various state laws. Class Counsel built websites to help app users avoid forced arbitration clauses, lobbied legislators and regulators, and took their efforts to the media. When Class Counsel lost, they did not give up, but changed tactics or forums and kept going. And they did all of this with their own funds, risking millions of dollars of their own money to end this practice. What they have achieved so far, with these initial settlements, is an astounding accomplishment that begins to chip away at the pernicious underlying social casinos.

-William B. Rubenstein, Bruce Bromley Professor of Law at Harvard Law School and sole author of the Newberg on Class Actions (5th Edition).

## Insurance Matters

We have successfully represented individuals and companies in a multitude of insurance related actions, including dozens of businesses whose business interruption insurance claims were denied by various insurers in the wake of the COVID-19 crisis. We successfully prosecuted and settled multi-million dollar suits against J.C. Penney Life Insurance for allegedly illegally denying life insurance benefits under an unenforceable policy exclusion and against a Wisconsin insurance company for terminating the health insurance policies of groups of self-insureds.

**Representative cases and settlements include:**

▸ *Biscuit Cafe Inc. et al. v. Society Ins., Inc.*, No. 20-cv-02514 (N.D. Ill.); *America's Kids, LLC v. Zurich American Ins. Co.*, No. 20-cv-03520 (N.D. Ill.); *MAIA Salon Spa and Wellness Corp. et al. v. Sentinel Ins. Co., Ltd. et al.*, No. 20-cv-3805 (E.D.N.Y.); *Badger Crossing, Inc. v. Society Ins., Inc.*, No. 2020CV000957 (Cir. Ct. Dane Cty., WI); and *Sea Land Air Travel, Inc. v. Auto-Owners Inc. Co. et al.*, No. 20-005872-CB (Cir. Ct. Wayne Cty., MI): In one of the most prominent areas for class action litigation related to the COVID-19 pandemic, we were among the first to file class action lawsuits against the insurance industry to recover insurance benefits for business owners whose businesses were shuttered by the pandemic. We represent an array of small and family-owned businesses— including restaurants and eateries, movie theatres, salons, retail stores, healthcare providers, and travel agencies—in a labyrinthine legal dispute about whether commercial property insurance policies cover business income losses that occurred as a result of business interruptions related to the COVID-19 pandemic. With over 800 cases filed nationwide to date, we have played an active role in efforts to coordinate the work of plaintiffs' attorneys through the Insurance Law Section of the American Association for Justice (AAJ), including by leading various roundtables and workgroups as the State Co-Chairs for Illinois, Wisconsin, and Michigan of the Business Interruption Litigation Taskforce (BILT), a national collaborative of nearly 300 practitioners representing policyholders in insurance claims arising out of the COVID-19 pandemic.

## Insurance Matters

▶ *Holloway v. J.C. Penney*, No. 97-cv-4555 (N.D. Ill.): One of the
primary attorneys in a multi-state class action suit alleging that the
defendant illegally denied life insurance benefits to the class. Case
settled, resulting in a multi-million dollar cash award to the class.

▶ *Ramlow v. Family Health Plan*, 2000CV003886 (Wis. Cir. Ct.): Co-
lead counsel in a class action suit challenging defendant's termination
of health insurance to groups of self-insureds. The plaintiff won a
temporary injunction, which was sustained on appeal, prohibiting
such termination. Case eventually settled, ensuring that each class
member would remain insured.

# Public Client Litigation and Investigations

We have been retained as outside counsel by states, cities, and other regulators to handle investigations and litigation relating to environmental issues, the marketing of opioids and e-cigarettes, privacy issues, and general consumer fraud.

**Representative cases and settlements include:**

‣ *State of Idaho v. Purdue Pharma L.P., et al.*, No. CV01-19-10061 (Cir. Ct. Ada Cty., Idaho): Representing the State of Idaho, and nearly 50 other governmental entities— with a cumulative constituency of over three million Americans—in litigation against manufacturers and distributors of prescription opioids.

‣ *District of Columbia v. Juul Labs, Inc.*, No. 2019 CA 07795 B (D.C. Super. Ct.): Representing the District of Columbia in a suit against e-cigarette giant Juul Labs, Inc. for alleged predatory and deceptive marketing.

‣ *State of New Mexico, ex. rel. Hector Balderas v. Google, LLC*, No. 20-cv-00143 (D.N.M): Representing the State of New Mexico in a case against Google for violating the Children's Online Privacy Protection Act by collecting data from children under the age of 13 through its G-Suite for Education products and services.

‣ *District of Columbia v. Facebook, Inc.*, No. 2018 CA 8715 B (D.C. Super. Ct.) and *People of Illinois v. Facebook Inc., et al.*, No. 2018-CH-03868 (Cir. Ct. Cook Cty., Ill.): Representing the District of Columbia as well as the People of the State of Illinois (through the Cook County State's Attorney) in lawsuits against the world's largest social network, Facebook, and Cambridge Analytica—a London-based electioneering firm—for allegedly collecting (or allowing the collecting of) and misusing the private data of 50 million Facebook users.

‣ ComEd Bribery Litigation: Representing the Citizens Utility Board, the statutorily-designated representative of Illinois utility ratepayers, in pursuing Commonwealth Edison for its alleged role in a decade-long bribery scheme.

## Public Client Litigation and Investigations

▸ *City of Cincinnati, et al. v. FirstEnergy, et al.*, No. 20CV007005 (Ohio C.P.): Representing Columbus and Cincinnati in litigation against First Energy over the largest political corruption scandal in Ohio's history. Obtained preliminary injunction, which prevented electric utilities from collecting more than $1 billion of new fees from being collected from ratepayers

▸ *Village of Melrose Park v. Pipeline Health Sys. LLC, et al.*, No. 19-CH-03041 (Cir. Ct. Cook Cty., Ill.): Successfully represented the Village of Melrose Park in litigation arising from the closure of Westlake Hospital in what has been called "one of the most complicated hospital closure disputes in the state's history."

▸ *In re Marriott Int'l, Inc. Customer Data Security Breach Litig.*, 19-md-02879, MDL 2879 (D. Md.): Representing the City of Chicago in the ongoing Marriott data breach litigation.

▸ *In re Equifax, Inc., Customer Data Security Breach Litig.*, 17-md-02800 (N.D. Ga.): Successfully represented the City of Chicago in the Equifax data breach litigation, securing a landmark seven-figure settlement under Chicago's City-specific ordinance.

▸ *City of Chicago, et al. v. Uber Techs., Inc.*, No. 17-CH- 15594 (Cir. Ct. Cook Cty., Ill.): Representing both the City of Chicago and the People of the State of Illinois (through the Cook County State's Attorney) in a lawsuit against tech giant Uber Technologies, stemming from a 2016 data breach at the company and an alleged cover-up that followed.

## General Commercial Litigation

Our attorneys have also handled a wide range of general commercial litigation matters, from partnership and business-to-business disputes to litigation involving corporate takeovers. We have handled cases involving tens of thousands of dollars to "bet the company" cases involving up to hundreds of millions of dollars. Our attorneys have collectively tried hundreds of cases, as well as scores of arbitrations. We have routinely been brought on to be "negotiation" counsel in various high-stakes or otherwise complex commercial disputes.

☆ ☆ ☆ ☆ ☆ ☆ ☆

# Our Team



# Jay Edelson

Founder and CEO

## Secured over $3 billion in settlements and verdicts for his clients while serving as lead counsel (over $20b in total).

O_312.589.6375
F_312.589.6378

jedelson@edelson.com

Law360 described Jay as a "Titan of the Plaintiff's Bar." The American Bar Association recognized Jay Edelson as one of the "most creative minds in the legal industry." Jay has also been recognized as one of "America's top trial lawyers" in the mass action arena, and was included in LawDragon's 2020 and 2023 list of Leading Plaintiff Financial Lawyers. Law360 noted that he has "taken on some of the biggest companies and law firms in the world and has had success where others have not." Another publication explained that "when it comes to legal strategy and execution, Jay is simply one of the best in the country." Professor Todd Henderson, the Michael J. Marks Professor of Law at the University of Chicago Law School, opined that when thinking about "who's the most innovative lawyer in the US ... [Jay is] at or near the top of my list."

Of Counsel explained that Jay has made a career out of "battling bullies":

> Big banks. Big tech firms. Big Pharma. The big business that is the NCAA. Plaintiff's attorney Jay Edelson wages battle against many of the nation's most fortified institutions. Not only does he refuse to back down to anyone, regardless of their stature or deep pockets, he welcomes the challenge.

> Edelson earned a monumental victory in the US Supreme Court in what's been characterized as one of the most important consumer privacy cases of the last several years, Robins v. Spokeo. He and his team are leading the charge against the NCAA in representing former college football players who suffered concussions, and their families. And, on behalf of labor unions and governmental bodies, he's elbow-deep in litigation against pharmaceutical companies and distributors for their pivotal role in the opioid crisis.

> Simply put, he's a transformational lawyer.

▶ Jay has been appointed to represent state and local regulators on some of the largest issues of the day, ranging from opioids suits against pharmaceutical companies, to environmental actions against polluters, to breaches of trust against energy companies and for-profit hospitals, to privacy suits against Google, Facebook, Uber, Marriott, and Equifax.

Our Team

---

## Jay Edelson

Founder and CEO

▶ Jay has received special recognition for his success in taking on Silicon Valley. The national press has dubbed Jay and the firm the "most feared" litigators in Silicon Valley and, according to the New York Times, tech's "babyfaced ... boogeyman." Most recently, Chicago Lawyer Magazine dubbed Jay "Public Enemy No. 1 in Silicon Valley." In the emerging area of privacy law, the international press has called Jay one of the world's "profiliertesten (most prominent)" privacy class action attorneys. The National Law Journal has similarly recognized Jay as a "Cybersecurity Trailblazer"—one of only two plaintiff's attorneys to win this recognition.

▶ Jay has taught seminars on class actions and negotiations at Chicago-Kent College of Law and privacy litigation at UC Berkeley School of Law. He has written a blog for Thomson Reuters, called Pardon the Disruption, where he focused on ideas necessary to reform and reinvent the legal industry and has contributed opinion pieces to TechCrunch, Quartz, the Chicago Tribune, Law360, and others. He also serves on Law360's Privacy & Consumer Protection editorial advisory board. In recognition of the fact that his firm runs like a start-up that "just happens to be a law firm," Jay was recently named to "Chicago's Top Ten Startup Founders over 40" by Tech.co.

