1  Rafey S. Balabanian (SBN 315962)
2  rbalabanian@edelson.com
   EDELSON PC
3  150 California Street, 18th Floor
   San Francisco, California 94111
4  Tel: 415.212.9300
   Fax: 415.373.9435
5
6  *Counsel for Plaintiffs David Melvin, J.L., and Putative Class*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **DAVID MELVIN and J.L.**, individually and on behalf of all others similarly situated,<br><br>*Plaintiffs,*<br><br>v.<br><br>**23ANDME, INC.**, a Delaware corporation,<br><br>*Defendant.* | Case No. 24-cv-00487-EMC<br><br>**RESPONSE TO DEFENDANT'S MOTION FOR EXTENSION**<br><br>**[CIVIL L.R. 7-11]** |

1  23andMe's motion for an extension pleads in the tone of reasonable order. The case should be stayed, in 23andMe's view, until a case management conference, which shouldn't happen until its motion to stay based on the pending JPML decision is decided, and in turn, the JPML decides whether to form an MDL. What the motion doesn't do is explain the story that is going on behind the scenes. In short, 23andMe is seeking to suspend the litigation while launching a plan to sell off its users' data to any pharmaceutical research company willing to bite. *See* Thomas Germain, *23andMe Admits 'Mining' Your DNA Data Is Its Last Hope*, GIZMODO (Feb. 13, 2024), https://gizmodo.com/23andme-admits-mining-your-dna-data-is-its-last-hope-1851252582.

Plaintiffs in this case (the "*Melvin* Plaintiffs") have raised urgent questions with 23andMe about its apparent attempt to solve its public financial woes with a fire sale of user data that violates numerous laws—and exposes the Class to even greater privacy harms than what they have already suffered. While the *Melvin* Plaintiffs are entirely in favor of good order (and have made suggestions about how to accomplish that to 23andMe) the company is leveraging the procedural complexity of the sheer number of cases on file to give it a window to execute plans that harm the Class. For the reasons below, Plaintiffs must oppose.

**A.  23andMe Announces Its Plan to Widely Sell Its Users' Data for Data Mining**

Earlier this week, in an interview with Wired, 23andMe's CEO Anne Wojcicki admitted that 23andMe is intending to—in her own words—offer its users' genetic information up to "different organizations" to "mine" the data for drug discovery. Emily Mullin, *23andMe Is Under Fire. Its Founder Remains 'Optimistic'*, WIRED (Feb. 12, 2024), https://bit.ly/3OHbGqr. CEO Wojcicki credits 23andMe with assembling the kind of "really monster-size, really significantly large data sets" that allow pharmaceutical companies to profitably mine data. *See id.* This public offer was widely reported on Tuesday, including by Gizmodo, with the key context that this plan comes as the company is looking to plug the financial holes that are tanking its stock. Germain, *supra*.

23andMe's plan to sell off data to unidentified pharmaceutical partners is flatly contrary to 23andMe's promises to its users. *Will The Information I Provide Be Shared With Third*

*Parties?*, 23ANDME, https://customercare.23andme.com/hc/en-us/articles/202907870-Will-the-Information-I-Provide-Be-Shared-With-Third-Parties (last visited Feb 16. 2024) ("23andMe does not sell, lease, or rent your Genetic Information or sensitive Personal Information without receiving your explicit consent."). As described, the plan would also violate California, Illinois, and other state law. *See* Cal. Civ. Code § 56.181(a)(2)(D) (requiring "separate and express consent" for "[e]ach transfer or disclosure of the consumer's genetic data or biological sample to a third party other than to a service provider, including the name of the third party to which the consumer's genetic data or biological sample will be transferred or disclosed."); *see also* 410 ILCS 513/30; Or. Rev. Stat. Ann. § 192.539. The move also suggests a level of financial desperation at the company that raises fair questions about whether 23andMe has actually dedicated the necessary resources to protect the incredibly sensitive user data that was targeted in the unprecedented hack last year, and prompted these suits to begin with.

For that reason, the *Melvin* Plaintiffs immediately sent 23andMe a letter asking either that the company pause its plans until these issues can be addressed in the normal course in the litigation, or, short of that, to answer a number of questions about what it is actually doing and has done. (*See* Declaration of J. Eli Wade-Scott ("Wade-Scott Decl.") ¶ 2, Ex. 1-A (Letter).) Specifically, we asked whether 23andMe has implemented basic measures to secure its data, and, in relation to the anticipated sale, whether 23andMe is complying with the law and how users would be protected if that sale happened. Largely, the questions fall into these categories:

- Who users' genetic information is going to be sold to and what vetting of those third parties 23andMe has done;
- What uses the data would be put toward and what steps 23andMe will take to confirm that the uses are limited;
- Whether and how 23andMe protects individual identities if it shares user data with third parties;
- Whether 23andMe requires third parties to implement any security measures to protect individuals' data, and what those measures are.

(*See id.*) 23andMe has not been able to answer any of these questions, nor has it committed that it will not embark on this plan while the cases are procedurally ordered.

23andMe cannot have it both ways—suspending the litigation while simultaneously launching plans to sell user data and refusing to demonstrate that it has clamped down on its existing vulnerabilities. If 23andMe is willing to deliver a stable status quo, it should get all the extensions it needs to mount whatever credible defense it intends to mount. But it has done the opposite of that. Accordingly, as discussed further below, the extension should be denied until 23andMe commits to (1) not sell the user data during this period or otherwise irreversibly impair the rights of the class, or (2) answer the questions to assuage the fair concerns that the *Melvin* Plaintiffs here—and surely in every case[1]—have.