▶ Jay has been regularly appointed to lead complicated MDLs and other coordinated litigation, including those seeking justice for college football players suffering from the effects of concussions to homeowners whose HELOCs were improperly slashed after the 2008 housing collapse to some of the largest privacy cases of the day.

▶ Jay recieved his JD from the University of Michigan Law School.

▶ For a more complete bio, see https://edelson.com/team/jay-edelson/



# Rafey S. Balabanian

Global Managing Partner
Director of Nationwide Litigation

Appointed lead class counsel in more than two dozen class actions in state and federal courts across the country.

O_415.234.5342
F_415.373.9435

rbalabanian@edelson.com

Rafey started his career as a trial lawyer, serving as a prosecutor for the City of Chicago where he took part in dozens of trials. Rafey went on to join a litigation boutique in Chicago where he continued his trial work, before eventually starting with Edelson in 2008. He is regarded by his peers as a highly skilled litigator, and has been appointed lead class counsel in more than two dozen class actions in state and federal courts across the country. His work has led to groundbreaking results in trial courts nationwide, including a $925 million jury verdict in *Wakefield v. ViSalus*—the largest privacy verdict in this nation's history. In 2020 and 2021, Rafey was recognized as a top 100 lawyer in California by California Daily Journal.

▸ Rafey has been at the forefront of protecting consumer data, and in 2018 helped lead the effort to obtain adversarial class certification for the first time in the history of the Illinois Biometric Information Privacy Act, on behalf of a class of Illinois users. On the eve of trial, the case settled for a record-breaking $650 million.

▸ Some of Rafey's more notable achievements include nationwide settlements involving the telecom industry, including companies such as AT&T, Google, Sony, Motricity, and OpenMarket valued at more than $100 million.

▸ Rafey has been appointed to represent state Attorneys General and regulators on a variety of issues including the District of Columbia in a suit against Facebook for the Cambridge Analytica scandal. He also represents labor unions and governmental entities in lawsuits against the drug manufacturers and distributors over the ongoing opioid crisis.

▸ Rafey has also been appointed to the Executive Committee in the NCAA concussion cases, considered to be "one of the largest actions pending in the country, a multi district litigation ... that currently include [more than 300] personal injury class actions filed by college football players[.]" And he represents a member of the Tort Claimant's Committee in the PG&E Bankruptcy action, which resulted in a historic $13.5 billion settlement.

▸ Rafey served as trial court counsel in *Robins v. Spokeo, Inc.*, 2:10-cv-05306-ODW-AGR (C.D. Cal.), which has been called the most significant consumer privacy case in recent years.

# Rafey S. Balabanian

Global Managing Partner
Director of Nationwide Litigation

▸ Rafey's class action practice also includes his work in the privacy sphere, and he has reached groundbreaking settlements with companies like Netflix, LinkedIn, Walgreens, and Nationstar. Rafey also served as lead counsel in the case of *Dunstan, et al. v. comScore, Inc.*, No. 11-cv-5807 (N.D. Ill.), where he led the effort to secure class certification of what is believed to be the largest adversarial class to be certified in a privacy case in the history of U.S. jurisprudence.

▸ Rafey's work in general complex commercial litigation includes representing clients ranging from "emerging technology" companies, real estate developers, hotels, insurance companies, lenders, shareholders and attorneys. He has successfully litigated numerous multi-million dollar cases, including several "bet the company" cases.

▸ Rafey is a frequent speaker on class and mass action issues, and has served as a guest lecturer on several occasions at UC Berkeley School of Law. Rafey also serves on the Executive Committee of the Antitrust, Unfair Competition and Privacy Section of the State Bar of California where he has been appointed Vice Chair of Privacy, as well as the Executive Committee of the Privacy and Cybersecurity Section of the Bar Association of San Francisco.

▸ Rafey received his J.D. from the DePaul University College of Law in 2005. A native of Colorado, Rafey received his B.A. in History, with distinction, from the University of Colorado – Boulder in 2002.



# Eve-Lynn J. Rapp

Managing Partner, Boulder

## Secured a $76 million settlement— the largest ever for a TCPA case—four days before trial.

O_720.741.0084
F_720.741.0081

erapp@edelson.com

Eve is a partner and Co-Chair of Edelson's Public Client team, and has extensive complex litigation experience in class, mass, and governmental litigation, including matters on behalf of various Attorneys General and municipalities across the country. Eve has been appointed class counsel or led the litigation efforts in dozens of privacy and consumer protection matters and has recovered or secured verdicts of over a billion dollars for her clients.

▶ Specific to her Public Client and Government Affairs practice, Eve is presently leading the litigation on behalf of the City of Chicago in the Marriott data breach litigation, which seeks to hold the hotel giant accountable for a massive data breach where attackers stole the personal date of up to 383 million guests—including over 5 million unencrypted passport numbers. She likewise represented the City of Chicago in the data breach litigation against Equifax where she secured a landmark seven-figure settlement under Chicago's City-specific ordinance.

▶ Eve is part of the team representing the District of Columbia in its litigation against Juul for its deceptive e-cigarette manufacturing and sales and the State of New Mexico in its suit against Google alleging that its G-Suite for Education product and services illegally collected data from New Mexico school children in violation of COPPA. Eve also counsels governments on a range of issues involving consumer protection, privacy, technology, and data security and was recently designated a Panel Member of Delaware's Department of Justice's Environmental Counsel Panel.

▶ Eve devotes a considerable amount of her practice to consumer technology and privacy cases. Eve was appointed Class Counsel in Wakefield v. ViSalus, Inc., No. 15-cv-01857 (D. Or.), where she led and coordinated Edelson's litigation efforts, achieved certification of an adversarial TCPA class, and paved the way to a $925 million jury verdict. She also led Edelson's efforts in Birchmeier v. Caribbean Cruise Line, Inc. et al., No. 12-cv-04069 (N.D. Ill.), where, after obtaining class certification and partial summary judgment, she secured a $76 million settlement—the largest ever for a TCPA case—four days before trial. She is also responsible for leading one of the first "Internet of Things" cases under the Federal

Our Team

# Eve-Lynn Rapp

Managing Partner, Boulder

Wiretap Act against a company collecting highly sensitive personal information from consumers, in which she obtained a $5 million (CAD) settlement that afforded individual class members over one hundred dollars in relief.

▸ In addition to her government and privacy work, Eve has led over a dozen consumer fraud cases, against a variety of industries, including e-cigarette sellers, on-line gaming companies, and electronic and sport products distributors. She lead and resolved a case against a 24 Hour Fitness for misrepresenting its "lifetime memberships," which resulted in over 25 million dollars of relief.

▸ Due to Eve's knowledge and practice in the data privacy, technology and consumer protection space, Eve serves as the Chair of the San Francisco Bar Association's Cybersecurity and Privacy Committee, where she is responsible for hosting and speaking about a range of cutting-edge issues. She also speaks on various panels about cutting edge issues ranging from upcoming regulatory efforts, "issues to watch," and litigation trends.

▸ Eve is passionate about diversity and social justice. She works with various organizations such as the Diverse Attorney Pipeline Program, where she helps her firm conduct over 20 mock interviews for women of color each year in effort to help expand their postgraduate opportunities, and organizations like the East Bay Community Law Center and Berkeley's Women of Color Collective. As a young attorney, Eve likewise devoted a significant amount of time to the Chicago Lawyers' Committee for Civil Rights Under Law's Settlement Assistance Project, where she represented a number of pro bono clients for settlement purposes.

▸ From 2015-2019, Eve was selected as an Illinois Emerging Lawyer by Leading Lawyers.

▸ Eve received her J.D. from Loyola University of Chicago-School of Law, graduating cum laude, with a Certificate in Trial Advocacy. During law school, she was an Associate Editor of Loyola's International Law Review and externed as a "711" at both the Cook County State's Attorney's Office and for Cook County Commissioner Larry Suffredin. Eve also clerked for both civil and criminal judges (The Honorable Judge Yvonne Lewis and Plummer Lott) in the Supreme Court of New York. Eve graduated from the University of Colorado, Boulder, with distinction and Phi Beta Kappa honors, receiving a B.A. in Political Science.



# Benjamin H. Richman

Managing Partner, Chicago

## Recovered hundreds of millions of dollars for his clients.

O_312.589.6377
F_312.589.6378

brichman@edelson.com

Benjamin handles plaintiff's-side class and mass actions, helping employees in the workplace, consumers who were sold deceptive products or had their privacy rights violated, individuals and families suffering the ill-effects of exposure to toxic chemicals, student athletes suffering from the effects of concussions, and labor unions and governmental bodies seeking to recover losses arising out of the opioid crisis. He also routinely represents technology and brick and mortar companies in a wide variety of commercial litigation and other matters. Overall, Ben has been appointed by the federal and state courts to be Class or Lead Counsel in dozens of cases.

▸ Ben represents state Attorneys General, counties, and cities in high-stakes litigation and investigations, including the State of Idaho, in asserting claims against some of the largest pharmaceutical manufacturers and distributors in the world related to the ongoing opioid epidemic, including in the MDL pending in the Northern District of Ohio. Ben also leads the team representing approximately 50 other governmental entities in opioid litigation; the State of New Mexico in its lawsuit against Google LLC for allegedly collecting data from children under the age of 13 through its G-Suite for Education products and services; the District of Columbia in a suit against e-cigarette giant Juul for alleged predatory and deceptive marketing; and was appointed as a Special Assistant State's Attorney to prosecute Facebook's violations of the Illinois Consumer Fraud Act in the Cambridge Analytica scandal.

▸ Ben has been one of the primary forces behind the development of the firm's environmental practice. In the last year alone, Ben led a team representing hundreds of individuals across the country suffering from the effects of exposure to ethylene oxide—a carcinogenic chemical compound used in sterilization applications—emitted into the air in their communities, which included coordinating litigation across state and federal courts in various jurisdictions; was appointed to the Plaintiffs' Executive Committee overseeing the prosecution of the *In re: Aqueous Film-Forming Foams Prods. Liability Litig.*, No. 18-mn-2873, MDL No. 2873 (D.S.C.) (which includes more than 500 cases against the largest chemical manufacturers in the world, among others); and was designated as a Panel Member on a State Attorney General's Environmental Counsel Panel, which was formed to assist and represent the State in a wide range of environmental litigation.