### B. 23andMe's Approach to the Litigation Demonstrates that a *De Facto* Stay is Inappropriate

23andMe's motion betrays a great deal about its views in this litigation generally, and as a result, what it thinks it can get away with. The company goes out of its way to point out that the *Melvin* Plaintiffs' counsel are "the only plaintiffs' firm to not participate in the January 31, 2024 mediation" and that the *Melvin* Plaintiffs are the only plaintiffs not to sign onto a *carte blanche* extension, and instead have refused to "advis[e]" of their position on the extension. (Dkt. 23 at 2.) That is a narrow part of the picture, but ultimately demonstrates why there needs to be some minimum guardrails put on 23andMe while the cases are procedurally settling.

First, some necessary context. There were actually two components to the extension discussion: 23andMe's request for an extension and completing an already agreed-upon stipulation as to arbitration. In discussions with 23andMe in late January (as it was heading into the mediation), 23andMe's counsel agreed that it would not seek to compel arbitration in this case. (*See* Wade-Scott Decl. ¶ 3, Ex. 1-B at 1 (January E-mails between Pls.' Counsel and Def's. Counsel).) When the *Melvin* Plaintiffs' counsel sent a draft stipulation to formalize that

---

[1]   We will share any responses from 23andMe with the other plaintiffs' counsel in these matters, and expect that others will join us in asking these questions.

1  agreement before the mediation, 23andMe's counsel initially promised redlines—keeping the
2  original agreement intact—but ultimately went radio silent. (*Id.* at 3-8.) The day after the
3  mediation, on February 1, 23andMe wrote to request an extension. (Wade-Scott Decl., ¶ 4, Ex.
4  1-C at 1 (February E-mails between Pls.' Counsel & Def.'s Counsel).) The *Melvin* Plaintiffs
5  asked for a response on arbitration—to understand what motion we should expect at the end of
6  this extension—but 23andMe continued to dodge the question (and still hasn't answered). (*Id.*
7  at 2.) Rather than keep the dialogue going, 23andMe stopped responding and filed its motion
8  for an extension. (*See id.* at 7.)[2]

9  It's fairly clear from this history that 23andMe is buoyed by its (likely incorrect) view of
10 its adversary in these cases: a group of plaintiffs' firms that are not grabbing the wheel and will
11 largely go along with 23andMe's plans to order (and ultimately settle) the cases, regardless of
12 other factors in play. But it has given the company a level of boldness in its belief that it can act
13 unilaterally and characterize any opposition as outliers who are unreasonably refusing to get
14 with the program.

15 23andMe's present plan to sell off the data of people who've already been subject to an
16 unprecedented privacy breach is a clear symptom of that view. And not only has the company
17 announced these plans, but they're seeking to renege on a significant piece of the case that
18 they'd already negotiated.[3] With a Defendant acting this brazenly—going so far as to use the
19 other plaintiffs' firms as rhetorical reason to grant this motion against these Plaintiffs—it is
20 necessary for the Court to establish some safeguards for the Class.

21 To be absolutely clear: the *Melvin* Plaintiffs read and respect the Court's decision on
22 leadership, and are not asking the Court to reconsider that. As the Court implied in the Order
23 on leadership, nothing that was happening at that time was irreversible: an improper settlement

---

[2] The Parties exchanged additional e-mails on February 15, 2024, which are included for the sake of completeness, but have not resolved these issues. (*See* Wade-Scott Decl. ¶ 5, Ex. 1-D (February 15 E-mails between Pls.' Counsel & Def.'s Counsel).)

[3] The arbitration clause is illegal and unenforceable—which, if necessary, the *Melvin* Plaintiffs will litigate at the appropriate stage—and 23andMe's counsel has stated it would not seek to enforce it. Whether 23andMe has the ability to backtrack that agreement is something Plaintiffs will, similarly, resolve with the Court as necessary.

could be challenged. (Dkt. 15 at 1.) Here, the *Melvin* Plaintiffs specifically asked 23andMe to hold off on the irreversible until the cases are ordered, in which case 23andMe's plans could be dealt with in the normal course. 23andMe has refused to agree to that, and instead remains singularly focused on keeping the cases in the air while moving forward elsewhere.

The *Melvin* Plaintiffs accordingly make a narrow request. 23andMe should commit to not moving forward with any sale of data to third parties (whether labeled a "research partnership" or otherwise) or otherwise irreparably impair the rights of the Class, until leadership has been appointed in the cases who can take the necessary steps to protect the class—whether via negotiation or litigation. If 23andMe will do that (that is, maintain the status quo), there is no need to act with the same urgency, and the Court should grant the extension and enter an appropriate stay pending the ordering of the cases. If not, the Court should deny this motion and the motion to stay, and permit the *Melvin* Plaintiffs to secure immediate answers to the questions presented in their letter and, as necessary, move for appropriate injunctive relief.

## **CONCLUSION**

Plaintiffs respectfully request that 23andMe's motion be denied in accordance with the foregoing, or that the Court grant any further or alternative relief as it deems reasonable and just.

Respectfully Submitted,

**DAVID MELVIN and J.L.**, individually and on behalf of all others similarly situated,

Dated: February 16, 2024

By: /s/ Rafey S. Balabanian
One of Plaintiffs' Attorneys

Rafey S. Balabanian (SBN 315962)
rbalabanian@edelson.com
EDELSON PC
150 California Street, 18th Floor
San Francisco, California 94111
Tel: 415.212.9300
Fax: 415.373.9435

Jay Edelson (*pro hac vice* pending)
jedelson@edelson.com

J. Eli Wade-Scott (*pro hac vice* pending)
ewadescott@edelson.com
Michael Ovca (*pro hac vice* pending)
movca@edelson.com
Emily Penkowski Perez (*pro hac vice* pending)
epenkowski@edelson.com
Hannah P. Hilligoss (*pro hac vice* pending)
hhilligoss@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Counsel for Plaintiffs and the Putative Class*