▸ Ben is currently part of the team leading the *In re National Collegiate Athletic Association*

## Benjamin H. Richman

Managing Partner, Chicago

*Student-Athlete Concussion Injury Litigation – Single Sport/Single School (Football)* multidistrict litigation, bringing personal injury lawsuits against the NCAA, athletic conferences, and its member institutions over concussion-related injuries. In addition, Ben has and is currently acting as lead counsel in numerous class actions involving alleged violations of class members' common law and statutory rights (*e.g.*, violations of Alaska's Genetic Privacy Act, Illinois' Biometric Information Privacy Act, the federal Telephone Consumer Protection Act, and others).

▸ Some of Ben's notable achievements include acting as class counsel in litigating and securing a $45 million settlement of claims against for-profit DeVry University related to its allegedly false reporting of job placement statistics. He has acted as lead counsel in securing settlements collectively worth $50 million in over a half-dozen nationwide class actions against software companies involving claims of fraudulent marketing and unfair business practices. He was part of the team that litigated over a half-dozen nationwide class actions involving claims of unauthorized charges on cellular telephones, which ultimately led to settlements collectively worth hundreds of millions of dollars. And he has been lead counsel in numerous multi-million dollar privacy settlements, including several that resulted in individual payments to class members reaching into the tens of thousands of dollars and another that—in addition to securing millions of dollars in monetary relief— also led to a waiver by the defendants of their primary defenses to claims that were not otherwise being released.

▸ Ben's work in complex commercial matters includes successfully defending multiple actions against the largest medical marijuana producer in the State of Illinois related to the issuance of its cultivation licenses, and successfully defending one of the largest mortgage lenders in the country on claims of unjust enrichment, securing dismissals or settlements that ultimately amounted to a fraction of typical defense costs in such actions. Ben has also represented startups in various matters, including licensing, intellectual property, and mergers and acquisitions.

▸ Each year since 2015, Ben has been recognized by Super Lawyers as a Rising Star and Leading Lawyers as an Emerging Lawyer in both class action and mass tort litigation.

▸ Ben received his J.D. from the University of Illinois Chicago School of Law, where he was an Executive Editor of the Law Review and earned a Certificate in Trial Advocacy. While in law school, Ben served as a judicial extern to the late Honorable John W. Darrah of the United States District Court for the Northern District of Illinois. Ben also routinely guest-lectures at various law schools on issues related to class actions, complex litigation and negotiation.



# Shawn Davis

Chief Information Officer

## Experience testifying in federal court, briefing members of U.S. Congress on Capitol Hill.

O_312.589.6373
F_312.589.6378

sdavis@edelson.com

**Shawn leads a technical team in investigating claims involving privacy violations and tech-related abuse. His team's investigations have included claims arising out of the fraudulent development, marketing, and sale of computer software, unlawful tracking of consumers through digital devices, unlawful collection, storage, and dissemination of consumer data, large-scale data breaches, receipt of unsolicited communications, and other deceptive marketing practices.**

▶ Shawn has experience testifying in federal court, briefing members of U.S. Congress on Capitol Hill, and is routinely asked to testify before legislative bodies on critical areas of cybersecurity and privacy, including those impacting the security of our country's voting system, issues surrounding children's privacy (with a special emphasis on surreptitious geotracking), and other ways data collectors and aggregators exploit and manipulate people's private lives. Shawn has taught courses on cybersecurity and forensics at the undergraduate and graduate levels and has provided training and presentations to other technology professionals as well as members of law enforcement, including the FBI.

▶ Shawn's investigative work has forced major companies (from national hotel chains to medical groups to magazine publishers) to fix previously unrecognized security vulnerabilities. His work has also uncovered numerous issues of companies surreptitiously tracking consumers, which has led to groundbreaking lawsuits

▶ Prior to joining Edelson PC, Shawn worked for Motorola Solutions in the Security and Federal Operations Centers as an Information Protection Specialist. Shawn's responsibilities included network and computer forensic analysis, malware analysis, threat mitigation, and incident handling for various commercial and government entities.

▶ Shawn is an Adjunct Industry Associate Professor for the School of Applied Technology at the Illinois Institute of Technology (IIT) where he has been teaching since December of 2013. Additionally, Shawn is a faculty member of the IIT Center for Cyber Security and Forensics Education which is a collaborative space between business, government, academia, and security professionals. Shawn's contributions aided in IIT's designation as a National Center of Academic Excellence in Information Assurance by the National Security Agency.

▶ Shawn graduated with high honors from the Illinois Institute of Technology with a Masters of Information Technology Management with a specialization in Computer and Network Security. During graduate school, Shawn was inducted into Gamma Nu Eta, the National Information Technology Honor Society.



# Kelsey McCann

Chief of Staff

As a result of her efforts, Edelson is considered one of the most diverse "high stakes" plaintiff's firms in the country.

**Kelsey weighs in on and executes strategic planning, including HR issues, public relations, pro bono initiatives, staffing and the firm's general strategic vision.**

▸ As the Chair of the Hiring Committee, Kelsey develops and executes the firm's recruitment efforts, including screening and evaluating lateral hires (including attorneys and non-attorneys) for both permanent and temporary work. She also leads the Summer Associate committee, where she evaluates law students and college interns for the firm's summer program and structuring the various aspects of the summer program, including the firm's unique training model.

▸ Kelsey's creation and leadership of diversity efforts within the firm has made her a national thought leader. She created novel outreach programs to law schools, law school groups, and attorney organizations in order to broaden the pool of applicants the firm was seeing. Today, as a result of her efforts, Edelson PC is considered one of the most diverse "high stakes" plaintiff's firms in the country, and was recently awarded the Diversity Initiative Award, given to the plaintiff's firm demonstrating a successful effort to promote diversity within its organization and the profession at large by The National Law Journal. The firm also has been recognized as having the second highest lawyer satisfaction rate in the country by law360 and the highest one nationally by Above the Law.

▸ In 2022, Kelsey was recognized as a DEIA Visionary by the LA Times.

▸ Kelsey also works with the different practice groups and the individual employees to set and execute short and long term individual and firm-specific goals.

▸ Kelsey also works with the different practice groups and the individual employees to set and execute short and long term individual and firm-specific goals.

▸ Kelsey graduated summa cum laude with dual degrees from DePaul University.

O_312.572.7219
F_312.589.6378

kmccann@edelson.com



# Tasha Green

Director of Human Resources

## Recieved her Masters in Counseling Psychology from The Chicago School of Professional Psychology.

**Tasha's work focuses on the day-to-day HR management of the firm.**

▶ Tasha is the Director of Human Resources at Edelson PC and a member of the Executive Committee. Tasha conducts onboarding for new staff and serves as point of contact for related inquires, ensures the firm's compliance by processing renewals for attorneys and the firm yearly, as well as reviews, gets approval from leadership, and processes all plan changes for benefits enrollments and transactions.

▶ Tasha assists in the maintenance of company culture, conducts phone and in- person interviews, aids in the hiring decision process, and retains confidentiality of sensitive/ privileged information, among other activities.

▶ Tasha began her career at Edelson PC in 2014 as a Legal Assistant.

▶ Tasha graduated from The Chicago School of Professional Psychology wiht a Masters in Counseling Psychology.

▶ Tasha recieved her BA from National Louis University in Chicago.

O_312.239.3361
F_312.589.6378

tgreen@edelson.com



# Ryan D. Andrews

Partner

## Litigated issues of first impression nationwide securing pathmarking victories.

O_312.589.6374
F_312.589.6378

randrews@edelson.com

Ryan presently leads the firm's complex case resolution and appellate practice group, which oversees the firm's class settlements, class notice programs, and briefing on issues of first impression.

▸ Ryan has been appointed class counsel in numerous federal and state class actions nationwide that have resulted in over $100 million in refunds to consumers, including: *Satterfield v. Simon & Schuster,* No. 06-cv-2893 (N.D. Cal.); *Ellison v Steve Madden, Ltd.,* No. 11-cv-5935 (C.D. Cal.); *Robles v. Lucky Brand Dungarees, Inc.,* No. 10-cv-04846 (N.D. Cal.); *Lozano v. 20th Century Fox,* No. 09-cv-06344 (N.D. Ill.); *Paluzzi v. Cellco P'ship,* No. 2007 CH 37213 (Cir. Ct. Cook Cty., Ill.); and *Lofton v. Bank of America Corp.,* No. 07-5892 (N.D. Cal.).

▸ Representative reported decisions include: *Spokeo, Inc. v. Robins,* 136 S. Ct. 1540 (2016); *Kater v. Churchill Downs Inc.,* 886 F.3d 784 (9th Cir. 2018); *Warciak v. Subway Rests., Inc.,* 880 F.3d 870 (7th Cir. 2018), cert. denied, 138 S. Ct. 2692 (2018); *Beaton v. SpeedyPC Software,* 907 F.3d 1018 (7th Cir. 2018), cert. denied, 139 S. Ct. 1465 (2019); *Klaudia Sekura v. Krishna Schaumburg Tan, Inc.,* 2018 IL App (1st) 180175; *Yershov v. Gannett Satellite Info. Network, Inc.,* 820 F. 3d 482 (1st Cir. 2016); *Resnick v. AvMed, Inc.,* 693 F. 3d 1317 (11th Cir. 2012); and *Satterfield v. Simon & Schuster, Inc.,* 569 F.3d 946 (9th Cir. 2009).

▸ Ryan graduated from the University of Michigan, earning his B.A., with distinction, in Political Science and Communications. Ryan received his J.D. with High Honors from the Chicago-Kent College of Law and was named Order of the Coif. Ryan has served as an Adjunct Professor of Law at Chicago-Kent, teaching a third-year seminar on class actions. While in law school, Ryan was a Notes & Comments Editor for The Chicago-Kent Law Review, earned CALI awards for the highest grade in five classes, and was a teaching assistant for both Property Law and Legal Writing courses. Ryan externed for the Honorable Joan B. Gottschall in the United State District Court for the Northern District of Illinois.



# Natasha Fernández-Silber

Partner

## Specializes in generic drug suppression cases involving "pay-for-delay" deals & other anticompetitive schemes.

O_628.241.1135
F_312.589.6378

nfernandezsilber@
edelson.com

**Natasha's practice focuses on antitrust class actions and other forms of complex litigation.**

▸ Prior to joining Edelson, Natasha was a partner at a boutique antitrust class action firm where she specialized in generic drug suppression cases involving "pay-for-delay" deals and other anticompetitive schemes. She has also represented purchasers of e-cigarettes, textbooks, pesticides, and other consumer products

▸ Representative cases decisions include: *Reece v. Altria Group*, No. 20-02345 (N.D. Cal.) – Steering Committee member representing direct purchasers of Juul products in suit alleging anticompetitive agreement between Juul and Altria; *In re Inclusive Access Course Materials Antitrust Litig.*, No. 20-02946 (S.D.N.Y.) – Appointed Co-Lead Interim Counsel on behalf of college students alleging textbook publishers and retailers conspired to restrict sales of course materials to specific online format to foreclose competition and raise prices; *In re Actos Antitrust Litig.*, No. 15-03278 (S.D.N.Y) – Counsel for direct purchasers in suit alleging Takeda delayed generic competition for diabetes drug by misrepresenting scope of patents listed in Orange Book; *In re Ranbaxy Generic Drug Application Antitrust Litig.*, No. 19-02878 (D. Mass.) – Counsel for direct purchasers in suit alleging Ranbaxy fraudulently obtained tentative ANDA approvals (and first-to-file exclusivities), delaying generic competition in three drug markets; *In re Intuniv Antitrust Litig.*, No. 16-12653 (D. Mass.) – Counsel for direct purchasers in suit alleging reverse payment scheme to monopolize market for ADHD drug.

▸ Natasha clerked for the Honorable Ann Claire Williams on the Seventh Circuit Court of Appeals.

▸ Natasha received her J.D. from the New York University School of Law.

▸ Natasha is admitted in New York, Michigan, Southern District of New York, Seventh Circuit Court of Appeals.



# Amy B. Hausmann

Partner

## Served as a law clerk to the Honorable Michael P. Shea of the U.S. District Court for District of Connecticut.

**Amy's practice focuses on consumer and privacy-related class actions, as well as government enforcement litigation.**

▸ Specific to her public client practice, Amy secured preliminary injunction on behalf of the Cities of Cincinnati, Columbus, Dayton, and Toledo in action against FirstEnergy Corp. for alleged violations of the Ohio Corrupt Practices Act, saving the Cities and all Ohio consumers from paying $170 million per year in added electric bill fees. *City of Cincinnati v. FirstEnergy Corp.*, No. 20 CV 7005 (Ohio Ct. Common Pleas).

▸ Amy represents consumers who have suffered losses to illegal interest casinos. Three of those cases recently settled for approximately $200 million, with damages-adjusted claims rates of 15%-33% and class members recovering up to hundreds of thousands of dollars. The largest of the remaining cases is set for trial in November 2021. *See, e.g., Benson v. DoubleDown Interactive, LLC*, No. 18-cv-525 (W.D. Wash.); *Wilson v. PTT, LLC*, No. 18-cv-5275 (W.D. Wash); *Reed v. Scientific Games Corp.*, No. 18-cv-565 (W.D. Wash.).

▸ Amy received her J.D. from Yale Law School where she participated in the San Francisco Affirmative Litigation Project, a clinic partnering with the San Francisco City Attorney's Office to bring suits challenging unfair and deceptive business practices. She also participated in the Housing Clinic of the Jerome N. Frank Legal Services Organization, defending homeowners in judicial foreclosure proceedings and bringing affirmative suits against mortgage lenders and servicers. She served as Co-Chair of the law school's Clinical Student Board and as a Practical Scholarship Editor on the Yale Law Journal, helping solicit and publish pieces based on legal practice or clinical experience.

▸ Before law school, Amy worked as a legal assistant at a plaintiffs' firm in New York City focusing on employment and False Claims Act cases.

O_773.389.2237
F_312.589.6378

abhausmann@edelson.com



# J. Aaron Lawson

Partner

## Argued in four federal Courts of Appeals and numerous district courts around the country.

O_415.234.5344
F_415.373.9435

alawson@edelson.com

Aaron's practice focuses on appeals and complex motion practice. Aaron regularly litigates complex issues in both trial and appellate courts, including jurisdictional issues and class certification.

▶ Aaron has argued in four federal Courts of Appeals and numerous district courts around the country. In 2019, Aaron won and successfully defended class certification in a case challenging Facebook's collection of facial recognition data gathered through the platform's photo tagging feature. The case settled on the eve of trial for a record breaking $650 million. *In re Facebook Biometric Info. Privacy Litig.*, 326 F.R.D. 535 (N.D. Cal. 2018); 932 F.3d 1264 (9th Cir. 2019). W

▶ Aaron won and successfully defended class certification in case involving allegedly fraudulently advertised computer software. *Beaton v. SpeedyPC Software*, No. 13-cv-08389 (N.D. Ill.); 907 F.3d 1018 (7th Cir. 2018).

▶ Aaron helped achieve a landmark decision affirming the ability of plaintiffs to bring statutory claims for relief in federal court. *Robins v. Spokeo*, No. 10-cv-5306 (C.D. Cal.).

▶ In addition to his work at Edelson PC, Aaron serves on the Privacy Subcommittee of the California Lawyers Association's Antitrust, UCL & Privacy Section, and edits the yearly treatise produced by the subcommittee

▶ Prior to joining Edelson PC, Aaron served for two years as a Staff Attorney for the United States Court of Appeals for the Seventh Circuit, handling appeals involving a wide variety of subject matter, including consumer-protection law, employment law, criminal law, and federal habeas corpus.

▶ While at the University of Michigan Law School, Aaron served as the Managing Editor for the Michigan Journal of Race & Law, and participated in the Federal Appellate Clinic. In the clinic, Aaron briefed a direct criminal appeal to the United States Court of Appeals for the Sixth Circuit, and successfully convinced the court to vacate his client's sentence.



# Todd Logan

Partner

Led the litigation and settlement of a variety of class action cases alleging claims under federal, state, and local laws.

O_415.638.9853
F_415.373.9435

tlogan@edelson.com

**Todd focuses his practice on class and mass actions and large-scale governmental suits.**

▸ Todd is routinely appointed by courts nationwide to serve as class counsel in major class action litigation. In recent years, Todd has been appointed Class Counsel in, and led the litigation of, several related cases alleging that internet slot machine apps constitute illegal gambling. Three of those cases recently settled for approximately $200 million, with damages-adjusted claims rates of 15%-33% and class members recovering up to hundreds of thousands of dollars.

▸ Todd represents Butte County residents who lost their homes and businesses in the Camp Fire, governments and other entities seeking to recover losses arising out of the nationwide opioid epidemic, former NCAA football players suffering from the harmful effects of concussions, consumers seeking compensation for their gambling losses to illegal internet casinos, and consumers who have been defrauded or otherwise suffered damages under state consumer protection laws.

▸ In recent years, Todd has led the litigation and settlement of a variety of class action cases alleging claims under federal, state, and local laws. For example, in *Dickey v. Advanced Micro Devices, Inc.*, No. 15-cv-04922, 2019 WL 251488, (N.D. Cal. Jan. 17, 2019), Todd briefed and argued a successful motion for nationwide class certification in a complex consumer class action alleging claims under California Law. In *Robins v. Spokeo*, No. 10-cv-5306 (C.D. Cal.), after remand from both the Supreme Court and the Ninth Circuit, Todd led the litigation of the class' claims under the Fair Credit Reporting Act for more than a year before the case entered settlement posture on favorable terms. And in *Sekura v. L.A. Tan Enterprises, Inc.*, No. 2015-CH-16694 (Cir. Ct. Cook Cty., Ill.), Todd represented a class of consumers alleging claims under Illinois' Biometric Information Privacy Act (BIPA) and ultimately obtained a seven-figure class action settlement – the first ever BIPA class action settlement.

▸ Before becoming a lawyer, Todd built SQL databases for a technology company and worked at various levels in state and local government. Todd received his J.D. cum laude from Harvard Law School, where he was Managing Editor of the Harvard Journal of Law and Technology. Todd also assisted Professor William B. Rubenstein with research and analysis on a wide variety of class action issues, and is credited for his work in more than eighty sections of Newberg on Class Actions.

▸ From 2016-17, Todd served as a judicial law clerk for the Honorable James Donato of the Northern District of California.



# David I. Mindell

Partner
Co-Chair, Public Client and Government Affairs group

Counsels governments and state and federal lawmakers
on a range of policy issues.

O_312.572.7213
F_312.589.6378

dmindell@edelson.com

David represents state Attorneys General, counties, and cities in high-stakes litigation and investigations involving consumer protection, information security and privacy violations, the opioid crisis, and other areas of enforcement that protect government interests and vulnerable communities. David also counsels governments and state and federal lawmakers on a range of policy issues involving consumer protection, privacy, technology, and data security.

▶ In addition to his Public Client and Government Affairs practice, David helps direct the firm's Investigations team, including the group's internal lab "of computer forensic engineers and tech-savvy lawyers [who study] fraudulent software and hardware, undisclosed tracking of online consumer activity and illegal data retention." Cybersecurity & Privacy Practice Group of the Year, Law360 (Jan. 2019). His team's research has led to lawsuits involving the fraudulent development, marketing and sale of computer software, unlawful tracking of consumers through mobile-devices and computers, unlawful collection, storage, and dissemination of consumer data, mobile-device privacy violations, large-scale data breaches, unlawful collection and use of biometric information, unlawful collection and use of genetic information, and the Bitcoin industry.

▶ David also helps oversee the firm's class and mass action investigations, including claims against helmet manufacturers and the National Collegiate Athletic Association by thousands of former high school, college, and professional football players suffering from the long-term effects of concussive and sub-concussive hits; claims on behalf of hundreds of families and business who lost their homes, businesses, and even loved ones in the "Camp Fire" that ravaged thousands of acres of Northern California in November 2018; and on behalf of survivors of sexual abuse.

▶ Prior to joining Edelson PC, David co-founded several tech, real estate, and hospitality related ventures, including a tech startup that was acquired by a well-known international corporation within its first three years. David has advised tech companies on a variety of legal and strategic business-related issues, including how to handle and protect consumer data. He has also consulted with startups on the formation of business plans, product development, and launch.

▶ While in law school, David was a research assistant for University of Chicago Law School Kauffman and Bigelow Fellow, Matthew Tokson, and for the preeminent cybersecurity professor, Hank Perritt at the Chicago-Kent College of Law. David's research included cyberattack and denial of service vulnerabilities of the internet, intellectual property rights, and privacy issues.

▶ David has spoken to a wide range of audiences about his investigations and practice.



O_312.267.2079
F_312.589.6378

rperlstadt@edelson.com

# Roger Perlstadt

Partner

## Briefed appeals and motions in numerous federal and state appellate courts.

Roger's practice focuses on appeals and critical motions. He has briefed appeals and motions in numerous federal and state appellate courts, including the United States Supreme Court's seminal case of *Spokeo, Inc. v. Robins*, and has argued multiple times before the United States Courts of Appeals for the Sixth, Seventh, Eighth, and Ninth Circuits.

▸ Roger has briefed complex issues at the trial court level in cases throughout the country. These cases generally involve matters of first impression relating to new statutes or novel uses of long-standing statutes, as well as the intersection of privacy law and emerging technologies.

▸ Prior to joining Edelson PC, Roger was an associate at a litigation boutique in Chicago, and a Visiting Assistant Professor at the University of Florida Levin College of Law. He has published articles on the Federal Arbitration Act in various law reviews.

▸ Roger has been named a Rising Star by Illinois Super Lawyer Magazine four times since 2010.

▸ Roger graduated from the University of Chicago Law School, where he was a member of the University of Chicago Law Review. After law school, he served as a clerk to the Honorable Elaine E. Bucklo of the United States District Court for the Northern District of Illinois.



# Jimmy Rock

Managing Partner, Washington, D.C. Office, Edelson PC

## Jimmy spent twelve years with the Office of the Attorney General for the District of Columbia.

0_202.987.6302

jrock@edelson.com

**Jimmy Rock is a partner at Edelson PC where his work focuses on consumer protection and environmental cases. He also leads the firm's Public Clients litigation group.**

▶ Prior to joining Edelson PC, Jimmy spent twelve years with the Office of the Attorney General for the District of Columbia where he helped to start OAG's Office of Consumer Protection and transform it into once of the preeminent State AG consumer practices.

▶ Jimmy served for five years as an Assistant Deputy Attorney General managing OAG's Public Advocacy Division, a 40+ lawyer group that enforced the District's consumer protection, antitrust, workers' rights, housing, nonprofit and environmental laws.

▶ Jimmy led a trial team against one of the largest online travel companies for failing to pay District sales taxes on service fees charged for selling hotel rooms, recovering more than $90 million in unpaid taxes and fees. To this day, this remains the largest litigated affirmative judgment obtained by the D.C. Attorney General's Office.  *D.C. v. Expedia, Inc.,* 120 A.3d 623 (D.C. 2015).

▶ Jimmy was the lead attorney on a consumer protection enforcement case stemming from a multistate investigation into Marriott's deceptive advertising of hotel rooms with mandatory resort fees included in the nightly room rate. *D.C. v. Marriott Int'l, Inc.,* No. 2019-CA-004497 B (D.C. Super. Ct.).

▶ In 2015, Jimmy recived the Attorney General's Distinguished Service Award for Trial of Affirmative Litigation.

▶ From 2014-2018, Jimmy served as an Adjunct Professor at Georgetown University Law Center teaching a year-long course on Civil Litigation Practice and Procedure.

▶ Jimmy recieved his J.D. with honors from Emory University school of law.



# Nicholas Rosinia

Partner

## Experience handling high-stakes trials before judges, juries, and arbitration panels.

O_773.389.2281
F_312.589.6378

nrosinia@edelson.com

Nick's practice focuses on litigating class actions, mass torts, and high-profile matters on behalf of government entities. In addition to his trial experience, Nick has managed extensive pre-trial discovery, crafted major motions and briefs, taken and defended scores of depositions, worked with expert witnesses to develop and defend their opinions and reports, and presented argument in federal and state courts.

▸ Nick is a trial lawyer with more than eight years of experience litigating and leading teams of lawyers through eight- and nine-figure disputes from initial advice to jury verdict. Nick second-chaired two major, multi-week arbitration hearings, and played key roles during an eight-day bench trial and a six-week jury trial.

▸ Currently, Nick represents hundreds of survivors of wildfires in Oregon who lost their homes, businesses, and livelihoods over the 2020 Labor Day weekend. Nick also represents a putative class of ADT customers in litigation against ADT and one of its former technicians. Nick is additionally assisting with the litigation of several government enforcement actions on behalf of the District of Columbia, including Facebook for its role in the Cambridge Analytica scandal and JUUL Labs for its e-cigarette marketing practices.

▸ Nick represented a putative class of California raisin growers seeking just compensation from the federal government under the Fifth Amendment's Takings Clause. Following a Supreme Court decision establishing the predicate legal theory, Nick helped conceptualize and develop an ensuing class action that ultimately resulted in an eight-figure class-action settlement. *Ciapessoni, et. al. v. The United States of America*, No. 1:15-cv-00938 (Court of Federal Claims 2015). Along the way, Nick drafted the complaint, worked directly with the class representatives, and helped devise a novel statute of limitations theory that ultimately prevailed and paved the way for the class's recovery.

▸ Prior to joining Edelson PC, Nick worked at two prominent, international law firms.

▸ Nick recieved his J.D. magna cum laude from Washington University in St. Louis School of Law.



# Yaman Salahi

Partner

Secured $465m in pandemic assistance for incarcerated people & recovered over $100m for workers challenging no-poach agreements.

O_415.638.9903
F_415.373.9435

ysalahi@edelson.com

**Yaman spearheads the firm's antitrust practice, and has experience litigating consumer protection, civil rights, privacy, and administrative law claims, including in complex class action proceedings and multi- district litigation.**

▸ Yaman devised the legal strategy, researched the legal theories, and briefed all merits motions challenging the Trump administration's denial of COVID-19 stimulus relief under the CARES Act to people in prison. Yaman was the lead author of the winning motion for class certification, preliminary injunction, and summary judgment, which ultimately resulted in over $465 million in cash assistance to over 385,000 people living in prison, and prevented the IRS from recouping over $1 billion already issued. Yaman also authored a successful opposition to the IRS's attempt in the Ninth Circuit Court of Appeals to stay the district court's rulings pending appeal. Scholl v. Mnuchin, No. 20-cv-5309-PJH (N.D. Cal.).

▸ In antitrust no-poach litigation, Yaman helped obtain a $54.5 million settlement for medical professors and $19 million for other faculty at Duke University and University of North Carolina-Chapel Hill, and $48.95 million for railway industry workers.

▸ Yaman briefed, argued, and won an appeal in the Eleventh Circuit establishing that franchisors and their franchisees constitute separate entities capable of conspiracy under the antitrust laws, a question of first impression.  Arrington v. Burger King Worldwide, Inc., et al., 47 F. 4th 1247 (11th Cir. 2022).

▸ Before joining Edelson PC, Yaman was a Partner at another prominent plaintiff-side class action firm in San Francisco.

▸ From 2017-2018, Yaman served as a judicial law clerk for the Honorable Edward M. Chen in the Northern District of California.

▸ From 2013-2016 Yaman worked as a a Staff Attorney in the National Security and Civil Rights Program at Asian Americans Advancing Justice-Asian Law Caucus, where he focused on legal issues surrounding government surveillance and freedom of speech, and an Arthur Liman Fellow at the American Civil liberties Union of Southern California.

▸ Yaman received his J.D. Yale Law School in 2012.



# Ari J. Scharg

Partner
Co-Chair, Government Affairs Group

## Recognized as one of the leading experts on privacy and emerging technologies.

O_312.239.3362
F_312.589.6378

ascharg@edelson.com

**Ari is a Partner at Edelson PC and Co-Chair of the firm's Public Client and Government Affairs Group, where he leverages his experience litigating hundreds of complex class and mass action lawsuits to help state and local governments investigate and prosecute consumer fraud, data privacy, and other areas of enforcement that protect government interests and vulnerable communities.**

▶ Ari has been appointed as a Special Assistant Cook County State's Attorney to litigate cases against Facebook and Cambridge Analytica for their alleged misuse of consumer data and against Uber for its alleged violations of the state's data breach notification law and information security requirements. He is currently representing the Illinois Citizens Utility Board in litigation against Commonwealth Edison for its alleged role in a decade-long bribery scheme, and serves as Special Counsel for Columbus and Cincinnati in litigation alleging money laundering and corruption against FirstEnergy, where he recently secured a preliminary injunction blocking more than $1 billion of new fees from being collected from ratepayers. Ari also represent a broad range of stakeholders in litigation against opioid companies, including governments, municipal risk pools, labor unions, and health and welfare funds.

▶ Ari is passionate about social justice causes, and in 2017, the Michigan State Bar Foundation presented both Edelson PC and Ari, personally, with its Access to Justice Award for "significantly advancing access to justice for the poor" through his consumer class actions.

▶ As Special Counsel for Melrose Park, Ari served as lead trial counsel in first-of-its-kind litigation seeking to block the closure of Westlake Hospital, a community hospital providing safety net services to medically and socially vulnerable minority populations. Village of Melrose Park v. Pipeline Health System LLC, et al., No. 19-CH-03041 (Cir. Ct. Cook Cty., Ill.). In what has been called "one of the most complicated hospital closure disputes in the state's history," Ari worked tirelessly to preserve access to healthcare for the community by securing a series of in-court victories, including a temporary restraining order prohibiting the owners from closing the hospital, and later, after a full-day evidentiary hearing, an order holding the owner in contempt for attempting to shut down hospital services prematurely.

▶ Recognized as a leader on privacy and emerging technologies, Ari serves on the Executive Oversight Council for the Array of Things Project where he advises on privacy and data security matters, founded and chaired the Illinois State Bar Association's Privacy and Information Security Section (2017-2019), and served as Co-Chair of the Illinois Blockchain and Distributed Ledgers Task Force. Ari also enjoys working with law students through the Diverse Attorney Pipeline Program (DAPP) and Berkeley's Women of Color Collective.



# Alexander G. Tievsky

Partner

## Obtained preliminary injunction preventing electric utilities from collecting more than $1 billion in surcharges.

**Alex concentrates on complex motion practice and appeals in consumer class action litigation.**

▶ Alex has briefed and argued cases in numerous federal appellate and district courts, and he has successfully defended consumers' right to have their claims heard in a federal forum, including, for example, defeating Facebook's attempt to deprive its users of a federal forum to adjudicate their claims for wrongful collection of biometric information in violation of a state privacy statute in *In re Facebook Biometric Info. Privacy Litig.*, 290 F. Supp. 3d 948 (N.D. Cal. 2018), *aff'd* 932 F.3d 1264 (9th Cir. 2019); receiving preliminary injunction preventing electric utilities from collecting surcharges imposed by Ohio House Bill 6 on the basis that Cincinnati and Columbus were likely to succeed on their allegations that the bill was the product of a bribery scheme involving the former speaker of the Ohio House of Representatives in *Cincinnati & Columbus v. First Energy Corp.*, No. 20-CV-7005 (Franklin Cty., Ohio Ct. of Common Pleas 2020); winning reversal of summary judgment in Telephone Consumer Protection Act (TCPA) case on the basis that the defendant could be held liable for ratifying the actions of its callers, even though it did not place the calls itself in *Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068 (9th Cir. 2019); and winning reversal of district court's dismissal in first-of-its-kind ruling that so-called "free to play" casino apps are illegal gambling, which allows consumers to recover their losses under Washington law. *See Kater v. Churchill Downs, Inc.*, 886 F.3d 784 (9th Cir. 2018)

▶ Alex received his J.D. from the Northwestern University School of Law, where he graduated from the two-year accelerated J.D. program. While in law school, Alex was Media Editor of the Northwestern University Law Review. He also worked as a member of the Bluhm Legal Clinic's Center on Wrongful Convictions. Alex maintains a relationship with the Center and focuses his public service work on seeking to overturn unjust criminal convictions in Cook County.

▶ Alex is admitted to the state bars of Illinois and Washington and is a member of both the Lesbian and Gay Bar Association of Chicago and QLaw, the LGBTQ+ Bar Association of Washington.

▶ Alex's past experiences include developing internal tools for an enterprise software company and working as a full-time cheesemonger. He received his A.B. in linguistics with general honors from the College of the University of Chicago.

O_312.589.6379
F_312.589.6378

atievsky@edelson.com



# J. Eli Wade-Scott

Partner

## Returned some of the highest per-person relief ever secured in a privacy case.

**Eli's practice focuses on privacy- and tech-related class actions and enforcement actions brought by governments. Eli has been appointed to represent states and cities to handle high-profile litigation.**

▶ Eli is frequently appointed to represent states and cities to handle high-profile litigation, including by the District of Columbia against JUUL, Inc. in litigation arising from the youth vaping epidemic, by the State of New Mexico to prosecute Google's violations of the Children's Online Privacy Protection Act, and as a Special Assistant State's Attorney for Illinois and the District of Columbia in litigation against Facebook arising from the Cambridge Analytica scandal.

▶ Eli is class counsel in nearly a dozen cash settlements on behalf of consumers, collectively worth more than $50 million, including a $25 million all-cash, non-reversionary settlement for employees in action arising under the Illinois Biometric Information Privacy Act ("BIPA"). Kusinski v. ADP LLC, No. 2017-CH-12364 (Cir. Ct. Cook Cty.).

▶ Lead counsel in a novel putative class action against ADT over security flaws in its home security system that allowed a technician to surreptitiously spy on families—including children—in their most intimate moments at home.

▶ Lead outside attorney for the ACLU and other public interest organizations in a lawsuit against Clearview seeking to enjoin Clearview's mass collection of facial recognition templates. Clearview raised a host of novel, existential arguments for privacy rights at the motion to dismiss stage, which was rejected in a thorough opinion and the case is ongoing. See American Civil Liberties Union v. Clearview AI, Inc., No. 20 CH 4353, 2021 WL 4164452, at *1 (Ill.Cir.Ct. Aug. 27, 2021).

▶ Before joining Edelson PC, Eli served as a law clerk to the Honorable Rebecca Pallmeyer of the Northern District of Illinois. Eli has also worked as a Skadden Fellow at Legal Aid Chicago, Cook County's federally-funded legal aid provider. There, Eli represented dozens of low-income tenants in affirmative litigation against their landlords to remedy dangerous living conditions.

▶ Eli received his J.D. magna cum laude from Harvard Law School, where he was an Executive Editor on the Harvard Law and Policy Review and a research assistant to Professor Vicki C. Jackson.

O_312.242.0859
F_312.589.6378

ewadescott@edelson.com



# Brandt Silver-Korn

Partner

## Represents over 1,000 victims who suffered losses in the 2018 Camp Fire.

**O_415.234.5345**
**F_415.373.9435**

**bsilverkorn@edelson.com**

Brandt's practice focuses on class and mass actions and large-scale governmental suits. His current clients include families who lost their homes and businesses in the Camp Fire, communities that have been severely impacted by the opioid epidemic, and consumers who have suffered gambling losses to illegal internet casinos.

▸ Brandt represents over 1,000 victims, from residents to business owners, who suffered the devastating loss of their homes, property, and loved ones in the 2018 Camp Fire. The lawsuit alleges that the fire was caused by PG&E's equipment, resulting from PG&E's failure to maintain their electrical infrastructure in Butte County. The case resulted in a historic $13.5 billion settlement.

▸ Brandt represents consumers in seven class action lawsuits alleging that various online "social casinos" violate state gambling laws. Brandt has taken a leading role both in discovery and in briefing in these cases, and recently provided live testimony to the Washington State Legislature.

▸ Brandt serves as counsel for the State of Idaho in the State's opioid litigation, where he is part of the team spearheading lawsuits against the nation's leading manufacturers and distributors of opioid products.

▸ Brandt received his J.D. from Stanford Law School, where he was awarded the Gerald Gunther Prize for Outstanding Performance in Criminal Law, and the John Hart Ely Prize for Outstanding Performance in Mental Health Law. While in law school, Brandt was also the leading author of several simulations for the Gould Negotiation and Mediation Program.

▸ Prior to law school, Brandt graduated summa cum laude from Middlebury College with a degree in English and American Literatures.



O_312.819.2104
F_312.589.6378

sufkes@edelson.com

# Schuyler Ufkes

Partner

## Currently litigating consumer class actions on behalf of employees under the Illinois Biometric Information Privacy Act

**Schuyler focuses on consumer and privacy-related class actions.**

▸ Schuyler is currently litigating nearly a dozen consumer class actions on behalf of employees under the Illinois Biometric Information Privacy Act ("BIPA") for their employers' failure to comply with the Act's notice and consent requirements before collecting, storing, and in some instances disclosing their biometric data. Schuyler is also litigating several Telephone Consumer Protection Act cases brought by recipients harassing debt-collection calls as well as spam text messages.

▸ Schuyler received his J.D. magna cum laude, and Order of the Coif, from the Chicago-Kent College of Law. While in law school, Schuyler served as an Executive Articles Editor for the Chicago-Kent Law Review and was a member of the Moot Court Honor Society. Schuyler earned five CALI awards for receiving the highest grade in Legal Writing II, Legal Writing III, Pretrial Litigation, Supreme Court Review, and Professional Responsibility.

▸ Prior to law school, Schuyler graduated with High Honors from the University of Illinois Urbana-Champaign earning a degree in Consumer Economics and Finance.



0_771.200.1527
T_202.270.4777
F_312.589.6378

acolangelo@edelson.com

# Aaron Colangelo

Partner

▶ Aaron is a Partner at Edelson PC, where his work focuses on redressing environmental harms and protecting public health. Before joining Edelson PC, Aaron spent two decades litigating environmental cases with the Natural Resources Defense Council. At NRDC, Aaron served as counsel in more than 150 cases, including lawsuits related to drinking water contamination, migrant farmworker health, hazardous waste cleanup, coastal water quality, food safety, energy efficiency, air pollution, climate change, and toxics in consumer products. Aaron also spent five years as NRDC's litigation co-director, where he helped lead a team of 40 lawyers and paralegals and oversaw a nationwide litigation docket. He has argued in dozens of federal and state courts, including in the U.S. Supreme Court, and he taught environmental litigation for four years as an adjunct professor at the Howard University School of Law.

▶ Prior to working with Edelson PC, Aaron acted as lead counsel in several high-impact environmental lawsuits, including actions to strengthen federal standards for lead in drinking water NRDC v. EPA, No. 21-1020 (D.C. Cir), enforce the Clean Water Act to abate stormwater pollution L.A. County Flood Control District v. NRDC, 568 U.S. 78 (2013), protect children from toxic exposures (NRDC v. EPA, 658 F.3d 200 (2d Cir. 2011); NRDC v. Consumer Product Safety Commission, 597 F. Supp. 2d 370 (S.D.N.Y. 2009)), and reduce pathogens in coastal waters (NRDC v. Johnson, 2008 WL 11343609 (C.D.Cal. 2008), 2008 WL 11342972 (C.D.Cal. 2008), 2007 WL 1121799 (C.D.Cal. 2007)).

▶ Represented environmental interests in litigation against major federal entities, challenging the U.S. Navy's munitions testing program (Potomac Riverkeeper v. U.S. Department of the Navy, No. 23-cv-1650 (D.Md.)) and advocating for safer consumer products and environmental practices to ensure public health and environmental safety.

▶ Recognized as a leader in environmental law, with inclusion in the Lawdragon Green 500 (2023) and the Lawdragon 500 Leading Environmental and Energy Lawyers (2021).



# Caitlin Vaughn

Of Counsel

## Responsible for the management, identification, and investigation of public client cases.

**Caitlin's practice focuses on investigating and developing civil cases that are targeted at protecting consumers, workers, government interests and vulnerable communities for the Investigations team.**

▶ Caitlin previously served as the Director of Public Client Case Development for a prominent plaintiffs firm where she was responsible for the management, identification, and investigation of public client cases.

▶ Caitlin has extensive state government experience having worked for the New York State Senate for ten years in the capacity of Counsel to Chairs of the Senate Aging, Codes and Health Committees. She also served as the Director of the bipartisan Joint Legislative Commission on Rural Resources. In those roles she was responsible for the management of the legislative and policy agendas of various state senators. Her work has resulted in the passage of statewide laws related to concussion management policies in schools, telehealth parity, Lyme disease prevention, and elder abuse, among other things.

▶ In addition to her legal work, Caitlin completed her Ph.D. at Georgetown University with a dissertation that studied the potential for political bias in state retirement system investment strategies. During her graduate school tenure, she also worked as a Duke University Health Policy Fellow at the World Health Organization in Geneva, Switzerland. While there, she worked on research and presentations for WHO Member States and advocacy organizations focusing on tobacco control policy and prevention.

▶ Caitlin received her J.D. from Syracuse University College of Law.

O_206-206-8317
F_312.589.6378

cvaughn@edelson.com



O_217.350.2191
F_312.589.6378

schappleknowlton@edelson.com

# Shantel Chapple Knowlton

Senior Litigation Counsel

## Served for six years as a Deputy Attorney General at the Office of the Idaho Attorney General.

**Shantel's practice focuses on environmental mass tort and consumer protection litigation.**

▶ Prior to joining Edelson, Shantel served for six years as a Deputy Attorney General at the Office of the Idaho Attorney General in both the Natural Resources and Consumer Protection Divisions. In the Natural Resources Division, Shantel represented the State of Idaho in water-rights adjudications, primarily litigating federal-reserved and Indian water rights. In the Consumer Protection Division, Shantel represented the State of Idaho in several multistate consumer protection actions. Most notably, Shantel pursued investigations and litigation against a variety of companies to hold them accountable for their contribution to the opioid crisis.

▶ Prior to serving at the Idaho Attorney General's Office, Shantel clerked for the Honorable Justice Jim Jones at the Idaho Supreme Court.

▶ Shantel graduated *summa cum laude* with a J.D. from Lewis & Clark Law School. During law school, Shantel externed for the Honorable B. Lynn Winmill at the U.S. District Court for the District of Idaho and served as a Law Clerk at the Oregon Department of Justice in the Special Litigation Unit. Shantel was also a member of the Lewis & Clark Law Review and a founding member of the Lewis & Clark chapter of Law Students for Reproductive Justice (If/When/How).

▶ Shantel received dual B.S. degrees in Psychology and Sociology from the University of Idaho.



O_312.572.7212
F_312.589.6378

tbenjamin@edelson.com

# Theo Benjamin

Associate

Led the litigation and settlement of a variety of class action cases alleging claims under federal, state, and local laws.

**Theo's practice focuses on consumer protection, privacy, complex environmental cases, and bankruptcy.**

▶ Theo is a member of the firm's Public Client and Government Affairs teams. Since joining the firm, Theo has actively litigated a variety of complex actions on behalf of state attorneys general, including over youth vaping, e-cigarettes, big-tech data breaches, misuses of consumer data, and environmental actions over water and land contamination and natural resources damages from toxic chemicals. These efforts have led to multi-million-dollar settlements for government clients, including a $462 million multistate settlement against JUUL Labs, the largest litigated settlement the District of Columbia has ever secured under the Consumer Protection and Procedures Act ("CPPA").

▶ Theo is currently litigating several government consumer protection and environmental actions against tech-industry giants and chemical companies, including Meta Platforms, Inc. and Velsicol Chemical LLC. He also represents dozens of municipalities in litigation against manufacturers and distributors of opioids, which has helped paved the way for landmark national opioid settlements with Johnson & Johnson, Teva, Cardinal, McKesson, and AmerisourceBergen.

▶ Theo received his J.D. from Northwestern Pritzker School of Law, where he served as a Comment Editor for Northwestern's Journal of Criminal Law & Criminology and founded Northwestern's chapter of the International Refugee Assistance Project where he helped provide legal aid, representation, and policy research to refugees and asylum seekers undergoing the U.S. resettlement process.

▶ Theo has represented clients in complex class action litigation, including on behalf of consumers under the Illinois Biometric Information Privacy Act ("BIPA") and the California Invasion of Privacy Act ("CIPA").

▶ Theo received his J.D. from Northwestern Pritzker School of Law, where he served as a Comment Editor for Northwestern's Journal of Criminal Law & Criminology and founded Northwestern's chapter of the International Refugee Assistance Project where he helped provide legal aid, representation, and policy research to refugees and asylum seekers undergoing the U.S. resettlement process.



# Lauren Blazing

Associate*

Authored reports and coordinated media outreach to combat gender and racial disparities in the Service Academies.

**Lauren's practice focuses on mass torts and class actions.**

▶ Lauren received her J.D. from Yale Law School, where she co-chaired the Title IX Working Group and served as a research assistant studying Intentional Violence in International Sport with Professor Alice M. Miller.

▶ At Yale, Lauren co-directed the HAVEN Medical Legal Partnership, which provides legal services to underserved and undocumented patients at the university's community health clinic. She also participated in the Jerome S. Frank Veterans Legal Services Clinic, where her team worked to combat racial and gender inequities in the U.S. Military Service Academies.

▶ Before joining Edelson, Lauren clerked for the Honorable Janet C. Hall in the U.S. District Court for the District of Connecticut.

▶ Lauren graduated *summa cum laude* from Duke University with a degree in Political Science Cultural Anthropology.

*Admitted only in New York. Supervised by a member of the California bar.

O_628.251.2045
F_415.373.9435

lblazing@edelson.com



# Megan Delurey

Associate

## Successfully represented an asylum seeker fleeing persecution on the basis of her LGBTQ identity.

**Megan's practice focuses on consumer and privacy-related class actions.**

▸ Megan received her J.D. from the University of Chicago Law School, where she was involved in the school's clinical programs in both environmental and immigration law. While working in the Immigrants' Rights Clinic, Megan provided legal aid services to immigrant communities in Chicago. In the environmental law clinic, Megan advocated on behalf of an environmental justice and renewable energy nonprofit in state administrative proceedings

▸ At the University of Chicago Law School, Megan was an editor for *The University of Chicago Legal Forum* and organized the journal's annual symposium.

▸ Prior to joining Edelson, Megan worked at a prominent international law firm where she gained significant trial experience. She also maintained an active pro bono practice, including representing women who were forced to flee Afghanistan during the fall of Kabul in their asylum proceedings.

▸ Megan graduated from Washington University in St. Louis, where she earned her B.A. in Anthropology and her MSW from the top-ranked Brown School of Social Work. Upon earning her master's degree, Megan worked for a research lab applying systems sciences to social issues and taught a graduate-level course in participatory system dynamics. In this role, she founded the Changing Systems Summit, an annual event that trains students to use systems thinking tools to address equity issues in their communities.

O_872.257.3787
F_312.589.6378

mdelurey@edelson.com



# Hannah Hilligoss

Associate

## Co-authored a report analyzing the impacts of AI on human rights for the Berkman Klein Center for Internet and Society.

**Hannah focuses on consumer and privacy-related class actions.**

▸ Hannah received her J.D. from Harvard Law School, where she was a Student Editor on the American Journal of Law and Equality and was on the Public Interest Committee for the Women's Law Association.

▸ At Harvard, Hannah participated in the Cyberlaw Clinic, where she counseled an anti-disinformation e-newsletter on their response to a cease and desist letter alleging Lanham Act violations; drafted an amicus brief opposing national digital identity laws for a large NGO; and worked with a documentary filmmaker to determine what third-party footage in his film was fair use and what needed to be licensed.

▸ Prior to law school, Hannah worked at Harvard's Berkman Klein Center for Internet and Society, developing ethical approaches to AI development and deployment and combatting algorithmic discrimination in hiring and in the criminal justice system.

▸ Hannah graduated magna cum laude from Boston College with a degree in International Studies.

O_773.906.5348
F_312.589.6378

hhilligoss@edelson.com



# Michael Ovca

Associate

## Litigating a half-dozen Telephone Consumer Protection Act cases.

**Michael focuses on consumer, privacy-related and technology-related class actions.**

▶ Michael's recent consumer class action work involves bringing claims on behalf of students suing for-profit colleges that used allegedly-fraudulent advertising to lead them to enroll. Michael's environmental practice involves representing individuals who were exposed to ethylene oxide ("EtO") emitted by medical equipment sterilization and chemical manufacturing plants, as well as those exposed to dangerous "forever" chemicals through tainted groundwater that accumulate in the body, ultimately causing cancer. Michael is also litigating a half-dozen Telephone Consumer Protection Act cases brought by recipients of text messages sent by entertainment venues from around the country. In terms of governmental representation, Michael has worked on cases brought by the City of Chicago against Uber; by various cities and towns in Illinois against opiate manufacturers, distributors, and prescribers; and a village seeking to prevent the closure of its hospital.

▶ Michael received his J.D. cum laude from Northwestern University, where he was an associate editor of the Journal of Criminal Law and Criminology, and a member of several award-winning trial and moot court teams.

▶ Prior to law school, Michael graduated summa cum laude with a degree in political science from the University of Illinois.

O_312.561.4106
F_312.589.6378

movca@edelson.com



# Emily Penkowski

Associate

## Cum laude from Northwestern University Pritzker School of Law

O_312.874.7650
F_312.589.6378

epenkowski@edelson.com

**Emily's practice focuses on privacy- and tech-related class actions.**

▶ Emily received her J.D. cum laude from Northwestern University Pritzker School of Law, where she served as an Associate Editor of Northwestern University Law Review and a Problem Writer for the 2020 Julius Miner Moot Court Board. Emily participated in the Bluhm Legal Clinic's Supreme Court Clinic, where she worked on cases before the Supreme Court including *Ritzen Group, Inc. v. Jackson Masonry, LLC,* 140 S. Ct. 582, 584 (2020). She placed on the Dean's List every semester and served on the student executive boards for the Moot Court Society and the Collaboration for Justice, a justice system reform-oriented student group.

▶ Emily spent her law school summers at the Maryland Office of the Attorney General and the U.S. Attorney's Office for the Western District of Washington. In the Western District of Washington, Emily assisted in prosecuting cryptocurrency money laundering, cybercrime, and complex frauds. In Maryland, she wrote criminal appeals briefs for the State in the Maryland Court of Special Appeals.

▶ Before entering law school, Emily worked as an intelligence analyst for the National Security Agency, in the Office of Counterintelligence & Cyber (previously the NSA/CSS Threat Operations Center) and the Office of Counterterrorism. She analyzed significant, technical, complex, and short-suspense intelligence in support of law enforcement, military, computer network defense, diplomatic, and other intelligence efforts, while serving as a "reporting expert" for over three hundred analysts on an agency-wide project. She also briefed NSA and military leadership on cyber and counterintelligence threats to the U.S. government and military.

▶ As a digital network analyst, Emily increased intelligence coverage on a counterterrorism target through social network analysis, including eigenvector and cluster analysis, used metric databases to manage and prioritize intelligence collection, and worked with collectors to streamline data flows and eliminate duplicative sources of information.

▶ Emily received her Bachelor of Science in International Studies, specializing in Security and Intelligence, at Ohio State. She also received minors in Computer and Information Science and Mandarin Chinese. She began learning Mandarin in high school. During college, Emily interned at the National Security Agency, in the Office of Counterproliferation, and at Huntington National Bank, on its Anti-Money Laundering and Bank Secrecy Act team.



# Albert J. Plawinski

Associate

## Works on the development of environmental mass tort and mass action cases.

**Albert identifies and evaluates potential cases and works with the firm's computer forensic engineers to investigate privacy violations by consumer products and IoT devices.**

▶ Albert works on the development of the environmental mass tort and mass action cases, including preparing lawsuits on behalf of (1) victims of the California Camp Fire—the largest and most devastating fire in California's history; (2) individuals exposed to toxic chemicals in their drinking water; and (3) individuals exposed to carcinogenic ethylene oxide.

▶ Albert received his J.D. from the Chicago-Kent College of Law. While in law school, Albert served as the Web Editor of the Chicago-Kent Journal of Intellectual Property. Albert was also a research assistant for Professor Hank Perritt for whom he researched various legal issues relating to the emerging consumer drone market—e.g., data collection by drone manufacturers and federal preemption obstacles for states and municipalities seeking to legislate the use of drones. Additionally, Albert earned a CALI award for receiving the highest course grade in Litigation Technology.

▶ Prior to law school, Albert graduated with Highest Distinctions with a degree in Political Science from the University of Illinois at Urbana-Champaign.

O_720.741.0085
F_720.741.0081

aplawinski@edelson.com



# Zoë Seaman-Grant

Associate

Editor of the Michigan Journal of Gender & Law at the University of Michigan Law School.

**Zoë's practice focuses on environmental and mass tort actions.**

▸ Zoë received her J.D. from University of Michigan. During her time at Michigan, Zoë served as a board member for Sexual Assault & Harassment Legal Advocacy Services (SAHLAS), an organization that offered support to University of Michigan students filing sexual misconduct complaints under Title IX.

▸ Zoë interned with the New York Attorney General's Torts Department and Davis Polk & Wardwell. While in school, she worked as a Faculty Research Assistant at the University of Michigan Law Library.

▸ Before law school, Zoë served as an AmeriCorps member with Reading Partners DC, a nonprofit organization providing literacy support to public school students in Washington, DC.

▸ Zoë graduated from Bates College, where she earned her B.A. in Women's and Gender Studies. She completed an honors thesis titled "Constructing Womanhood and the Female Cyborg: A Feminist Reading of Ex Machina and Westworld."

O_773.668.0328
F_312.589.6378

zseaman-grant@edelson.com



O_217.576.9229
F_312.589.6378

jzhu@edelson.com

# Julian Li-Ying Zhu

Associate

▶ Julian received his J.D. with Honors from the University of Chicago Law School, where he was involved in the school's clinical program in environmental law and a writer for the Chicago Journal of International Law (CJIL). He presented on the antitrust implications of worldwide pharmaceutical settlements at CJIL's annual symposium and was President of the school's Public Interest Law Society.

▶ Prior to joining Edelson, Julian was an honors attorney in the U.S. Department of Justice's Antitrust Division, where he primarily focused Section 1 investigations.

▶ Before law school, Julian was a policy analyst and writer for Restore Justice, a nonprofit organization that advocates for the compassionate reform of Illinois' criminal justice system for currently and formerly incarcerated Illinoisans. He was also a writer for the BioCentury and a Science Policy Fellow at the Science and Technology Policy Institute in Washington, DC.

▶ Julian graduated with Honors from the University of California, Berkley, where he received a B.A. in Rhetoric and Molecular & Cellular Biology. As an undergraduate, Julian was a writer and editor for the Triple Helix and the Berkeley Scientific Journals. He also volunteered at the Neighborhood Justice Clinic of the East Bay Community Law Center and conducted research for Professor David Oppenheimer on the history of diversity and race-based hiring in California.



O_415.907.7478
F_312.589.6378

jlarsen@edelson.com

# Jean Larsen

Associate

▸ Jean graduated cum laude with a degree in Politics and International Relations and a minor in Geology from Scripps College and received my J.D. from the University of California, Berkeley. She handles consumer protection investigations and litigation on behalf of government clients.

▸ She is an Associate with the Public Client Team at Edelson PC. She handles investigations and litigation on behalf of several state attorneys general against some of the largest tech companies, including Meta and TikTok. At Berkeley Law, Jean served as the President of the American Constitution Society and was a member of the Samuelson Law, Technology, and Public Policy Clinic. Prior to law school she worked on political campaigns and in government, most recently as a researcher on the Senate Judiciary Committee.

1  Rafey S. Balabanian (SBN 315962)
   rbalabanian@edelson.com
2  EDELSON PC
   150 California Street, 18th Floor
3  San Francisco, California 94111
   Tel: 415.212.9300
4  Fax: 415.373.9435

5
   *Counsel for Plaintiffs David Melvin, J.L., and the Putative Classes*
6

7

8

9              **UNITED STATES DISTRICT COURT**
              **NORTHERN DISTRICT OF CALIFORNIA**
10              **SAN FRANCISCO DIVISION**

11

12  **DAVID MELVIN and J.L.**, individually        Case No.: 3:24-cv-00487-SK
    and on behalf of all others similarly
13  situated,                                    **[PROPOSED] ORDER GRANTING**
                      *Plaintiffs,*               **ADMINISTRATIVE MOTION TO**
14                                               **CONSIDER WHETHER CASES SHOULD**
                                                 **BE RELATED PURSUANT TO CIVIL**
15            *v.*                               **LOCAL RULES 3-12 AND 7-11**

16  **23ANDME, INC.**, a Delaware corporation,

17                    *Defendant.*

18

19

20

21         This Court, having considered Plaintiffs David Melvin and J.L.'s Administrative Motion to

22  Consider Whether Cases Should Be Related Pursuant to Civil Local Rules 3-12 and 7-11 and the

23  concurrently filed Declaration of Rafey S. Balabanian:

24         IT IS HEREBY ORDERED THAT the action entitled *Melvin, et al. v. 23andMe, Inc.*, No.

25  3:24-cv-00487-SK (N.D. Cal) (the "*Melvin* Action"), which was filed on January 26, 2024, is

26  related to *Santana, et al. v. 23andMe, Inc.*, No. 3:23-cv-05147-EMC (N.D. Cal) filed on October 9,

27  2023, the first-filed action currently assigned to the Honorable Edward M. Chen.

28         IT IS FURTHER ORDERED THAT the *Melvin* Action be reassigned to this Court for all

1  further proceedings.

2      IT IS SO ORDERED.

3

4  Dated: _____          _____

5                                          Hon. Edward M. Chen
                                           United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   Rafey S. Balabanian (SBN 315962)
    rbalabanian@edelson.com
2   EDELSON PC
    150 California Street, 18th Floor
3   San Francisco, California 94111
    Tel: 415.212.9300
4   Fax: 415.373.9435

5   *Counsel for Plaintiffs David Melvin, J.L., and the Putative Classes*

6

7

8                   **UNITED STATES DISTRICT COURT**
                  **NORTHERN DISTRICT OF CALIFORNIA**
9                      **SAN FRANCISCO DIVISION**

10

11  **DAVID MELVIN and J.L.**, individually      Case No.: 3:24-cv-00487-SK
    and on behalf of all others similarly
12  situated,                                    **DECLARATION OF RAFEY S.**
                       *Plaintiffs,*             **BALABANIAN IN SUPPORT OF**
13                                               **ADMINISTRATIVE MOTION TO**
                                                 **CONSIDER WHETHER CASES SHOULD**
14          *v.*                                 **BE RELATED PURSUANT TO CIVIL**
                                                 **LOCAL RULES 3-12 AND 7-11**
15  **23ANDME, INC.**, a Delaware corporation,

16                     *Defendant.*

17

18

19

20

21

22

23

24

25

26

27

28

Pursuant to 28 U.S.C. § 1746, I, Rafey S. Balabanian, hereby declare and state as follows:

1. I am an attorney admitted to practice law before this Court. I am over the age of 18 and fully competent to make this Declaration. I have personal knowledge of the facts set forth herein and if called upon to testify as a witness, I could and would competently testify hereto.

2. I am the Managing Partner and Director of Nationwide Litigation of Edelson PC. My firm represents Plaintiffs David Melvin and J.L. in the above-captioned case. I submit this Declaration in Support of Plaintiffs' Administrative Motion to Consider Whether Cases Should Be Related Pursuant to Civil Local Rules 3-12 and 7-11.

3. On January 26, 2024, my firm filed the above-captioned action (the "*Melvin* Action"), on behalf of Plaintiffs and all others similarly situated, against 23andMe, Inc. Plaintiffs allege that Defendant failed to protect their personal genetic information and other personally identifiable information in its possession, violating its statutory and common law responsibilities, causing harm to Plaintiffs and the putative classes, and entitling them to monetary and equitable relief.

4. On October 9, 2023, Monica Santana filed a substantially similar action on behalf of herself and all others similarly situated against 23andMe, Inc. *Santana v. 23andMe, Inc.*, No. 23-cv-05147-EMC (N.D. Cal.) (the "*Santana* Action"). Over the ensuing days and weeks, approximately 36 more actions were filed by 37 firms—some on the same complaint—following a common pattern of factual and legal allegations against 23andMe, Inc. in the wake of its highly-publicized data breach. The vast majority of cases were filed in the Northern District of California and related to the *Santana* Action, with Judge Chen presiding.

5. This action and the *Santana* Action arise from the same underlying incident, and accordingly address many of the same factual allegations and seek relief to the same injured Class. Specifically, the Plaintiffs in both actions claim that they were harmed when their personal information was disclosed by Defendant without authorization and in violation of statutory and common law obligations.

6. Plaintiffs were unable to obtain a stipulation of relatedness due to the time-sensitive nature of Plaintiffs' Motion to Appoint Interim Leadership of Class Action, which this motion

1   accompanies.

2       7.     Pursuant to Civil Local Rule 3-12(b), a copy of this motion, together with proof of

3   service, has been served on all parties in the *Melvin* Action and the *Santana* Action.

4       I declare under penalty of perjury under the laws of the United States of America that the

5   foregoing is true and correct.

6       Executed this 26th day of January 2024, at San Rafael, California.

7

8                           By: /s/ Rafey S. Balabanian

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28